UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MARKCUS KITCHENS, JR. | ) | |
| PLAINTIFF | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | 2:22-CV-03301-JMY |
| | ) | |
| UNITED STATES MEDICAL LICENSING EXAMINATION, | ) | |
| ET AL. | ) | |
| DEFENDANTS | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Comes the Plaintiff, Dr. Markcus Kitchens Jr., pro se, (hereinafter "Dr. Kitchens") and for his Response to Defendant's, National Board of Medical Examiners, (hereinafter "NBME") Motion to Dismiss, states the following:

## INTRODUCTION

This is a discrimination case against a self-governing, licensing authority. Dr. Kitchens participated in the 'STEP' exams as part of his certification to practice medicine. However, after being denied twice by NBME for accommodations, the Defendants have discriminated against Dr. Kitchens to such a degree that he faces permanent [prohibition] from practicing medicine. On a Motion to Dismiss, all disputed facts must be taken in the light 'most favorable' to the non-moving party. As set forth below, the Motion is premature because there are genuine issues of material fact that must be resolved. Accordingly, Dr. Kitchens's factual assertion that the NBME has discriminated against him in violation of the Title II of the ADA and Section 504 of the Rehabilitation Act must be taken as true for the purposes of the Defendant's Motion, and the Motion must therefore be DENIED.

## COUNTERSTATEMENT OF THE CASE

A Motion to Dismiss requires that all well-pled allegations in the Complaint be taken as true for purposes of resolution of the motion. The Complaint alleges the following facts:

15. "Dr. Kitchens is an African-American, male applicant who is a natural born citizen of the United States.

16. Dr. Kitchens attended and graduated from the Medical University of Lublin, in Lublin, Poland.

17. On or about October 22, 2021, Dr. Kitchens applied for accommodations with the USMLE STEP board exams, specifically, additional time, due to disability.

18. On or about February 8, 2022, Dr. Kitchens's accommodations were denied.

19. On February 25, 2022, Dr. Kitchens registered for and took the USMLE STEP 1 for the first time.

20. Dr. Kitchens was advised that he failed USMLE STEP 1.

21. On May 9, 2022, Dr. Kitchens registered for and took the USMLE STEP 1 for the second time.

22. Dr. Kitchens was advised that he failed USMLE STEP 1.

23. On May 28, 2022, Dr. Kitchens registered for and took the USMLE STEP 2 for the first time.

24. Dr. Kitchens was advised that he failed USMLE STEP 2 with a 169.

25. On June 29, 2022, Dr. Kitchens registered for and took the USMLE STEP 2 for the second time.

26. Dr. Kitchens was advised that he failed USMLE STEP 2 with a 195.

27. At no point during any time relevant herein was Dr. Kitchens's account flagged for suspicious activity.

28. Defendant USMLE charges students of medical schools in the United States and Canada accredited schools six hundred forty five dollars ($645) per STEP board exam registration.[1] Defendant USMLE charges IMGs nine hundred eighty five dollars ($985) per STEP board exam registration.[2]

29. For each of these exams, Dr. Kitchens paid the IMG rate in addition to additional ECFMG fees.

30. That because of Defendants USMLE and NBME, Dr. Kitchens has suffered tremendous pain and emotional distress, and continues to suffer pain." *See* ¶¶ 15-30 of the Complaint.

The facts are relatively simple: Dr. Kitchens applied for testing accommodations twice, and was

twice denied, discriminating against his ability to participate in the 'Board Examination' process.

---

[1] *See* Defendant NBME's exam fees for residential medical graduates at
https://www.nbme.org/examinees/united-states-medical-licensing-exam-usmle#exam-fees.
[2] *See* Defendant NBME's exam fees for international medical graduates at
https://www.ecfmg.org/fees/index.html.

Based on the limited record before the Court, there are genuine issues of material fact, and these moving Defendants are not entitled to a judgment as a matter of law. Therefore, this Court should overrule the pending Motion in its entirety.

**STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP) states that a party may assert the defense of "failure to state a claim upon which relief can be granted" by motion. For purposes of reviewing a Motion to Dismiss under FRCP 12(b)(6), the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3D 333, 341 (3rd Cir. 2016). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3rd Cir. 2010) quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 (3rd Cir. 2010). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Here, Dr. Kitchens's allegations contain sufficient factual matters that are plausible on its face, and when construed in the light most favorable to the nonmoving party, has made claims upon which relief can be granted against the Defendant, NBME. Therefore, their Motion to Dismiss should be DENIED.

**ARGUMENT**

Defendant NBME as a collaborator with the Federation of State Medical Boards (hereinafter "FSMB") is an instrumentality of a state agency. The FSMB represents state medical regulatory boards within the United States; the FSMB and Defendant NBME have a FSMB-NBME Agreement which establishes the USMLE. As a private organization that represents multiple state medical regulatory boards, the FSMB, by and through the NBME, sponsors, administers, and regulates the three-step examination program for medical licensure. Due to the NBME's agency with the FSMB – who represents State Medical Boards and received federal funding at all times relevant herein – comports with the definition of a public entity as set forth in the Americans with Disabilities Act. Public entities are subject to both Title II of the

ADA and Section 504 of the Rehabilitation Act, thus, Dr. Kitchens has properly asserted claims for which relief can be granted against Defendant NBME.

### I.    DEFENDANT NBME IS A PUBLIC ENTITY

#### a.   Defendant NBME Collaborates with the Federation of State Medical Boards

Defendant NBME "works with the Federation of State Medical Boards (FSMB) to co-sponsor the USMLE".[3] *See* Exhibit A. According to Black's Law Dictionary, an agency is:

> "a relationship that arises when one person (a principal) manifests assent to another (an agent) that the agent will act on the principal's behalf, subject to the principal's control, and the agent manifests assent or otherwise consents to do so." *Agency*, Black's Law Dictionary (21st ed. 2021).

Pursuant to Defendant NBME's own website, the NBME has a relationship with the FSMB to cosponsor the USMLE. As a cosponsor, Defendant NBME assumes "responsibility for some other person or thing; [or is] an organization that pays for or plans and carries out a project or activity." *Sponsor*, Merriam-Webster (Dec. 5, 2022), https://www.merriam-webster.com/dictionary/sponsor. In the case at hand, Defendant NBME assumed responsibility, planned, and executed the three-step examination program for medical licensure in the United States with the FSMB.

The FSMB "represents the state medical and osteopathic regulatory boards" within the United States.[4] As indicated by the FSMB's bylaws, the NBME and the FSMB have an Agreement which establishes the USMLE and the "composition of committees and subcommittees for the USMLE."[5] *See* Exhibit B.

42 U.S.C. §12132 defines a public entity as "(A) any state or local government; (B) any department, **agency**, special purpose district, or other instrumentality **of a state or states**, or local government; …." (Emphasis added). As a self-proclaimed collaborator with the FSMB, Defendant NBME has a relationship with the FSMB to administer, regulate, and assess the examinees for licensure and certification to practice medicine in the United States. As the representative of state medical regulatory boards across the US, the

---

[3]

[4] *See About FSMB*, Fed'n of State Med. Bd. (Dec. 5, 2022), https://www.fsmb.org/about-fsmb/.

[5] *See* Fed'n of State Med. Bd., Bylaws, Article IX. United States Medical Licensing Examination, Section A, p. 15 (Apr. 2022). https://www.fsmb.org/siteassets/about-fsmb/pdfs/bylaws.pdf.

FSMB operates on behalf of *state* medical boards. Therefore, the NBME, by and through its relationship with the FSMB, is an agent of the state medical regulatory boards and is a public entity subject to Title II of the ADA.

### b. Defendant NBME is an Instrumentality of the Federation of State Medical Boards

Defendant NBME states that as a Section 501(c)(3) organization, Dr. Kitchens "cannot" allege that NBME is a public entity. However, the Third Circuit has

> "not taken a position in a precedential case as to whether a private corporation providing government services to a public entity under an agreement becomes an 'instrumentality' of the state." *MGJ v. Sch. Dist. Of Phila.*, 2017 U.S. Dist. LEXIS 80117, 18 (E.D. Pa. May. 25, 2017).

In *MGJ v. Sch. Dist. Of Phila.,* the Court held that Carson Valley, a private organization who contracted with the Philadelphia School District to provide therapeutic support staff to students with disabilities, was not an instrumentality of the state. In its opinion, the Court stated that an instrumentality of the state refers to "governmental units or units created by them." *Id.* quoting *Langston v. Milton S. Hershey Med. Ctr.,* 2016 WL 1404190, 13, 31 (M.D. Pa. Apr. 11, 2016). Unlike Carson Valley in the *MGJ* case, who merely contracted with the school district to provide a service, Defendant NBME is a 'collaborator' with the FSMB and is the administrating body for the USMLE board exams. In order to become a medical professional in the United States, a 'Board-Eligible' candidate *must* go through the NBME's licensure exams. Defendant NBME is not a private entity providing a service, rather, the NBME is a private entity who, by and through its relationship with the FSMB, administers the only licensing examination(s) for medical practitioners.

In *Matthews v. Pa. Dep't of Corr.*, the Court agreed with the Eleventh Circuit's ruling that "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews v. Pa. Dep't of Corr.*, 613 Fed. Appx. 163, 12 (3d Cir. June 1, 2015) quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010). However, in the case at hand, the governing bodies for medical licensure are the FSMB and Defendant NBME. Defendant NBME is not a public entity solely because it contracted with a public entity, rather, Defendant NBME is a public entity because state medical boards utilize Defendant NBME's three-step examination program (the USMLE) to determine whether a physician

is qualified to practice within the United States. According to Black's Law Dictionary, an instrumentality is:

> "a thing used to achieve an end or purpose; a means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Instrumentality*, Black's Law Dictionary (21st ed. 2021).

Arguably, since the FSMB and NBME are the sole entities who administer, regulate, and distribute credentials to health professionals, both the FSMB and NBME are agents of the state medical and osteopathic boards of the United States. In both *MGJ* and *Matthews*, the private organizations providing service(s) to public entities were not the only organization who could do so; in this case, medical practitioners have no other resource, company, nor examination(s) by which they could achieve licensure. It would stand to reason that as the regulating body for medical professionals across the United States, Defendant NBME cannot claim that it is both the administrator for medical licensure and a private organization that is not subject to the Americans with Disabilities Act.

## II.    DEFENDANT NBME IS SUBJECT TO SECTION 504

### a.  The Federation of State Medical Boards Received Federal Funding in 2022

The FSMB, cosponsor and agent of various state medical boards, received federal funding in 2022. 29 U.S.C. § 749(a) states no otherwise qualified individual "by reason of his disability, … shall [not] be denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance…." In 2019, the FSMB claimed two hundred forty-nine thousand forty five dollars ($249,045.00) in government grants.[6] *See* Exhibit C. Additionally according to 'usaspending.gov', the FSMB received federal funding at all times complained herein, specifically, the FSMB received grants "H7F37568"[7] from May 1, 2020 until April 30, 2022 and "H1M24097"[8] from July 1, 2012 until June 30, 2024. *See* Exhibit D and Exhibit E. Therefore, the FSMB has received federal funding at all times complained of herein.

---

[6] Fed'n of State Med. Bd. 2019 Form-990 Tax Return.
[7] *See* U.S. Treasury, Dep't, *Project Grant*, (U.S. Dep't of Health and Hum. Res., 2022) https://www.usaspending.gov/award/ASST_NON_H7F37568_7526.
[8] *See* U.S. Treasury, Dep't, *Project Grant*, (U.S. Dep't of Health and Hum. Res., 2022) https://www.usaspending.gov/award/ASST_NON_H1M24097_7526.

Moreover, Defendant NBME's status as a 501(c)(3) non-profit organization means that it is "[a] charitable, religious, educational, scientific, literary [organization that provides], testing for public safety, foster[s] national or international amateur sports competition, and prevent[s] cruelty to children or animals...." *See I.R.S.* Exemption Requirement – 501(c)(3) Org. (2022).

An organization's status as a 501(c)(3) charitable organization does not prohibit an organization from receiving federal funding. Dr. Kitchens's complaint stated that Defendant NBME is federal funding *eligible* since "the Internal Revenue Service is substantially delayed in processing and releasing nonprofit filings", the most recent IRS filing is from 2019.[9] *See* Exhibit F. However, by and through its agency with the FSMB, an organization who did receive federal funding, Defendant NBME would be subject to Section 504.

### III.    THE AMERICANS WITH DISABILITIES ACT APPLIES TO DEFENDANT NBME

Defendant NBME is not exempted from the ADA as a private entity. The ADA provides in relevant part:

"any person that offers examinations... related to applications, licensing, certification, or credentialing for... professional... purposes shall offer such examinations... in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. §12189.

If Defendant NBME is not subject to Title II of the ADA as a public entity, is still required to provide accommodations to individuals with disabilities in conformity with the Americans with Disabilities Act pursuant to 42 U.S.C. §12189. As recently as July of 2020, the Court granted the Plaintiff's preliminary injunction against Defendant NBME under the ADA. *Ramsay v. Nat'l Bd. Of Med. Examiners*, 968 F.3d 251, 5 (3rd Cir. 2020). Should the Court determine that the NBME is a private organization, it would comport with established, binding precedent to require Defendant NBME to provide accommodations in compliance with the ADA.

### IV.    GENUINE ISSUES OF MATERIAL FACT REMAIN

The Third Circuit has determined that Defendant NBME is subject to Title II of the ADA. In *Ramsay v. Nat'l Board of Med. Examiners*, the Court ruled against Defendant NBME when they denied a physician who applied for ADA accommodations. In *Ramsey*, the applicant submitted a diagnosis of ADHD

---

[9] *See* Propublica, *Nat'l Bd. Of Med. Exam'r*, (Dec. 5, 2022),
https://projects.propublica.org/nonprofits/organizations/231352238.

and probable dyslexia, records of accommodations, academic records and test scores taken without accommodations, and a personal statement attesting to receiving 'informal accommodations'. *Ramsay v. Nat'l Bd. Of Med. Examiners*, 968 F.3d 251, 2-4 (3rd Cir. 2020). Despite these records being submitted, Defendant NBME denied Dr. Ramsey's request for testing accommodations. Upon denial, Dr. Ramsay took Step 1 without accommodations and failed; she applied for accommodations a second time which was denied again. *Id.* Dr. Kitchens's circumstances and multiple accommodation denials mirror Dr. Ramsay's to such a degree that the cases are almost identical. In the *Ramsay* case, the Third Circuit upheld the District Court's decision to grant the injunction against Defendant NBME. Specifically, the Court held that "an examiner's refusal to provide accommodations can cause the exam-taker irreparable harm because doing so jeopardizes [his] 'opportunity to pursue [his] chosen profession." *Id*. at 262 quoting *Enyart v. Nat'l Conf. of Bar Exam'rs*, 630 F.3D 1153, 1166 (9th Cir. 2011). So too, Dr. Kitchens's complaint, and the allegations therein, present genuine issues of material fact that require the opportunity to be litigated.

Moreover, the Third Circuit is not the only jurisdiction to hold Defendant NBME liable for failure to provide accommodations. In *Currier v. Nat'l Bd. of Med. Examiners*, the Supreme Court of Massachusetts held that the applicant, Sophie Currier, provided sufficient evidence to raise a genuine issue of material fact as to whether Defendant NBME violated her rights to additional break time to express breast milk. *Currier v. Nat'l Bd. Of Med. Examiners*, 965 N.E.2d 829, 832 (Mass. 2012). In *Berger v. Nat'l Bd. of Med. Examiners*, the District Court granted applicant Brendan Berger a preliminary injunction against Defendant NBME for testing accommodations based on attention deficit hyperactivity disorder and a learning disability. 2019 U.S. Dist. LEXIS 145666, 2 (S.D. Ohio, 2019). In each of the above referenced cases, the Courts have held that Defendant NBME violated the applicant's rights for accommodations either under the ADA or similar state legislation.

Dr. Kitchens is not the first applicant to have been denied testing accommodations by Defendant NBME. Multiple jurisdictions, including the Third Circuit, have determined that Defendant NBME is subject to the Americans with Disabilities Act and have provided relief accordingly. Therefore, there are genuine issues of material fact that are entitled to litigation.

**<u>CONCLUSION</u>**

Dr. Kitchens applied for ADA testing accommodations twice, and both times, Defendant NBME determined that his accommodations request was not 'necessary'.[10] *See* Exhibit G. This determination prevented Dr. Kitchens the ability to participate in the STEP Board Examination process as his neurotypical peers would and discriminates against his rights for accommodations pursuant to the Americans with Disabilities Act. Defendant NBME is, at minimum, an instrumentality of the state medical regulatory boards, and/or has agency with the Federation of State Medical Boards to administer the examination program for medical licensure. Furthermore, since the Federation of State Medical Boards has received federal funding at all times alleged herein, and Defendant NBME, as an instrumentality of and/or as cosponsor with the FSMB at all times alleged herein, Defendant NBME is subject to Title VI of the Civil Rights Act. Therefore, Defendant NBME's Motion to Dismiss should be DENIED IN ITS ENTIRETY.

Respectfully Submitted,

*/s/ Dr. Markcus Kitchens*
Dr. Markcus Kitchens
625 Hampton Way, #2
Richmond, KY 40475
T: (423) 314-4096
markzwanz@gmail.com
***Pro Se Plaintiff***

---

[10] Letter from Disability Services, Nat'l Bd. of. Med. Exam'r., to author (Feb. 8, 2022).

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was served via E-mail to the

following on December 5, 2022.

Jared D. Bayer
One Liberty Place
1650 Market Street, Ste. 2800
Philadelphia, PA 19103
T: (215) 665-4127
F: (215) 701-2427
jbayer@cozen.com
**Attorneys for Defendant,**
**National Board of Medical Examiners**

*/s/ Dr. Markcus Kitchens*
Dr. Markcus Kitchens

< Our Collaborations

EXHIBIT

A

# HEALTH PROFESSION SERVICES

In addition to collaborating with the Federation of State Medical Boards (FSMB) to co-sponsor the USMLE®, NBME works with a number of other health profession organizations, providing assessment and consultative services to meet their needs.



## How We Work

Whether it's helping develop and deliver an in-training exam or providing expert consultation for specialized projects related to medical education, testing, and research, NBME welcomes the opportunity to collaborate with organizations that serve health professionals on their educational journey.

We draw on our expertise in test development and psychometrics to provide services to medical specialty boards and societies, and allied health professional organizations throughout the United States.

MK0001

## Our Services

Learn more about the services provided by NBME and view a full list of our collaborators below.

 **TEST DEVELOPMENT**
We provide test development services to help organizations plan and develop the appropriate content for their exam.

 **RESEARCH AND CONSULTATION**
Our research specialists offer support for organizations with unique measurement concerns or questions that require focused investigation or experimentation.

 **SCORING & PSYCHOMETRICS**
We provide comprehensive support for the psychometric, technical data analysis, and reporting needs of each client.

 **EXAMINEE SUPPORT SERVICES**
Examinee Support Services provides support for examinees throughout the test registration and administration process.

 **TEST DELIVERY**
Our test delivery capabilities assist organizations in selecting and setting up the ideal delivery method for their exam.

 **EDUCATIONAL SERVICES**
We offer consultative services for educators and item writers, including workshops focused on multiple-choice question writing and psychometrics.

## Our Collaborators

NBME works with the [Federation of State Medical Boards (FSMB)](#) to co-sponsor the USMLE and the [National Board for Health & Wellness Coaching (NBHWC)](#) to develop the [Health & Wellness Coach Certifying Examination](#).

  

## Other Organizations that Work with NBME

Click the links below to learn more about other organizations that currently work with NBME.

[American Association of Medical Assistants (AAMA)](#)

[American Board of Medical Genetics and Genomics (ABMGG)](#)

[American Board of Neurological Surgery (ABNS)](#)

[American Board of Physical Therapy Specialties (ABPTS)](#)

[American College of Cardiology (ACC)](#)

[American College of Physicians® (ACP®)](#)

LOAD MORE

MK0002

**Have any Questions?**

NBME

3750 Market Street

Philadelphia, PA 19104-3102



**Connect With Us**



©2022 NBME. All Rights Reserved.

Terms of Use | Privacy | Copyright | NBME Testing Status

MK0003

# 2022 FSMB BYLAWS

EXHIBIT

B

## ARTICLE I. NAME

The corporation shall be known as the Federation of State Medical Boards of the United States, Inc. ("FSMB").

## ARTICLE II. CLASSES OF MEMBERSHIP, ELECTION AND MEMBERSHIP RIGHTS

### SECTION A. MEMBER MEDICAL BOARDS

The term "Member Medical Board" as used in the Articles of Incorporation and in these Bylaws shall refer to any board, committee or other group in any state, territory, the District of Columbia or possession of the United States of America that is empowered by law to pass on the qualifications of applicants for licensure to practice allopathic or osteopathic medicine or to discipline such licensees. If a state or other jurisdiction has more than one such entity and if each is an independent agency unrelated to the others, each is eligible for membership. Any eligible Medical Board may become a Member Medical Board upon approval of its application by the Board of Directors.

### SECTION B. FELLOWS

There shall be two categories of Fellow of the FSMB:

1. BOARD MEMBER FELLOW. A Board Member Fellow is an individual member who as a result of appointment or confirmation is designated to be a member of a Member Medical Board. A Board Member Fellow shall be a Fellow of the FSMB during the member's period of service on a Member Medical Board, and for a period of thirty-six months thereafter, and

2. STAFF FELLOW. A Staff Fellow is an individual hired or appointed and who is responsible for the day-to-day supervision and performance of the administrative duties and functions for which a medical board is responsible. Each member board may denote only one individual to serve as a Staff Fellow of the FSMB. No individual shall continue as a Staff Fellow upon termination of employment by or service to the Member Medical Board.

### SECTION C. HONORARY FELLOWS

A Board Member Fellow as defined in Section B, paragraph 1 shall become an Honorary Fellow of the FSMB thirty-six months after completion of service on a Member Medical Board. A Staff Fellow as defined in Section B, paragraph 2 shall become an Honorary Fellow of the FSMB upon

termination of employment by or service to the Member Medical Board. An Honorary Fellow of the FSMB may be appointed by the Chair to serve as a member of any committee or in any other appointive capacity.

## SECTION D. ASSOCIATE MEMBERS

A Member Medical Board may designate one or more employees or staff members, other than an individual designated as a Staff Fellow, to be an Associate Member of the FSMB. No individual shall continue as an Associate Member upon termination of employment by or service to the Member Medical Board.

## SECTION E. AFFILIATE MEMBERS BOARDS

A board or authority that is not otherwise eligible for membership may become an Affiliate Member Board of the FSMB upon approval of its application by the Board of Directors if the board or authority licenses either:

1.  Allopathic or osteopathic physicians or physician assistants in the United States; or

2.  Allopathic or osteopathic physicians if the board or authority is located in another country.

## SECTION F. OFFICIAL OBSERVERS

An organization may apply for Official Observer status at meetings of the House of Delegates. The Board of Directors shall prescribe rules and procedures to govern the application for, the granting of and the exercise of Official Observer status.

## SECTION G. RIGHTS OF MEMBERS

Except as otherwise provided in these Bylaws, rights, duties, privileges and obligations of a member of the FSMB may be exercised only by a Member Medical Board.

## SECTION H. METHODS OF NOMINATION TO ELECTED OFFICE

Nomination by the Nominating Committee or Nomination by Petition pursuant to Articles III, IV, V and VIII shall be the sole methods of nomination to an elected office of the FSMB. A candidate who runs for and is not elected to an elected office shall be ineligible to be nominated for any other elected office during the same election cycle.

## ARTICLE III. OFFICERS: ELECTION AND DUTIES

## SECTION A. OFFICERS OF THE FSMB

1.  OFFICERS. The officers of the FSMB shall be that of Chair, Chair-elect, Immediate Past Chair,

Treasurer and Secretary.

2. Only an individual who is a Fellow as defined in Article II, Section B, paragraph 1 at the time of the individual's election or appointment shall be eligible for election or appointment as an Officer of the FSMB, except for the position of Secretary.

3. The position of Secretary shall be an ex-officio office, without vote, and the President of the FSMB shall serve as Secretary.

## SECTION B. ELECTION OF OFFICERS

1. The Chair-elect shall ascend to the position of Chair at the Annual Meeting following the meeting in which the Chair-elect was elected.

2. The Chair-elect shall be elected at each Annual Meeting of the House of Delegates.

3. The Immediate Past Chair assumes that position upon the Chair-elect ascending to the position of Chair.

4. The Treasurer shall be elected every third year at the Annual Meeting of the House of Delegates.

5. Officers shall be elected by a majority of the members of the House of Delegates present and voting.

6. In any election, should no candidate receive a majority of the votes cast, a runoff election shall be held between the two candidates who receive the most votes for that office on the first ballot. Up to two additional runoff elections shall be held.

7. Prior to each election, the presiding officer shall cast a sealed vote that shall be counted only to resolve a tie that cannot be decided by the process set forth in this section.

## SECTION C. DUTIES OF OFFICERS

1. The duties of the Chair shall be as follows:

   a. Preside at all meetings and sessions of the House of Delegates and the Board of Directors;

   b. Perform the duties customary to the office of the Chair;

   c. Make appointments to committees and define duties of committee members in accordance with these Bylaws, except as otherwise provided herein;

   d. Serve, ex officio, on all committees except as otherwise provided herein; and

   e. Exercise such other rights and customs as the Bylaws and parliamentary usage may

require or as the FSMB or the Board of Directors shall deem appropriate.

2. The duties of the Chair-elect shall be as follows:

   a. Assist the Chair in the discharge of the Chair's duties; and

   b. Perform the duties of the Chair at the Chair's request or, in the event of the Chair's temporary absence or incapacitation, at the request of the Board of Directors.

3. The duties of the Immediate Past Chair shall be as follows:

   a. Assist the Chair in the transition from Chair-elect to Chair;

   b. Serve as chair of the Nominating Committee; and

   c. Perform such other duties and responsibilities as the Chair shall determine.

4. The duties of the Treasurer shall be as follows:

   a. Perform the duties customary to that office;

   b. Perform such other duties as the Bylaws and custom and parliamentary usage may require or as the Board of Directors shall deem appropriate;

   c. Serve as an ex officio member of the Audit Committee; and

   d. Serve as chair of the Finance Committee.

5. The duties of the Secretary shall be as follows:

   a. Administer the affairs of the FSMB; and

   b. Such duties and responsibilities as the FSMB and the Board of Directors shall determine.

**SECTION D. TERMS OF OFFICE AND SUCCESSION**

1. The Chair and Chair-elect shall serve for single terms of one year or until their successors assume office.

2. The Immediate Past Chair shall serve until a successor to the current Chair assumes office.

3. The Treasurer shall serve for a single term of three years or until the Treasurer's successor assumes the office.

4. Officers shall assume office upon final adjournment of the Annual Meeting of the House of Delegates at which they were elected.

5. The term of the Secretary is co-terminus with that of the President.

## SECTION E. VACANCIES

1.  In the event of a vacancy in the office of the Chair, the Chair-elect shall assume the position of Chair for the remainder of the unexpired term, and shall then serve a full one-year term as Chair.

2.  In the event of a vacancy in the office of the Chair-elect, the Board of Directors shall appoint a Director-at-Large to assume the duties, but not the office, of Chair-elect for the remainder of the unexpired term. At the next Annual Meeting of the House of Delegates, both a Chair and a Chair-elect shall be elected in accordance with the provisions in Section B of this Article.

3.  In the event of a vacancy in the office of Immediate Past Chair, the office shall remain open until a new Chair assumes the office.

4.  In the event of a vacancy in the office of the Treasurer, the Board of Directors shall elect one of the Directors-at-Large to serve as Treasurer, with one vote on the Board of Directors and one vote on the Executive Committee, until the next year's Annual Meeting of the House of Delegates, at which time a Treasurer shall be elected.

## ARTICLE IV. BOARD OF DIRECTORS

## SECTION A. MEMBERSHIP AND TERMS

1.  MEMBERSHIP: The Board of Directors shall be composed of the Officers, nine Directors-at-Large and two Staff Fellows. At least three members of the Board, who are not Staff Fellows, shall be non-physicians, at least two of whom shall be a Member Medical Board public member.

2.  NOMINATION OF STAFF FELLOWS: Nominations for Staff Fellow positions shall be accepted from Member Boards, the Board of Directors and the Administrators in Medicine. Staff Fellows shall be appointed by the Board of Directors in staggered terms in accordance with policies and procedures established by the Board of Directors.

3.  TERMS: Directors-at-Large shall each serve for a term of three years and shall be eligible to be reelected to one additional term. Staff Fellows shall serve for a term of two years and shall be eligible to be reappointed to one additional term. A partial term totaling one-and-a-half years or more shall count as a full term.

## SECTION B. NOMINATIONS

1.  The Nominating Committee shall submit a roster of one or more candidates for each of the offices and positions to be filled by election at the Annual Meeting of the House of Delegates.

MK0008

2. The Nominating Committee shall mail its roster of candidates to Member Boards not fewer than sixty days prior to the Annual Meeting of the House of Delegates.

## SECTION C. ELECTION OF DIRECTORS-AT-LARGE

1. At least three of the Directors-at-Large shall be elected each year at the Annual Meeting of the House of Delegates by a majority of the votes cast.

2. If no candidate receives a majority of the votes on the first ballot, and one seat is to be filled, a runoff election shall be held between the two candidates who received the most votes on the first ballot.

3. If more than one seat is to be filled from a single list of candidates, and if one or more seats are not filled by majority vote on the first ballot, a runoff election shall be held, with the ballot listing candidates equal in number to twice the number of seats remaining to be filled. These candidates shall be those remaining who received the most votes on the first ballot. The same procedure shall be used for any required subsequent runoff elections. In the event of a tie vote in a runoff election up to two additional runoff elections shall be held.

4. Prior to the election, the presiding officer shall cast a sealed vote, ranking each candidate in a list. The presiding officer's vote is counted for the candidate in the runoff election who is highest on the list. The presiding officer's vote is counted only to resolve a tie that cannot be decided by the process set forth in this section.

5. Directors shall assume office upon final adjournment of the Annual Meeting of the House of Delegates at which they were elected.

6. Only an individual who is a Board Member Fellow at the time of the individual's election shall be eligible for election as a Director of the FSMB.

## SECTION D. DUTIES OF THE BOARD OF DIRECTORS

1. The control and administration of the FSMB is vested in the Board of Directors and it shall act for the FSMB between Annual Meetings.

2. The Board of Directors shall carry out the mandates of the FSMB as established by the House of Delegates, and it shall have full and complete authority to perform all acts and to transact all business for and on behalf of the FSMB.

3. The Board of Directors shall conduct and manage all property, affairs, work and activities of the FSMB, subject only to the provisions of the Articles of Incorporation and these Bylaws

and to resolutions and enactments of the House of Delegates.

4. The Board of Directors shall be the fiscal agent of the FSMB.

5. The Board of Directors shall establish rules for its operations and meetings.

6. The FSMB shall indemnify Directors, Officers and other individuals acting on behalf of the FSMB if such indemnification is in accordance with the laws of the State of Nebraska and the operational policies and procedures of the Board of Directors, as adopted. The Board shall report to the membership of the FSMB at the Annual Meeting of the House of Delegates.

7. The Board of Directors shall establish a strategic plan for the FSMB that states the FSMB mission and objectives and shall submit that plan to the House of Delegates for ratification, modification or rejection. The Board shall review the current strategic plan annually and propose any amendments to the Annual Meeting of the House of Delegates for ratification, modification or rejection. The President shall report to the Annual Meeting of the House of Delegates on the extent to which the FSMB's stated objectives have been accomplished in the preceding year.

## SECTION E. REMOVAL FROM OFFICE

1. REMOVAL: Any officer or member of the Board of Directors may be removed for any cause deemed sufficient by an affirmative vote of two-thirds of the total members of the Board of Directors entitled to vote and who are not subject to removal from office.

2. PROCEDURE: The procedure for removal shall be as follows:

   a. The Board shall file with the Secretary of the Board and deliver a written statement of the cause for removal to the officer or board member in sufficient detail as to state the grounds for the removal. Delivery to the officer or board member shall be by certified mail, return receipt requested, to the last address known to the Board.

   b. The officer or board member shall deliver a sworn written response to the Board no later than thirty calendar days after the written statement of the cause for removal is delivered to the officer or board member in question. Delivery to the Board shall be by certified mail, return receipt requested, directed to the Secretary of the Board at the FSMB corporate office.

   c. At the Board meeting following the date the response is due, the Board shall determine whether or not to proceed with removal. Notice of the Board's action shall be delivered to the officer or board member by certified mail, return receipt requested. If the officer or board

MK0010

member does not file a written response, the Board shall proceed with a determination.

    d.  If the Board votes to proceed with removal of the officer or board member, at a Board meeting the board member shall be afforded the opportunity to address the Board on the merits of the allegations and produce any relevant information to the Board after which the Board shall make a determination. The Board meeting at which the officer or board member has the opportunity to address the Board shall be held no less than thirty days after delivery of the notice of removal.

3.  APPEAL: Any officer or member of the Board of Directors removed by the Board of Directors may appeal to the House of Delegates at its next business meeting. The officer or member may be reinstated by a two-thirds vote of the House of Delegates.

4.  DELIVERY: For the purposes of this section, "Delivery" is effective upon mailing.

## SECTION F. VACANCIES

1.  DIRECTORS-AT-LARGE: In the event of a vacancy in the membership of the Directors-at-Large, the Board of Directors may appoint a Fellow who meets the qualifications for the position to serve until the next annual meeting of the House of Delegates, at which time a Fellow shall be elected and shall serve the remainder of the unexpired term. In the event a Director-at-Large is elected to the office of Treasurer or Chair-elect, that vacancy shall be filled by an election at the same annual meeting of the House of Delegates.

2.  STAFF FELLOWS: In the event of a vacancy of a Staff Fellow, the Board of Directors may appoint a substitute to complete the Staff Fellow's term in accordance with the policies established by the Board of Directors.

## SECTION G. EXECUTIVE COMMITTEE OF THE BOARD

1.  MEMBERSHIP: The Board of Directors shall establish an Executive Committee of the Board, which shall consist of the Chair as Chair, Chair-elect, Treasurer, Immediate Past Chair and three Directors-at-Large. The Directors-at-Large shall be elected for a one-year term by majority vote of the Directors-at-Large and the Staff Fellows serving on the Board of Directors at the first regular meeting of the Board following the annual meeting of the House of Delegates. In the event of a vacancy in a Director-at-Large position, the Directors-at-Large and the Staff Fellows serving on the Board, by majority vote, shall choose another Director-at-Large to serve the remainder of the one-year term. A Staff Fellow may serve in one of the Director-at-Large positions. No more than one Staff Fellow may serve on the Executive Committee at

MK0011

any one time. In the event of vacancy in the position of Immediate Past Chair, this position shall remain vacant until the next annual meeting of the House of Delegates.

2. DUTIES: In intervals between Board meetings, the Executive Committee shall act for and on behalf of the Board in any matters that require prompt attention. It shall not modify actions previously taken by the Board unless additional information or a change of circumstances is presented and warrants additional action.

3. MEETINGS: The Executive Committee may meet as often as it deems necessary or appropriate, either in person, telephonically, electronically or by unanimous written consent, and at such times and places and manner as the Chair may determine. Minutes must be kept of all meetings.

4. REPORTING: The Executive Committee shall report in writing all formal actions taken by it to the Board of Directors within five working days of taking those actions. At each meeting of the Board, the Executive Committee shall present to the Board a written report of all its formal actions since the previous meeting of the Board.

## SECTION H. PUBLIC POLICY STATEMENTS

A "public policy" is defined as the official public position of the FSMB on a matter that may be reasonably expected to affect Member Boards when dealing with their licensees, other health care providers, health-related special interest groups, governmental bodies or the public. The House of Delegates is the official public policy-making body of the FSMB. When the interests of the FSMB require more immediate action, the Board of Directors, or the President in consultation with the Chair, if feasible, is authorized to issue statements on matters of public policy between Annual Meetings.

## ARTICLE V. NOMINATION BY PETITION FOR BOARD OF DIRECTORS AND NOMINATING COMMITTEE

### SECTION A. SUBMISSION OF A PETITION

1. At the time the Nominating Committee's roster of candidates is distributed to the Member Boards, the Boards will be informed that a Fellow who is qualified for nomination, but not otherwise nominated by the Nominating Committee, may seek to run for a position on the Board of Directors as an Officer or Director-at-Large, or for a position on the Nominating Committee.

2. In order to be placed on the ballot, the Fellow seeking nomination is required to present a

petition to Administrative Staff that is signed by at least one Fellow from at least four Member Boards as well as a fellow from the Board of the member seeking nomination.

3. The deadline to submit petitions to the Administrative Staff is twenty-one days prior to the Annual Meeting.

## SECTION B. VALIDATION AND PLACEMENT ON BALLOT

1. The Administrative Staff shall verify that all signatures on the petition are valid. "Valid" is defined as the person who is seeking nomination and the persons who signed the petition are Fellows as defined in the FSMB Bylaws.

2. Once verified, the petitions are deemed valid and the candidate is placed on the ballot.

3. The names of those seeking to run by petition whose petitions are deemed valid shall be distributed to the Voting Delegates not fewer than fourteen days prior to the Annual Meeting.

4. Once a candidate seeking to run by petition is added to the ballot, the candidate shall be afforded the same privileges and be bound by the same rules in the campaign process as candidates who were nominated by the Nominating Committee.

## ARTICLE VI. PRESIDENT

The Board of Directors may, by a two-thirds majority vote of the full Board, appoint a President of the FSMB, who shall be a physician, to serve without term. The President shall administer the affairs of the FSMB and shall have such duties and responsibilities as the Board of Directors and the FSMB shall direct. The President shall serve as Secretary of the FSMB and shall be an ex-officio member, without vote, of the Board of Directors.

## ARTICLE VII. MEETINGS

### SECTION A. ANNUAL MEETING OF THE HOUSE OF DELEGATES

The annual meeting of the House of Delegates of the FSMB, which shall be called the House of Delegates, shall be held at such time and place as may be fixed by the Board of Directors. Written notice of the time and place of the meeting shall be given to all Member Medical Boards by mail not fewer than ninety days prior to the date of the meeting. Notice is effective upon mailing.

### SECTION B. SPECIAL MEETINGS OF THE HOUSE OF DELEGATES

Special meetings of the House of Delegates may be called at any time by the Chair, on the written request of ten Member Medical Boards or by action of the Board of Directors. Written notice of the

time and place of such meetings shall be given to all Member Medical Boards by mail not fewer than thirty days prior to the date of the meeting. Notice is effective upon mailing.

## SECTION C. RIGHT TO VOTE

1. The right to vote at meetings of the House of Delegates is vested in, and restricted to, Member Medical Boards. Each Member Medical Board is entitled to one vote, said vote to be cast by the delegate of the Member Board. The delegate shall be the president of the Member Medical Board or the President's designated alternate. In order for a delegate to be permitted to vote, the delegate shall present a letter of appointment to the Secretary of the Board of Directors.

2. All classes of membership shall have the right of the floor at meetings of the House upon request of a delegate and approval of the presiding officer; however, the right to introduce resolutions is restricted to Member Medical Boards and the Board of Directors and the procedure for submission of such resolutions shall be in accordance with FSMB Policy.

## SECTION D. QUORUM

A majority of Member Medical Boards shall constitute a quorum at any meeting of the House of Delegates. A majority of the voting members of the Board of Directors or any committee or other constituted group shall constitute a quorum of the Board, committee or group.

## SECTION E. RULES OF ORDER

Meetings of the House of Delegates, Board of Directors and all committees shall be conducted in accordance with the *American Institute of Parliamentarians Standard Code of Parliamentary Procedure*, current edition, except when in conflict with the Articles of Incorporation or these Bylaws, in which case the Articles of Incorporation or these Bylaws shall prevail.

## ARTICLE VIII. STANDING AND SPECIAL COMMITTEES

## SECTION A. STANDING COMMITTEES

1. The Standing Committees of the FSMB shall be:
   a. Audit Committee
   b. Bylaws Committee
   c. Education Committee
   d. Ethics and Professionalism Committee
   e. Finance Committee
   f. Journal Oversight Committee

g. Nominating Committee

6. ADDITIONAL STANDING COMMITTEES. Additional standing committees may be created by resolution of the FSMB and/or amendment to the Bylaws. Chairs and members of all standing committees, with the exception of the Nominating Committee, shall be appointed by the Chair, with the approval of the Board of Directors, for a term of one year, unless otherwise provided for in these Bylaws. Reappointment, unless specifically prohibited, is permissible.

7. MEMBERSHIP. Honorary Fellows and Associate Members may be appointed by the Chair to serve on a standing committee in addition to the number of committee members called for in the following sections of this chapter. No more than one Honorary Fellow, Associate Member or non-member subject matter expert may be appointed by the Chair to serve in such a capacity on any standing committee unless otherwise provided for in these Bylaws. All committee members shall serve with vote. Honorary Fellows, Associate Members and non-members appointed to standing committees by the Chair shall serve for a term concurrent with the term of the Chair. No individual shall serve on more than one standing committee except as specified in the Bylaws. With the exception of the Nominating Committee and the Journal Oversight Committee, the Chair and the Chair-elect shall serve, ex-officio, on all committees.

8. VACANCIES. In the event a vacancy occurs in an elected position on a standing committee, the Chair, with the approval of the Board of Directors, shall appoint a Fellow to serve on the committee until the next meeting of the House of Delegates, at which time an election will be held to fill the vacant position for the remainder of the unexpired term. In the event a vacancy occurs in an appointed position on a standing committee, the Chair, with the approval of the Board of Directors, shall appoint a Fellow to serve on the committee for the remainder of the unexpired term. In the event the Chairmanship of the Nominating Committee becomes vacant, the FSMB Chair, with the approval of the FSMB Board of Directors, shall appoint a Past Chair of the FSMB Board of Directors to serve in that capacity for the remainder of the unexpired term.

## SECTION B. AUDIT COMMITTEE

The Audit Committee shall:

1. Be composed of five Fellows, three of whom shall be members of the Board of Directors. The Treasurer of the FSMB shall serve ex-officio without vote. The Chair of the FSMB shall appoint the Chair of the Audit Committee from one of the three sitting Board Members.

2. Ensure that an annual audit of the financial accounts and records of the FSMB is performed

by an independent Certified Public Accounting firm.

3. Recommend to the Board of Directors the appointment, retention or termination of an independent auditor or auditors and develop a schedule for periodic solicitation of audit firms consistent with Board policies and best practices.

4. Oversee the independent auditors. The independent auditors shall report directly to the Committee.

5. Review the audit of the FSMB. Submit such audit and Committee's report to the Board of Directors.

6. Report any suggestions to the Board of Directors on fiscal policy to ensure the continuing financial strength of the FSMB.

7. When the finalized committee report to the Board of Directors is made, suggestions and feedback will be forwarded to the Finance Committee.

## SECTION C. BYLAWS COMMITTEE

The Bylaws Committee, composed of five Fellows, shall continually assess the Articles of Incorporation and the Bylaws and shall receive all proposals for amendments thereto. It shall, from time to time, make recommendations to the House of Delegates for changes, deletions, modifications and interpretations thereto.

## SECTION D. EDUCATION COMMITTEE

The Education Committee shall be composed of eight Fellows, to include the Chair as chair, the Immediate Past Chair and the Chair-elect. The Committee shall be responsible for assisting in the development of educational programs for the FSMB.

## SECTION E. ETHICS AND PROFESSIONALISM COMMITTEE

The Ethics and Professionalism Committee shall be composed of up to eight Fellows and up to two subject matter experts. The Ethics and Professionalism Committee shall address ethical and professional issues pertinent to medical regulation.

## SECTION F. FINANCE COMMITTEE

The Finance Committee shall be composed of five Fellows, to include the Treasurer as Chair. The Finance Committee shall review the financial condition of the FSMB, review and evaluate the costs of the activities and programs to be undertaken in the forthcoming year, present a budget for the FSMB to the Board of Directors for its recommendation to the House of Delegates at the Annual

Meeting and perform such other duties as are assigned to it by the Board of Directors. Except for the Treasurer, no Fellow shall serve on both the Audit and Finance Committees.

## SECTION G. JOURNAL OF MEDICAL REGULATION

1. The Board of Directors shall provide for the publication of the *Journal of Medical Regulation* to further scholarship on issues of medical regulation and public protection.

2. A Journal Oversight Committee consisting of three (3) members of the Board of Directors and four (4) other individuals shall be appointed by the Board of Directors. Directors shall serve for a term determined by policies of the Board of Directors. Committee members who are not Directors shall serve staggered three-year terms and be limited to two full terms. The Journal Oversight Committee shall develop the annual budget for the *Journal of Medical Regulation* and ensure the editorial independence of the *Journal of Medical Regulation.*

3. An Editorial Board, not to exceed four (4) Fellows and five (5) non-Fellows, shall be responsible for subject matter and editorial content of the *Journal of Medical Regulation*. Members shall be selected and serve terms set forth in a process approved by the Journal Oversight Committee. No officer or member of the Board of Directors shall serve on the Editorial Board.

## SECTION H. NOMINATING COMMITTEE: PROCESS FOR ELECTION

1. MEMBERSHIP: The Nominating Committee shall be composed of six Fellows and the Immediate Past Chair, who shall chair the Committee and serve without vote except in the event of a tie. At least one elected member of the Nominating Committee shall be a public member. With the exception of the Immediate Past Chair, no two Committee members shall be from the same member board and no officer or member of the Board of Directors shall serve on the Committee. A member of the Nominating Committee may not serve consecutive terms.

2. ELECTION: At least three Fellows shall be elected at each Annual Meeting of the House of Delegates by a plurality of votes cast, each to serve for a term of two years. Only an individual who is a Board Member Fellow at the time of the individual's election shall be eligible for election as a member of the Nominating Committee. In the event of a tie vote in a runoff election, up to two additional runoff elections shall be held. Prior to the election, the presiding officer shall cast a sealed vote, ranking each candidate in a list. The presiding officer's vote is counted for the candidate in the runoff election who is highest on the list. The presiding officer's vote is counted only to resolve a tie that cannot be decided by the process set forth in this section.

MK0017

3. Members of the Nominating Committee are not eligible for inclusion on the roster of candidates for offices and positions to be filled by election at the Annual Meeting of the House of Delegates.

## SECTION I. SPECIAL COMMITTEES

Special committees may be appointed by the Chair, from time to time, as may be necessary for a specific purpose.

## SECTION J. REPRESENTATIVES TO OTHER ORGANIZATIONS AND ENTITIES

Appointment of all representatives of the FSMB to other official organizations or entities shall be made or nominated by the Chair, with the approval of the Board of Directors, as applicable, and shall serve for a term of three years unless the other organization shall specify some other term of appointment. Representatives to these organizations shall be Fellows, Honorary Fellows or Associate Members at the time of their appointment or nomination.

## ARTICLE IX. UNITED STATES MEDICAL LICENSING EXAMINATION (USMLE)

SECTION A. Except as otherwise set forth in this Article, the composition of committees and subcommittees for the USMLE are subject to agreements with and the advice and consent of the National Board of Medical Examiners (NBME) and/or the USMLE Composite Committee. The Chair, with the approval of the Board of Directors, shall make appointments to the following USMLE committees in appropriate numbers and at appropriate times as required by the FSMB/NBME Agreement establishing the USMLE and by other agreements as may apply:

1. USMLE Composite Committee, which shall be responsible for the development, operation and maintenance of policies governing the three-step USMLE. The President shall be one of the FSMB's representatives on this Committee.

2. USMLE Budget Committee, which shall be responsible for the development and monitoring of USMLE revenues and expenses, including the establishment of fees. FSMB representatives on the Committee will be the Chair, Chair-elect, Treasurer, President and the senior FSMB financial staff member.

3. The USMLE Management Committee shall be responsible for overseeing the design, development, scoring and standard setting for the USMLE Step examinations, subject to policies established by and reporting to the USMLE Composite Committee. Appointments to the Management Committee shall be made consistent with the FSMB/NBME Agreement Establishing the USMLE.

MK0018

**SECTION B.**

The President shall provide FSMB advice and consent to the NBME for NBME's appointments to the USMLE Management Committee and/or any appointments made jointly under the FSMB/NBME Agreement Establishing the USMLE.

## ARTICLE X. POST-LICENSURE ASSESSMENT SYSTEM

The Post-Licensure Assessment Governing Committee shall be responsible for the development, operation and maintenance of policies governing the Post-Licensure Assessment System (PLAS) established by joint agreement between FSMB and NBME. The Chair, with the approval of the Board of Directors, shall make appointments to the Post-Licensure Assessment Governing Committee and its program committees in appropriate numbers and at appropriate times as required by the FSMB/NBME joint agreement establishing the Post-Licensure Assessment System and by other agreements as may apply.

## ARTICLE XI. FINANCES AND DUES

### SECTION A. SOURCES OF FUNDS

Funds necessary for the conduct of the affairs of the FSMB shall be derived from but not be limited to:

1. Annual dues imposed on the Member Medical Boards, Affiliate Members and Official Observers;

2. Special assessments established by the House of Delegates;

3. Voluntary contributions, devices, bequests and other gifts;

4. Fees charged for examination services, data base services, credentials verification services and publications.

### SECTION B. ANNUAL DUES, ELIGIBILITY TO SERVE AS A DELEGATE

The annual dues for Member Medical Boards shall be established, from time to time, by a majority vote of the House of Delegates.

1. Annual dues for Member Medical Boards shall be the same for all Members regardless of their physician populations.  Annual dues are due and payable not later than January 1.

2. Any Member Medical Board whose dues are in default at the time of the Annual Meeting of the House of Delegates shall be ineligible to have a seated delegate.

## ARTICLE XII. DISCIPLINARY ACTION

### SECTION A. MEMBER

For the purposes of this Article, a member shall be defined as a Member Medical Board, a Fellow, an Honorary Fellow, an Associate Member, an Affiliate Member or Official Observer.

### SECTION B. AUTHORIZATION

The Board of Directors, on behalf of the House of Delegates, may enforce disciplinary measures, including expulsion, suspension, censure and reprimand, and impose terms and conditions of probation or such sanctions as it may deem appropriate, for any of the following reasons:

1. Failure of the member to comply or act in accordance with these Bylaws, the Articles of Incorporation of the FSMB, or other duly adopted rules or regulations of the FSMB;

2. Failure of the member to comply with any contract or agreement between the FSMB and such member or with any contract or agreement of the FSMB that binds such member;

3. Failure of the member to maintain confidentiality or security, or the permitting of conditions that allow a breach of confidentiality or security, in any manner dealing with the licensing examination process or the confidentiality of FSMB records, including the storage, administration, grading or reporting of examinations and information relating to the examination process; or

4. The imposition of a sanction, judgment, disciplinary penalty or other similar action by a Member Medical Board that licenses the member or by a state or federal court, or other competent tribunal, whether or not related to the practice of medicine and including conduct as a member of a Member Medical Board.

### SECTION C. PROCEDURE

1. Any member alleged to have acted in such manner as to be subject to disciplinary action shall be accorded, at a minimum, the procedural protection set forth in the Manual for Disciplinary Procedures, which is available from the FSMB upon the written request of any member.

2. In event of a decision to expel a Member Medical Board pursuant to Section B, the House of Delegates shall ratify the decision at its next regularly scheduled meeting, or at an earlier meeting specially called for by the Chair in accordance with Article VII, Section B.

### SECTION D. REINSTATEMENT

In the event a member is expelled from the FSMB, the member may apply to the President for

reinstatement after one year following final action on expulsion. The President shall review the application and the reason for the expulsion and forward a report to the Board. The Board may accept the application for reinstatement under such terms and conditions as it may deem appropriate, reject the application or request further information from the President. The Board's decision to accept or reject an application is final.

## ARTICLE XIII. CORPORATE SEAL

The Board of Directors shall adopt a corporate seal that meets the requirements of the state in which the FSMB is incorporated.

## ARTICLE XIV. ADOPTION AND AMENDMENT OF BYLAWS, EFFECTIVE DATE

### SECTION A. AMENDMENT

These Bylaws may be amended at any annual meeting of the House of Delegates by two-thirds of those present and voting. Bylaws changes may be proposed only by the Board of Directors, Member Medical Boards or the Bylaws Committee and its members. All such proposals must be submitted in writing to the Bylaws Committee, in care of the Secretary of the FSMB. The Bylaws Committee shall inform the Member Medical Boards of its meeting dates not fewer than sixty days in advance of the meeting. The recommendations of the Bylaws Committee and the full texts of all proposed amendments recommended to the Committee shall be sent to each Member Medical Board not fewer than sixty days prior to the annual meeting of the House of Delegates at which they are to be considered.

### SECTION B. EFFECTIVE DATE

These Bylaws and any other subsequent amendments thereto, shall become effective upon their adoption, except as otherwise provided in the amendment.

Bylaws last amended in April 2022

MK0021

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493111015071 |
|---|---|---|

**Form 990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code

▶ Do not enter social security numbers on this form as it may

▶ Go to *www.irs.gov/Form990* for instructions and the la

OMB No. 1545-0047

**2019**

Open to Public Inspection

**EXHIBIT C**

**A** For the 2019 calendar year, or tax year beginning 05-01-2019 , and ending 04-30-2020

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
FEDERATION OF STATE MEDICAL BOARDS
RESEARCH & EDUCATION FOUNDATION

Doing business as
**FSMB FOUNDATION**

Number and street (or P.O. box if mail is not delivered to street address) | Room/suite
400 FULLER WISER ROAD

City or town, state or province, country, and ZIP or foreign postal code
EULESS, TX  76039

**F** Name and address of principal officer:
JANELLE A RHYNE MD
400 FULLER WISER ROAD
EULESS, TX  76039

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ▶ WWW.FSMB.ORG/FOUNDATION

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**D** Employer identification number
36-3071272

**E** Telephone number
(817) 868-4000

**G** Gross receipts $ 198,494

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)
**H(c)** Group exemption number ▶

**L** Year of formation: 1980 | **M** State of legal domicile: IL

## Part I    Summary

**1** Briefly describe the organization's mission or most significant activities:
TO SUPPORT AND PROMOTE RESEARCH AND EDUCATION INITIATIVES THAT STRENGTHEN THE SAFETY AND QUALITY OF HEALTH CARE THROUGH EFFECTIVE MEDICAL REGULATION.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) . . . . . . . . | **3** | 9 |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) . . . . | **4** | 6 |
| **5** Total number of individuals employed in calendar year 2019 (Part V, line 2a) . . . . | **5** | 0 |
| **6** Total number of volunteers (estimate if necessary) . . . . . . . . . . . . . | **6** | 10 |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . . | **7a** | 0 |
| **b** Net unrelated business taxable income from Form 990-T, line 39 . . . . . . . . | **7b** | 0 |

| | Prior Year | Current Year |
|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) . . . . . . . | 51,261 | 15,200 |
| **9** Program service revenue (Part VIII, line 2g) . . . . . . . | 0 | 0 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d ) . . . | 56,471 | 19,670 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 0 | 0 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 107,732 | 34,870 |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) . . . | 35,000 | 27,536 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) . . . . | 0 | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 0 | 0 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) . . . . | 0 | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . | 66,863 | 18,261 |
| **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 101,863 | 45,797 |
| **19** Revenue less expenses. Subtract line 18 from line 12 . . . . . . | 5,869 | -10,927 |

| | Beginning of Current Year | End of Year |
|---|---|---|
| **20** Total assets (Part X, line 16) . . . . . . . . . . . | 3,424,980 | 3,387,352 |
| **21** Total liabilities (Part X, line 26) . . . . . . . . . . | 15,622 | 11,538 |
| **22** Net assets or fund balances. Subtract line 21 from line 20 . . . . | 3,409,358 | 3,375,814 |

## Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

| ****** Signature of officer | 2021-04-20 Date |
|---|---|
| HUMAYUN J CHAUDHRY  SECRETARY Type or print name and title | |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date 2021-04-20 | Check ☐ if self-employed | PTIN P01684134 |
|---|---|---|---|---|
| Firm's name ▶ CLIFTONLARSONALLEN LLP | | | Firm's EIN ▶ 41-0746749 | |
| Firm's address ▶ 801 CHERRY STREET SUITE 1400   FORT WORTH, TX  76102 | | | Phone no. (817) 877-5000 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.    Cat. No. 11282Y    Form **990** (2019)

MK0022

Form 990 (2019)                                                                                                    Page **2**

| Part III | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

TO SUPPORT AND PROMOTE RESEARCH AND EDUCATION INITIATIVES THAT STRENGTHEN THE SAFETY AND QUALITY OF HEALTH CARE THROUGH EFFECTIVE MEDICAL REGULATION.

_____
_____
_____

**2** Did the organization undertake any significant program services during the year which were not listed on

   the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

   If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program

   services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☑ **Yes** ☐ **No**

   If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: _____ ) (Expenses $ _____ 40,746 _____ including grants of $ _____ 27,536 ) (Revenue $ _____ )
   See Additional Data

_____

**4b** (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**4c** (Code: _____ ) (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**4d** Other program services (Describe in Schedule O.)
   (Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )

**4e** Total program service expenses ▶ _____ 40,746

Form **990** (2019)

MK0023

Form 990 (2019)													Page **3**

| **Part IV** | **Checklist of Required Schedules** | | | |
|---|---|---|---|---|

| | | | **Yes** | **No** |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* 🖉 | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? 🖉 . . . | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* 🖉 | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* 🖉 . . . . | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* 🖉 . . . | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services?  *If "Yes," complete Schedule D, Part IV* 🖉 . . . | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* . . . . | **10** | Yes | |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* 🖉 . . . . . | **11a** | | No |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . . . . | **11b** | Yes | |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* 🖉 . . . . | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* 🖉 . . . . . | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* 🖉 | **11e** | | No |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* 🖉 | **11f** | Yes | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* 🖉 . . . . | **12a** | | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* 🖉 | **12b** | Yes | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* . . . . . . . | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) . . . . . | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . . 🖉 | **21** | Yes | |

Form **990** (2019)

MK0024

Form 990 (2019)                                                                                                    Page **4**

| **Part IV** | **Checklist of Required Schedules** *(continued)* | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . | **22** | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . | **23** | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . | **25a** | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . . | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . | **28a** | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . | **28b** | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . . | **29** | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* . . . | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . | **34** | Yes | |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . | **38** | Yes | |

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** | | | |
|---|---|---|---|---|
| | Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . ☐ | | | |

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . | **1a** | 1 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . | | **1c** | | |

Form **990** (2019)

MK0025

Form 990 (2019)                                                                                                                  Page **5**

| **Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)* | | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . . . . . . . **2a** `0` | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | **2b** | | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* . . . | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . . | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . . | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . . | **7a** | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . **7d** | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . . . . . | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . . . . . . | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . . | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . . **10a** | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . . **11a** | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . **Note.** See the instructions for additional information the organization must report on Schedule O. | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . **13b** | | | |
| **c** | Enter the amount of reserves on hand . . . . . . . . . . **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* . . | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . . . If "Yes," see instructions and file Form 4720, Schedule N. | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? . . If "Yes," complete Form 4720, Schedule O. | **16** | | No |

Form **990** (2019)

MK0026

Form 990 (2019)  Page **6**

| Part VI | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* | | |
|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . .  ☑

## Section A. Governing Body and Management

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year | **1a** | 9 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 6 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | **3** | | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . | **4** | | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . | **5** | | | No |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . | **6** | | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . | **7a** | | Yes | |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . | **7b** | | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? . . . . . . . . . . . . . . . | **8a** | | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . | **8b** | | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . . . . . | **9** | | | No |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . | **11a** | Yes | |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. . . . . . . | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . . . | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official . . . . . . . | **15a** | | No |
| **b** | Other officers or key employees of the organization . . . . . . . . . . | **15b** | | No |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . | **16b** | | |

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed▶

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.
☑ Own website  ☐ Another's website  ☑ Upon request  ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶TODD PHILLIPS CFO  400 FULLER WISER ROAD   EULESS, TX 76039 (817) 868-4000

Form **990** (2019)

MK0027

Form 990 (2019)    Page **7**

| Part VII | **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors** |

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . □

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

□  Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) DR HUMAYUN J CHAUDHRY DO<br>.................<br>SECRETARY | 3.00<br>.................<br>37.00 | X | | X | | | | 0 | 726,518 | 129,140 |
| (2) PATRICIA A KING MD PHD<br>.................<br>DIRECTOR | 2.00<br>.................<br>18.00 | X | | | | | | 0 | 72,136 | 0 |
| (3) CHERYL WALKER-MCGILL MD<br>.................<br>DIRECTOR | 2.00<br>.................<br>18.00 | X | | | | | | 0 | 33,763 | 0 |
| (4) KENNETH B SIMONS MD<br>.................<br>DIRECTOR | 2.00<br>.................<br>18.00 | X | | | | | | 0 | 274 | 0 |
| (5) KATHLEEN HALEY JD<br>.................<br>DIRECTOR | 2.00<br>.................<br> | X | | | | | | 0 | 0 | 0 |
| (6) ARTHUR S HENGERER MD<br>.................<br>DIRECTOR | 2.00<br>.................<br> | X | | | | | | 0 | 0 | 0 |
| (7) CLAUDETTE DALTON MD<br>.................<br>DIRECTOR | 2.00<br>.................<br> | X | | | | | | 0 | 0 | 0 |
| (8) JANELLE A RHYNE MD<br>.................<br>PRESIDENT | 10.00<br>.................<br> | X | | X | | | | 0 | 0 | 0 |
| (9) RANDAL C MANNING<br>.................<br>VICE PRESIDENT | 10.00<br>.................<br> | X | | X | | | | 0 | 0 | 0 |
| (10) RALPH C LOOMIS MD<br>.................<br>TREASURER | 10.00<br>.................<br> | X | | X | | | | 0 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

MK0028

Form 990 (2019)                                                                                                                                  Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A)<br>Name and title | (B)<br>Average<br>hours per<br>week (list<br>any hours<br>for related<br>organizations<br>below dotted<br>line) | (C)<br>Position (do not check more<br>than one box, unless person<br>is both an officer and a<br>director/trustee) | | | | | | (D)<br>Reportable<br>compensation<br>from the<br>organization<br>(W-2/1099-<br>MISC) | (E)<br>Reportable<br>compensation<br>from related<br>organizations<br>(W-2/1099-<br>MISC) | (F)<br>Estimated<br>amount of other<br>compensation<br>from the<br>organization and<br>related<br>organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . . . . . . . . ▶ | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . . ▶ | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . ▶ | | | | | | | | 0 | 832,691 | 129,140 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000
of reportable compensation from the organization ▶ 0

|  |  | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . .   **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **4** | Yes | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . .   **5** | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation
from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of
compensation from the organization ▶ 0

Form **990** (2019)

MK0029

Form 990 (2019)

| Part VIII | Statement of Revenue |

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . □

| | | | (A)<br>Total revenue | (B)<br>Related or exempt function revenue | (C)<br>Unrelated business revenue | (D)<br>Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** Federated campaigns . . | **1a** | | | | |
| | **b** Membership dues . . | **1b** | | | | |
| | **c** Fundraising events . . | **1c** | | | | |
| | **d** Related organizations | **1d** | | | | |
| | **e** Government grants (contributions) | **1e** | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 15,200 | | | |
| | **g** Noncash contributions included in lines 1a - 1f:$ | **1g** | | | | |
| | **h Total.** Add lines 1a-1f . . . . . ▶ | | 15,200 | | | |

| | | Business Code | | | | |
|---|---|---|---|---|---|---|
| **Program Service Revenue** | **2a** | | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** | | | | | |
| | **e** | | | | | |
| | **f** All other program service revenue. | | | | | |
| | **g Total.** Add lines 2a–2f. . . . . ▶ | | | | | |

| | | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . . ▶ | | 15,247 | | | 15,247 |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | **5** Royalties . . . . . . . . . ▶ | | | | | |

| | | | (i) Real | (ii) Personal | | | | |
|---|---|---|---|---|---|---|---|---|
| | **6a** Gross rents | **6a** | | | | | | |
| | **b** Less: rental expenses | **6b** | | | | | | |
| | **c** Rental income or (loss) | **6c** | | | | | | |
| | **d** Net rental income or (loss) . . . . . . ▶ | | | | | | | |

| | | | (i) Securities | (ii) Other | | | | |
|---|---|---|---|---|---|---|---|---|
| | **7a** Gross amount from sales of assets other than inventory | **7a** | 168,047 | | | | | |
| | **b** Less: cost or other basis and sales expenses | **7b** | 163,624 | | | | | |
| | **c** Gain or (loss) | **7c** | 4,423 | | | | | |
| | **d** Net gain or (loss) . . . . . . . . ▶ | | | | 4,423 | | | 4,423 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **8a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . . . . | **8a** | | | | | |
| | **b** Less: direct expenses . . . | **8b** | | | | | |
| | **c** Net income or (loss) from fundraising events . . ▶ | | | | | | |
| | **9a** Gross income from gaming activities. See Part IV, line 19 . . . | **9a** | | | | | |
| | **b** Less: direct expenses . . . | **9b** | | | | | |
| | **c** Net income or (loss) from gaming activities . . ▶ | | | | | | |
| | **10a** Gross sales of inventory, less returns and allowances | **10a** | | | | | |
| | **b** Less: cost of goods sold . . | **10b** | | | | | |
| | **c** Net income or (loss) from sales of inventory . . ▶ | | | | | | |

| Miscellaneous Revenue | | Business Code | | | | |
|---|---|---|---|---|---|---|
| **11a** | | | | | | |
| **b** | | | | | | |
| **c** | | | | | | |
| **d** All other revenue . . . . | | | | | | |
| **e Total.** Add lines 11a–11d . . . . . . ▶ | | | | | | |
| **12 Total revenue.** See instructions . . . . . ▶ | | | 34,870 | 0 | 0 | 19,670 |

Form **990** (2019)

MK0030

Form 990 (2019) <span style="float:right">Page **10**</span>

| Part IX | Statement of Functional Expenses |
|---|---|

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . | 27,536 | 27,536 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . . . . . . . . . . . | | | | |
| **4** Benefits paid to or for members . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . | | | | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . | | | | |
| **8** Pension plan accruals and contributions (include section 401 (k) and 403(b) employer contributions) . . . . | | | | |
| **9** Other employee benefits . . . . . . . . | | | | |
| **10** Payroll taxes . . . . . . . . . . . | | | | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . . | | | | |
| **c** Accounting . . . . . . . . . | | | | |
| **d** Lobbying . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . . . | 2,558 | | 2,558 | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 1,876 | 1,876 | | |
| **12** Advertising and promotion . . . . . | | | | |
| **13** Office expenses . . . . . . . . | 2,493 | | 2,493 | |
| **14** Information technology . . . . . . | | | | |
| **15** Royalties . . . | | | | |
| **16** Occupancy . . . . . . . . . | | | | |
| **17** Travel . . . . . . . . . . . | 9,297 | 9,297 | | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . . | | | | |
| **19** Conferences, conventions, and meetings . . . . | 2,037 | 2,037 | | |
| **20** Interest . . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . | | | | |
| **23** Insurance . . . . | | | | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** | | | | |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 45,797 | 40,746 | 5,051 | 0 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

<span style="float:right">Form **990** (2019)</span>

<span style="float:right">MK0031</span>

Form 990 (2019)                                                                                                                      Page **11**

| **Part X** | **Balance Sheet** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . . ☐

| | | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|
| | **1** | Cash—non-interest-bearing . . . . . . . . . | 30,102 | **1** | 31,007 |
| | **2** | Savings and temporary cash investments . . . . . . . . . . | 204,927 | **2** | 213,945 |
| | **3** | Pledges and grants receivable, net . . . . . . | | **3** | |
| | **4** | Accounts receivable, net . . . . . . . . . | 36,878 | **4** | 3,850 |
| | **5** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . . . | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . . . | | **6** | |
| Assets | **7** | Notes and loans receivable, net . . . . . . . . . . | | **7** | |
| | **8** | Inventories for sale or use . . . . . . . . . . | | **8** | |
| | **9** | Prepaid expenses and deferred charges . . . . . . | | **9** | |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | **10a** | | |
| | **b** | Less: accumulated depreciation | **10b** | | **10c** | |
| | **11** | Investments—publicly traded securities . | 1,892,847 | **11** | 1,848,504 |
| | **12** | Investments—other securities. See Part IV, line 11 . . . . . . | 1,259,726 | **12** | 1,289,546 |
| | **13** | Investments—program-related. See Part IV, line 11 . . | | **13** | |
| | **14** | Intangible assets . . . . . . . . . . . | | **14** | |
| | **15** | Other assets. See Part IV, line 11 . . . . . . . . . . | 500 | **15** | 500 |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . | 3,424,980 | **16** | 3,387,352 |
| | **17** | Accounts payable and accrued expenses . . . . . | 15,622 | **17** | 11,538 |
| | **18** | Grants payable . . . | | **18** | |
| | **19** | Deferred revenue . . . . . . . . | | **19** | |
| | **20** | Tax-exempt bond liabilities . . . . . . . . | | **20** | |
| Liabilities | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D | | **21** | |
| | **22** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . . . . | | **22** | |
| | **23** | Secured mortgages and notes payable to unrelated third parties . . | | **23** | |
| | **24** | Unsecured notes and loans payable to unrelated third parties . . | | **24** | |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | **25** | |
| | **26** | **Total liabilities.** Add lines 17 through 25 . . | 15,622 | **26** | 11,538 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶** ☑ **and complete lines 27, 28, 32, and 33.** | | | |
| | **27** | Net assets without donor restrictions . . . . . . . . . . | 3,409,358 | **27** | 3,375,814 |
| | **28** | Net assets with donor restrictions . . . . . . . . . . | | **28** | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶** ☐ **and complete lines 29 through 33.** | | | |
| | **29** | Capital stock or trust principal, or current funds . . . . . | | **29** | |
| | **30** | Paid-in or capital surplus, or land, building or equipment fund . . . | | **30** | |
| | **31** | Retained earnings, endowment, accumulated income, or other funds | | **31** | |
| | **32** | Total net assets or fund balances . . . . . . . . . | 3,409,358 | **32** | 3,375,814 |
| | **33** | Total liabilities and net assets/fund balances . . . . . . . . . | 3,424,980 | **33** | 3,387,352 |

Form **990** (2019)

MK0032

Form 990 (2019) Page **12**

| Part XI | **Reconcilliation of Net Assets** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . . . ☐

| | | | |
|---|---|---|---|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . | **1** | 34,870 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . | **2** | 45,797 |
| **3** | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . | **3** | -10,927 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . | **4** | 3,409,358 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . | **5** | -22,617 |
| **6** | Donated services and use of facilities . . . . . . . . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . . . . . . . . . . | **8** | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . | **9** | 0 |
| **10** | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | 3,375,814 |

| Part XII | **Financial Statements and Reporting** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|---|---|
| **1** | Accounting method used to prepare the Form 990:  ☐ Cash  ☑ Accrual  ☐ Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis  ☐ Consolidated basis  ☐ Both consolidated and separate basis | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis  ☑ Consolidated basis  ☐ Both consolidated and separate basis | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | |

Form **990** (2019)

MK0033

**Additional Data**

**Software ID:**

**Software Version:**

**EIN:**  36-3071272

**Name:**  FEDERATION OF STATE MEDICAL BOARDS
RESEARCH & EDUCATION FOUNDATION

Form 990 (2019)

**Form 990, Part III, Line 4a:**

THE FOUNDATION AWARDED FUNDING TO STATE MEDICAL BOARDS AND OTHER ORGANIZATIONS THAT ARE CONDUCTING RESEARCH, DEVELOPING EDUCATIONAL MATERIALS AND INCREASING AWARENESS ABOUT TOPICS OF IMPORTANCE TO MEDICAL REGULATORS. THE LATEST EXAMPLES OF FOUNDATION GRANTS INCLUDE: A). ADMINISTRATORS IN MEDICINE (AIM): THE FOUNDATION PROVIDED A $23,791 GRANT TO AIM TO HELP FUND ITS FIRST-EVER CERTIFIED MEDICAL BOARD LICENSURE TRAINING PROGRAM (CMBL), WHICH WAS HELD IN JULY 2019; B). LOUISIANA STATE BOARD OF MEDICAL EXAMINERS: THE LOUISIANA BOARD RECEIVED A $3,745 GRANT FROM THE FOUNDATION TO ASSIST IN A RESEARCH PROJECT AIMED AT EXAMINING PHYSICIAN MORTALITY IN LOUISIANA AND THE RELATIONSHIP BETWEEN PREMATURE MORTALITY AND DISCIPLINARY AND REMEDIATION EFFORTS OF THE BOARD; AND C). COVID-19 GRANTS.

MK0034

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | | DLN: 93493111015071 |
|---|---|---|---|

| **SCHEDULE A**<br>**(Form 990 or**<br>**990EZ)**<br><br>Department of the Treasury<br>Internal Revenue Service | **Public Charity Status and Public Support**<br>Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.<br>▶ Attach to Form 990 or Form 990-EZ.<br>▶ Go to _www.irs.gov/Form990_ for instructions and the latest information. | OMB No. 1545-0047<br>**2019**<br>**Open to Public Inspection** |
|---|---|---|

| Name of the organization<br>FEDERATION OF STATE MEDICAL BOARDS<br>RESEARCH & EDUCATION FOUNDATION | **Employer identification number**<br><br>36-3071272 |
|---|---|

**Part I**   **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

**1** ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

**2** ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

**3** ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

**4** ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

**5** ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

**6** ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

**7** ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**8** ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**9** ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

**10** ☐ An organization that normally receives: (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

**11** ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

**12** ☑ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

**a** ☑ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

**b** ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

**c** ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

**d** ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

**e** ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

**f** Enter the number of supported organizations   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   1

**g** Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| (A)<br>THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES | 751092490 | 10 | Yes | | 0 | 0 |
| **Total** | 1 | | | | 0 | 0 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.                    Cat. No. 11285F                    **Schedule A (Form 990 or 990-EZ) 2019**

MK0035

Schedule A (Form 990 or 990-EZ) 2019 | Page **2**

**Part II** Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III.
If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year<br>(or fiscal year beginning in) ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f). . | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year<br>(or fiscal year beginning in) ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. . | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | |

| | | |
|---|---|---|
| **12** Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . . . . . | **12** | |

**13** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization,
check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | |
|---|---|---|
| **14** Public support percentage for 2019 (line 6, column (f) divided by line 11, column (f)) . . . . . . . . . | **14** | |
| **15** Public support percentage for 2018 Schedule A, Part II, line 14 . . . . . . . . . . . . . . . . | **15** | |

**16a** **33 1/3% support test—2019.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box
and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**b** **33 1/3% support test—2018.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this
box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . ▶ ☐
**17a** **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, or 16b, and line 14
is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain
in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported
organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**b** **10%-facts-and-circumstances test—2018.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line
15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.**
Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly
supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see
instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

Schedule A (Form 990 or 990-EZ) 2019

MK0036

Schedule A (Form 990 or 990-EZ) 2019                                                                 Page **3**

| **Part III** | **Support Schedule for Organizations Described in Section 509(a)(2)** |

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge . | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . . | | | | | | |

**14** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization,

check this box and **stop here.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for 2019 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** Public support percentage from 2018 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . | **16** | |

### Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2019** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** Investment income percentage from **2018** Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | |

**19a** **331/3% support tests—2019.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not

more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

**b** **33 1/3% support tests—2018.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is

not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

Schedule A (Form 990 or 990-EZ) 2019
MK0037

Schedule A (Form 990 or 990-EZ) 2019

Page **4**

## Part IV   Supporting Organizations

(Complete only if you checked a box on line 12 of Part I. If you checked 12a of Part I, complete Sections A and B. If you checked 12b of Part I, complete Sections A and C. If you checked 12c of Part I, complete Sections A, D, and E. If you checked 12d of Part I, complete Sections A and D, and complete Part V.)

### Section A. All Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | Yes | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509 (a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | No |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below.* | **3a** | Yes | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | Yes | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | Yes | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 12a or 12b in Part I, answer (b) and (c) below.* | **4a** | | No |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in **Part VI**, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | No |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | **6** | | No |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) .* | **7** | | No |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* | **8** | | No |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | **9a** | | No |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | **9b** | | No |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | **9c** | | No |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | No |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

Schedule A (Form 990 or 990-EZ) 2019

MK0038

Schedule A (Form 990 or 990-EZ) 2019 — Page **5**

| **Part IV** | **Supporting Organizations** (continued) | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | **11a** | | **No** |
| **b** | A family member of a person described in (a) above? | **11b** | | **No** |
| **c** | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in Part VI.* | **11c** | | **No** |

### Section B. Type I Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in Part VI how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | **Yes** | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in Part VI how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | **No** |

### Section C. Type II Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in Part VI how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

### Section D. All Type III Supporting Organizations

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in Part VI how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in Part VI the role the organization's supported organizations played in this regard.* | **3** | | |

### Section E. Type III Functionally-Integrated Supporting Organizations

| | |
|---|---|
| **1** | Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**: |
| **a** | ☐  The organization satisfied the Activities Test. Complete **line 2** below. |
| **b** | ☐  The organization is the parent of each of its supported organizations. Complete **line 3** below. |
| **c** | ☐  The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions) |

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer (a) and (b) below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in Part VI identify those supported organizations and explain how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in Part VI the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer (a) and (b) below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in Part VI.* | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in Part VI. the role played by the organization in this regard.* | **3b** | | |

Schedule A (Form 990 or 990-EZ) 2019

MK0039

Schedule A (Form 990 or 990-EZ) 2019                                                                                  Page **6**

| **Part V** | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations | | | | |
|---|---|---|---|---|---|

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (explain in Part VI). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| **Section A - Adjusted Net Income** | | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | **1** | | |
| **2** | Recoveries of prior-year distributions | **2** | | |
| **3** | Other gross income (see instructions) | **3** | | |
| **4** | Add lines 1 through 3 | **4** | | |
| **5** | Depreciation and depletion | **5** | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** | Other expenses (see instructions) | **7** | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |
| **Section B - Minimum Asset Amount** | | | (A) Prior Year | (B) Current Year (optional) |
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** | Average monthly value of securities | **1a** | | |
| **b** | Average monthly cash balances | **1b** | | |
| **c** | Fair market value of other non-exempt-use assets | **1c** | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** | **Discount** claimed for blockage or other factors (explain in detail in Part VI): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 1-1/2% of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by .035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |
| **Section C - Distributable Amount** | | | | Current Year |
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990 or 990-EZ) 2019**
MK0040

Schedule A (Form 990 or 990-EZ) 2019 — Page **7**

| **Part V** Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations (continued) | |
|---|---|
| **Section D - Distributions** | **Current Year** |
| **1** Amounts paid to supported organizations to accomplish exempt purposes | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| **4** Amounts paid to acquire exempt-use assets | |
| **5** Qualified set-aside amounts (prior IRS approval required) | |
| **6** Other distributions (describe in **Part VI**). See instructions | |
| **7 Total annual distributions.** Add lines 1 through 6. | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**). See instructions | |
| **9** Distributable amount for 2019 from Section C, line 6 | |
| **10** Line 8 amount divided by Line 9 amount | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** Excess Distributions | **(ii)** Underdistributions Pre-2019 | **(iii)** Distributable Amount for 2019 |
|---|---|---|---|
| **1** Distributable amount for 2019 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2019 (reasonable cause required-- explain in **Part VI**). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2019: | | | |
| **a** From 2014. . . . . . . | | | |
| **b** From 2015. . . . . . . | | | |
| **c** From 2016. . . . . . . | | | |
| **d** From 2017. . . . . . . | | | |
| **e** From 2018. . . . . . . | | | |
| **f Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2019 distributable amount | | | |
| **i** Carryover from 2014 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from 3f. | | | |
| **4** Distributions for 2019 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2019 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from 4. | | | |
| **5** Remaining underdistributions for years prior to 2019, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| **6** Remaining underdistributions for 2019. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| **7 Excess distributions carryover to 2020.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2015. . . . . | | | |
| **b** Excess from 2016. . . . . | | | |
| **c** Excess from 2017. . . . . | | | |
| **d** Excess from 2018. . . . . | | | |
| **e** Excess from 2019. . . . . | | | |

MK0041

Schedule A (Form 990 or 990-EZ) 2019

Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions). |
|---|---|

---

**Facts And Circumstances Test**

---

**990 Schedule A, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART IV, SECTION A, LINE 3B | THE ORGANIZATION CONFIRMS ANNUALLY THAT THE SUPPORTED 501(C)(6) ORGANIZATION SATISFIES THE PUBLIC SUPPORT TESTS UNDER SECTION 509(A)(2). THIS CONFIRMATION LAST TOOK PLACE IN 2019. |

MK0042

MK0043

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493111015071 |
|---|---|---|

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2019**

**Open to Public Inspection**

**Name of the organization**
FEDERATION OF STATE MEDICAL BOARDS
RESEARCH & EDUCATION FOUNDATION

**Employer identification number**
36-3071272

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year . . . . . . . | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . . . .  ☐ Yes ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes ☐ No

## Part II — Conservation Easements.
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)   ☐ Preservation of an historically important land area
☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | Held at the End of the Year |
|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register . . . | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ _____

4  Number of states where property subject to conservation easement is located ▶ _____

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . .  ☐ Yes ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ _____

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ _____

8  Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes ☐ No

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b  If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . . ▶ $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a  Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . ▶ $ _____

b  Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**   Cat. No. 52283D   **Schedule D (Form 990) 2019**

MK0044

Schedule D (Form 990) 2019                                                        Page **2**

**Part III**  **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3**  Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition            **d** ☐ Loan or exchange programs

**b** ☐ Scholarly research            **e** ☐ Other ....................................................................

**c** ☐ Preservation for future generations

**4**  Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5**  During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . .   ☐ **Yes**   ☐ **No**

**Part IV**  **Escrow and Custodial Arrangements.**
        Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a**  Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ **Yes**   ☐ **No**

**b**  If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . . . . | **1d** | |
| **e** Distributions during the year . . . . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . . . . | **1f** | |

**2a**  Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b**  If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V**  **Endowment Funds.**
        Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . | 2,561,788 | 2,467,504 | 2,251,295 | 1,954,087 | 2,036,551 |
| **b** Contributions . . . . | | | | 221,000 | |
| **c** Net investment earnings, gains, and losses | 4,226 | 256,711 | 315,057 | 106,165 | -66,324 |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | 0 | 154,500 | 85,823 | 16,487 | 16,140 |
| **f** Administrative expenses . . . . | 2,558 | 7,927 | 13,025 | 13,469 | |
| **g** End of year balance . . . . . . | 2,563,456 | 2,561,788 | 2,467,504 | 2,251,295 | 1,954,087 |

**2**  Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a**  Board designated or quasi-endowment ▶   100.000 %

**b**  Permanent endowment ▶ ....................................

**c**  Temporarily restricted endowment ▶ ....................................

    The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a**  Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . . . . . . . . | **3a(i)** | | No |
| **(ii)** related organizations . . . . . . . . . . . . . . . . . | **3a(ii)** | | No |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . | **3b** | | |

**4**  Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI**  **Land, Buildings, and Equipment.**
        Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | | | |
| **e** Other . . . . . . | | | | |

**Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . ▶         0

Schedule D (Form 990) 2019

MK0045

Schedule D (Form 990) 2019        Page **3**

**Part VII**   **Investments—Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives . . . . . . . . . | | |
| **(2)** Closely-held equity interests . . . . . . | | |
| **(3)** Other _____ | | |
| (A) MERCATOR FUND (DE) LP | 1,289,546 | C |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | 1,289,546 | |

**Part VIII**   **Investments—Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 13.) ▶ | | |

**Part IX**   **Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 15.) . . . . . . . . . . . . ▶ | |

**Part X**   **Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 25.) ▶ | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

**Schedule D (Form 990) 2019**

MK0046

Schedule D (Form 990) 2019          Page **4**

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** | | |
|---|---|---|---|
| | Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | |
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | |
| **a** | Net unrealized gains (losses) on investments . . . . . | **2a** | |
| **b** | Donated services and use of facilities . . . . . . . . . . | **2b** | |
| **c** | Recoveries of prior year grants . . . . . . . . . . . | **2c** | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **2d** | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . . . . . | **2e** | |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . . . | **3** | |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **4b** | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . . . . | **4c** | |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) . . . . . . . | **5** | |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** | | |
|---|---|---|---|
| | Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | |
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . . . . | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | |
| **a** | Donated services and use of facilities . . . . . . . . . | **2a** | |
| **b** | Prior year adjustments . . . . . . . . . . . . . | **2b** | |
| **c** | Other losses . . . . . . . . . . . . . . . . . | **2c** | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **2d** | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . . . | **2e** | |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . . . | **3** | |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1**: | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **4b** | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . . . . | **4c** | |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) . . . . . . . | **5** | |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| See Additional Data Table | |
| | |
| | |
| | |
| | |
| | |
| | |

MK0047

Schedule D (Form 990) 2019

Page **5**

| Part XIII | Supplemental Information *(continued)* |
|---|---|
| Return Reference | Explanation |
| | |
| | |
| | |
| | |
| | |
| | |

Schedule D (Form 990) 2019

MK0048

**Additional Data**

|  |  |
|---|---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | 36-3071272 |
| **Name:** | FEDERATION OF STATE MEDICAL BOARDS RESEARCH & EDUCATION FOUNDATION |

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART V, LINE 4: | THE ENDOWMENT SHALL BE USED SOLELY TO SUPPORT THE FSMB FOUNDATION'S MISSION TO UNDERTAKE EDUCATIONAL AND SCIENTIFIC RESEARCH PROJECTS DESIGNED TO EXPAND PUBLIC AND MEDICAL PROFESSIONAL AWARENESS AND KNOWLEDGE OF CHALLENGES IMPACTING HEALTH CARE AND HEALTH CARE REGULATION IN ORDER TO CREATE STRONGER AND MORE EFFECTIVE MEDICAL LICENSURE AND REGULATION. |

MK0049



**Supplemental Information**

| Return Reference | Explanation |
| --- | --- |
| PART X, LINE 2: | THE FOUNDATION IS EXEMPT FROM THE PAYMENT OF INCOME TAXES ON THEIR EXEMPT ACTIVITIES UNDER SECTION 501(C)(3) OF THE IRC, AND ARE CLASSIFIED AS ORGANIZATIONS THAT ARE NOT A PRIVATE FOUNDATION UNDER SECTION 509(A)(3) OF THE CODE. THE FEDERATION FOLLOWS THE GUIDANCE IN THE INCOME TAX STANDARD REGARDING THE RECOGNITION AND MEASUREMENT OF UNCERTAIN TAX POSITIONS. THE APPLICATION OF THIS STANDARD HAD NO IMPACT ON THE FEDERATION'S CONSOLIDATED FINANCIAL STATEMENTS. FFMS AND THE FOUNDATION FILE AS TAX-EXEMPT ORGANIZATIONS. |

MK0050

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493111015071 |
|---|---|---|

**Schedule I (Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments and Individuals in the United States
**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for the latest information.

OMB No. 1545-0047

**2019**

**Open to Public Inspection**

Name of the organization
**FEDERATION OF STATE MEDICAL BOARDS RESEARCH & EDUCATION FOUNDATION**

Employer identification number
36-3071272

## Part I   General Information on Grants and Assistance

**1** Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . .   ☑ **Yes**   ☐ **No**

**2** Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II   Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| **(a)** Name and address of organization or government | **(b)** EIN | **(c)** IRC section (if applicable) | **(d)** Amount of cash grant | **(e)** Amount of non-cash assistance | **(f)** Method of valuation (book, FMV, appraisal, other) | **(g)** Description of noncash assistance | **(h)** Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) ADMINISTRATORS IN MEDICINE 1500 SUNDAY DR SUITE 102 RALEIGH, NC  27607 | 74-2329314 | 501(C)(6) | 23,791 | | | | TO SUPPORT AIM IN THEIR CERTIFIED MEDICAL BOARD LICENSURE TRAINING PROGRAM. |

**2** Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . . ▶ 0

**3** Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . . . . . . . ▶ 1

For Paperwork Reduction Act Notice, see the Instructions for Form 990.      Cat. No. 50055P      **Schedule I (Form 990) 2019**

MK0051

Schedule I (Form 990) 2019 Page **2**

**Part III** **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22.
Part III can be duplicated if additional space is needed.

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of noncash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV** **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | THE FOUNDATION SENDS A NOTICE OF GRANT FUNDS DISBURSEMENT TO GRANT RECIPIENTS, STIPULATING WITHIN 6 MONTHS OF RECEIPT OF FUNDING, YOU AGREE TO PROVIDE THE FOUNDATION WITH A WRITTEN REPORT SUMMARIZING THE STATUS OF THE PROJECT. THIS REPORT SHOULD INCLUDE A DESCRIPTION OF PROGRESS MADE TOWARD ACHIEVING THE PURPOSES OF THE GRANT AND INCLUDE AN ACCOUNTING OF THE USES OR EXPENDITURE OF FUNDS. WITHIN 60 DAYS OF PROJECT COMPLETION, YOU ALSO AGREE TO PROVIDE A WRITTEN REPORT THAT INCLUDES A NARRATIVE OF WHAT WAS ACCOMPLISHED BY THE GRANT SUCH AS THE RESULTS, BENEFITS AND IMPACT OF THE FUNDING, AS WELL AS AN INDICATION AS TO WHETHER THE FUNDING WAS 100% OF THE PROJECT COST. |

Schedule I (Form 990) 2019

MK0052

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | | DLN: 93493111015071 |
|---|---|---|---|

## Schedule J
**(Form 990)**

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
▶ **Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
▶ **Attach to Form 990.**
▶ **Go to** *www.irs.gov/Form990* **for instructions and the latest information.**

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0047

# 2019

**Open to Public Inspection**

| Name of the organization<br>FEDERATION OF STATE MEDICAL BOARDS<br>RESEARCH & EDUCATION FOUNDATION | **Employer identification number**<br>36-3071272 |
|---|---|

| **Part I** | **Questions Regarding Compensation** |
|---|---|

| | | Yes | No |
|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

☐ First-class or charter travel
☐ Travel for companions
☐ Tax idemnification and gross-up payments
☐ Discretionary spending account

☐ Housing allowance or residence for personal use
☐ Payments for business use of personal residence
☐ Health or social club dues or initiation fees
☐ Personal services (e.g., maid, chauffeur, chef)

| | | | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a?  .   . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

☐ Compensation committee
☐ Independent compensation consultant
☐ Form 990 of other organizations

☐ Written employment contract
☐ Compensation survey or study
☐ Approval by the board or compensation committee

| | | | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? .   .   .   .   .   .   .   .   .   .   . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? .   .   .   .   .   . | **4b** | Yes | |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? .   .   .   .   .   . | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |

| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
|---|---|---|---|---|
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **5a** | | No |
| **b** | Any related organization? .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **6a** | | No |
| **b** | Any related organization? .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III .   .   .   .   .   .   .   .   .   .   . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III .   . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | **9** | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**          Cat. No. 50053T          **Schedule J (Form 990) 2019**

MK0053

| **Part II** | Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed. |

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2 and/or 1099-MISC compensation | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1** DR HUMAYUN J CHAUDHRY DO SECRETARY | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 606,534 | 72,311 | 47,673 | 101,827 | 27,313 | 855,658 | 0 |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |
| | **(i)** | | | | | | | |
| | **(ii)** | | | | | | | |

MK0054

Schedule J (Form 990) 2019      Page **3**

**Part III**   **Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 4B | DR. HUMAYUN J. CHAUDHRY, DO - 457(F) PLAN EMPLOYER CONTRIBUTIONS $59,027. THERE WERE NO DISTRIBUTIONS IN FY2020. |
| SCHEDULE J, PART I, LINE 3: | FOR THE PURPOSE OF DETERMINING COMPENSATION, THE REPORTING ORGANIZATION DOES NOT COMPENSATE ANY OFFICERS/DIRECTORS. THEY RELIED ON A RELATED ORGANIZATION, THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, TO ESTABLISH THE COMPENSATION OF THE OFFICERS/DIRECTORS. THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES USED THE FOLLOWING PRACTICES TO ESTABLISH COMPENSATION FOR THE OFFICERS/DIRECTORS: COMPENSATION COMMITTEE, WRITTEN EMPLOYMENT CONTRACT, COMPENSATION SURVEY OR STUDY, AND APPROVAL BY THE BOARD OR COMPENSATION COMMITTEE. |

Schedule J (Form 990) 2019

MK0055

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493111015071 |
|---|---|---|

**SCHEDULE O**
**(Form 990 or 990-EZ)**

Department of the Treasury

## Supplemental Information to Form 990 or 990-EZ

Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.
▶ Go to *www.irs.gov/Form990* for the latest information.

OMB No. 1545-0047

**2019**

**Open to Public Inspection**

Name of the organization
FEDERATION OF STATE MEDICAL BOARDS
RESEARCH & EDUCATION FOUNDATION

**Employer identification number**

36-3071272

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART III, LINE 3 | IN FY2020, THE FSMB FOUNDATION EXPANDED ITS GRANTMAKING CAPABILITIES, SUPPORTING NEW PROJECTS NATIONWIDE THAT WILL ULTIMATELY BENEFIT MEDICAL REGULATION AND PUBLIC PROTECTION. USING A NEW, MORE FLEXIBLE GRANT STRUCTURE, THE FOUNDATION AWARDED FUNDING TO STATE MEDICAL BOARDS AND OTHER ORGANIZATIONS THAT ARE CONDUCTING RESEARCH, DEVELOPING EDUCATIONAL MATERIALS AND INCREASING AWARENESS ABOUT TOPICS OF IMPORTANCE TO MEDICAL REGULATORS. ADDITIONALLY, THE FOUNDATION BEGAN DEVELOPMENT IN EARLY 2020 OF A NEW GRANT OPPORTUNITY TO HELP STATE MEDICAL BOARDS AND OTHER HEALTH CARE ORGANIZATIONS STUDY STATE RESPONSES TO THE COVID-19 PANDEMIC. THE LONG-TERM GOAL OF THE PROGRAM IS TO ENCOURAGE THE DEVELOPMENT OF SUSTAINABLE MODELS AND POLICIES TO HELP STATES PREPARE FOR AND RESPOND TO SIMILAR EMERGENCIES IN THE FUTURE, AS WELL AS STRENGTHEN THEIR CAPACITY FOR RECOVERY PLANNING. |

MK0056

990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 7A | THE FOUNDATION BOARD SHALL CONSIST OF UP TO FIFTEEN (15) DIRECTORS (THE "DIRECTORS"), MINI MUM OF THREE (3) OF WHOM SHALL BE ELECTED FOR THREE (3) YEAR TERMS FROM AMONG THE FELLOWS OR HONORARY FELLOWS OF THE FSMB; ONE (1) OF WHOM SHALL BE THE CHIEF EXECUTIVE OFFICER OF T HE FEDERATION OF STATE MEDICAL BOARDS (THE "FSMB"), ONE (1) OF WHOM SHALL BE THE CURRENT C HAIR OF THE FSMB BOARD OF DIRECTORS, AND UP TO TWO (2) OF WHOM MAY BE PERSONS ELECTED FROM THE PUBLIC AT LARGE. AT NO TIME SHALL THE FOUNDATION BOARD CONSIST OF LESS THAN FORTY PER CENT (40%) OF DIRECTORS WHO HAVE BEEN ELECTED BY THE FSMB BOARD OF DIRECTORS. |

MK0057

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | THE FORM 990 IS REVIEWED BY THE TREASURER, THEN A COPY OF THE FORM 990 IS PROVIDED TO AND REVIEWED BY THE BOARD OF DIRECTORS BEFORE THE FORM 990 IS FILED WITH THE IRS. |

MK0058

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 12C | THE FOUNDATION'S CONFLICT OF INTEREST POLICY AND ITS CERTIFICATION IS DISTRIBUTED TO AND R EVIEWED ANNUALLY BY DIRECTORS, OFFICERS, COMMITTEE MEMBERS AND EXECUTIVE MANAGERS, EACH OF WHOM HAS A CONTINUING RESPONSIBILITY TO EVALUATE THEIR TRANSACTIONS, OUTSIDE BUSINESS INT ERESTS AND RELATIONSHIPS FOR POTENTIAL CONFLICTS OF INTEREST, AND TO MAKE SUCH DISCLOSURES AS DESCRIBED IN THE POLICY. THE FOUNDATION BOARD SHALL ANNUALLY REVIEW THE CONFLICT OF IN TEREST CERTIFICATIONS. THE DISCLOSURES CONTAINED THEREIN SHALL BE DEEMED APPROVED BY THE B OARD UNLESS AN OBJECTION IS MADE BY ONE OR MORE DIRECTORS. SUCH APPROVAL OR OBJECTION IS D OCUMENTED IN THE MINUTES OF THE BOARD MEETING. WHENEVER ANY INDIVIDUAL SUBJECT TO THIS POL ICY BELIEVES HE OR SHE MAY HAVE A CONFLICT OF INTEREST, HE OR SHE SHALL PROMPTLY NOTIFY TH E BOARD PRESIDENT OR APPROPRIATE COMMITTEE CHAIR OF SUCH CONFLICT. WHEN ANY CONFLICT OF IN TEREST IS RELEVANT TO A MATTER THAT COMES UNDER CONSIDERATION OR REQUIRES ACTION BY THE FO UNDATION BOARD OR A COMMITTEE, THE DIRECTOR/OFFICER/COMMITTEE MEMBER SHALL CALL IT TO THE ATTENTION OF THE BOARD PRESIDENT OR APPROPRIATE COMMITTEE CHAIR. AFTER BEING PERMITTED TO MAKE A PRESENTATION TO THE BOARD OR COMMITTEE, THE INTERESTED PARTY SHALL RECUSE HIMSELF O R HERSELF FOR THE DISCUSSION OF, AND THE VOTE ON, THE MATTER. THE INTERESTED PARTY SHALL B E COUNTED FOR PURPOSES OF A QUORUM BUT SHALL LEAVE THE MEETING BEFORE DECISIONS ARE MADE O N MATTERS IN WHICH HE/SHE HAS SUCH AN INTEREST. THE MINUTES OF THE MEETING OF THE BOARD OR COMMITTEE DOCUMENT ANY CONFLICT OF INTEREST THAT WAS DISCLOSED AND THAT THE INTERESTED PA RTY WAS NOT PRESENT DURING DISCUSSION OR DECISION ON THE MATTER AND DID NOT VOTE. |

MK0059

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION C, LINE 19 | THE FOUNDATION MAKES ITS GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS AVAILABLE TO THE PUBLIC ON THE WEBSITE AND UPON REQUEST. |

MK0060

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | | DLN: 93493111015071 |
|---|---|---|---|

## SCHEDULE R (Form 990)

Department of the Treasury
Internal Revenue Service

### Related Organizations and Unrelated Partnerships

► Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
► Attach to Form 990.
► Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

## 2019

**Open to Public Inspection**

Name of the organization
FEDERATION OF STATE MEDICAL BOARDS
RESEARCH & EDUCATION FOUNDATION

Employer identification number
36-3071272

**Part I** **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b) (13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| (1)THE FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES 400 FULLER WISER ROAD<br><br>EULESS, TX 76039<br>75-1092490 | PROMOTING EXCELLENCE IN MEDICAL PRACTICE, LICENSURE, AND REGULATION | NE | 501(C)(6) | N/A | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.    Cat. No. 50135Y    Schedule R (Form 990) 2019

MK0061

Schedule R (Form 990) 2019 | Page **2**

**Part III** | **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV** | **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Schedule R (Form 990) 2019

MK0062

| **Part V** | **Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36. | | | |

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | Yes | No |
|---|---|---|---|
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity . . . . . . . . . . . . . | **1a** | | No |
| **b** Gift, grant, or capital contribution to related organization(s) . . . . . . . . . . . . . . . . . . | **1b** | | No |
| **c** Gift, grant, or capital contribution from related organization(s) . . . . . . . . . . . . . . . . . | **1c** | | No |
| **d** Loans or loan guarantees to or for related organization(s) . . . . . . . . . . . . . . . . . . | **1d** | | No |
| **e** Loans or loan guarantees by related organization(s) . . . . . . . . . . . . . . . . . . . | **1e** | | No |
| **f** Dividends from related organization(s) . . . . . . . . . . . . . . . . . . . . . . | **1f** | | No |
| **g** Sale of assets to related organization(s) . . . . . . . . . . . . . . . . . . . . | **1g** | | No |
| **h** Purchase of assets from related organization(s) . . . . . . . . . . . . . . . . . . | **1h** | | No |
| **i** Exchange of assets with related organization(s) . . . . . . . . . . . . . . . . . . | **1i** | | No |
| **j** Lease of facilities, equipment, or other assets to related organization(s) . . . . . . . . . . . . . | **1j** | | No |
| **k** Lease of facilities, equipment, or other assets from related organization(s) . . . . . . . . . . . . | **1k** | | No |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) . . . . . . . . | **1l** | | No |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) . . . . . . . . | **1m** | Yes | |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) . . . . . . . . | **1n** | Yes | |
| **o** Sharing of paid employees with related organization(s) . . . . . . . . . . . . . . . . | **1o** | Yes | |
| **p** Reimbursement paid to related organization(s) for expenses . . . . . . . . . . . . . . . | **1p** | Yes | |
| **q** Reimbursement paid by related organization(s) for expenses . . . . . . . . . . . . . . . | **1q** | | No |
| **r** Other transfer of cash or property to related organization(s) . . . . . . . . . . . . . . . | **1r** | | No |
| **s** Other transfer of cash or property from related organization(s) . . . . . . . . . . . . . . | **1s** | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)**<br>Name of related organization | **(b)**<br>Transaction<br>type (a-s) | **(c)**<br>Amount involved | **(d)**<br>Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

MK0063

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

MK0064

MK0065

**EXHIBIT**

_____D_____



USAspending.gov  |  Fiscal Data

An official website of the U.S. government 🇺🇸

**USA**SPENDING.gov

AWARD PROFILE

## Grant Summary

## Project Grant

FAIN  H7F37568

**Completed**

Includes COVID-19 Spending

#### Awarding Agency

**Department of Health and Human Services (HHS)**

#### Recipient

**FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE**

400 FULLER WISER RD
EULESS, TX 76039-3857
Congressional District: TX-24
UNITED STATES

#### Assistance Listings (CFDA Programs) ⓘ

93.211 - TELEHEALTH PROGRAMS
VIEW MORE INFO ABOUT THIS PROGRAM

#### Dates ⓘ

●      ●

Start Date      May 01, 2020

MK0066

12/5/22, 7:04 PM                   GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending

End Date                                                                                                                    Apr 30, 2022

**$ Award Amounts**                                     ⓘ

                                                             💬 **Description**                                                          ⓘ

| Overall Spending | COVID-19 Spending |

                                                             CORONAVIRUS LICENSURE PORTABILITY GRANT PROGRAM

| Outlayed Amount |
| $2,493,428.94 |

| Obligated Amount |
| $2,500,000.00 |

| ○ Non-Federal Funding |
| $0.00 |

| Total Funding |

MK0067

GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending

$2,500,000.00

 View Transaction History



### 📊 Grant Activity

View transactions table

### 🥧 Federal Accounts

MK0068

GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending



| Federal Account | Combined Obligated Amount | Percent of Total | Funding Agency |
|---|---|---|---|
| PUBLIC HEALTH AND SOCIAL SERVICES EM... | $2,500,000 | 100% | (HHS) DEPARTMENT OF HEALTH AND HUMAN SERVI... |

NOTE: Result count may differ between treemap view and table view. Treemap view only displays accounts with a positive combined obligated amount, while table view displays all accounts.

**Summary of All Federal Accounts used by this Award**

| | |
|---|---|
| Total Funding Obligated | $2,500,000.00 |
| Total Count of Funding Agencies | 1 |
| Total Count of Awarding Agencies | 1 |
| Total Count of Federal Accounts | 1 |

🔲 View federal funding submissions

### 🗐 Assistance Listing (CFDA Program) Information    ⓘ

**93.211: TELEHEALTH PROGRAMS**

**Objectives**

The purpose of the Telehealth Network Program (TNGP) is to fund programs that demonstrate how telehealth networks improve healthcare services in rural communities. The current cohort is aimed towards promoting ...

read more

**Administrative Agency**

HEALTH RESOURCES AND SERVICES ADMINISTRATION, HEALTH AND HUMAN SERVICES, DEPARTMENT OF

MK0069

12/5/22, 7:04 PM                          GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending

Website

https://www.hrsa.gov/ruralhealth/telehealth/index.html

SAM.gov Page

https://sam.gov/fal/8557208a7c3940c89580656c3ac18978/view

SHOW MORE

🕒 **Award History**                                                                ⓘ

## Transaction History ⌄

| Modification Number ⬍ | Assistance Listing ⬍ | Action Date ⬍ | Amount ⬍ | Action Type ⬍ | Tran |
|---|---|---|---|---|---|
| 00 | 93.211 | 04/28/2020 | $2,500,000 | A: New | CC |
| 01 | 93.211 | 08/04/2021 | $0 | B: Continuation | CC |

👤 **Additional Information**

Expand All

🔲 Unique Award Key                                                                 ❯


MK0070

🏛 Agency Details                                                                                    ›

📍 Place Of Performance                                                                              ›

📅 Period Of Performance                                                                             ›

🏢 Recipient Details                                                                                 ›

👤 Executive Compensation                                                                            ›

# Stay in touch

## Get release notes delivered to your inbox

Sign up to receive our release notes to keep up with what's new on USAspending.gov.

**Sign Up** →

## Request a USAspending training session

Receive customized training for your organization on how to use our tools and data.

**Learn More** →



ABOUT

MK0071

About USAspending

Careers

HELP

FAQs

Community

Contact Us

DEVELOPERS

API

Explore the Code

Release Notes

OUR SITES

Fiscal Data

   

Accessibility

Privacy Policy

Freedom of Information Act

© 2022 USAspending.gov

**NOTE:** You must click here for very important D&B information.

MK0072

EXHIBIT

E



USAspending.gov   |   Fiscal Data
An official website of the U.S. government 

AWARD PROFILE
## Grant Summary



### Project Grant

FAIN  H1M24097
**In Progress**
(1 year, 6 months remain)

**Awarding Agency**

**Department of Health and Human Services (HHS)**

**Recipient**

**FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE**

400 FULLER WISER RD
EULESS, TX 76039-3857
Congressional District: TX-24
UNITED STATES

MK0073



**Assistance Listings (CFDA Programs)** ⓘ

93.211 - TELEHEALTH PROGRAMS
VIEW MORE INFO ABOUT THIS PROGRAM

**Dates** ⓘ

Today

Start Date                                                                                                    Jul 01, 2012
End Date                                                                                                      Jun 30, 2024

**$ Award Amounts** ⓘ

💬 **Description** ⓘ

## $691,374
Obligated Amount

LICENSURE PORTABILITY GRANT PROGRAM

$691,374
Total Funding

| Outlayed Amount |
|---|
| $0.00 |
| Obligated Amount |
| $691,374.00 |
| ⃝ Non-Federal Funding |
| $0.00 |
| Total Funding |

MK0074

$691,374.00

 View Transaction History

## 📈 Grant Activity



🔲 View transactions table

## ⬤ Federal Accounts

MK0075



| Federal Account | Combined Obligated Amount | Percent of Total | Funding Agency |
|---|---|---|---|
| RURAL HEALTH, HEALTH RESOURCES AND S... | $691,374 | 100% | (HHS) DEPARTMENT OF HEALTH AND HUMAN SERVI... |

**NOTE:** Result count may differ between treemap view and table view. Treemap view only displays accounts with a positive combined obligated amount, while table view displays all accounts.

**Summary of All Federal Accounts used by this Award**

| | |
|---|---|
| Total Funding Obligated | $691,374.36 |
| Total Count of Funding Agencies | 1 |
| Total Count of Awarding Agencies | 1 |
| Total Count of Federal Accounts | 1 |

⊞ View federal funding submissions

## 👉 Assistance Listing (CFDA Program) Information                                        ⓘ

**93.211: TELEHEALTH PROGRAMS**

**Objectives**

The purpose of the Telehealth Network Program (TNGP) is to fund programs that demonstrate how telehealth networks improve healthcare services in rural communities. The current cohort is aimed towards promoting ...

read more

**Administrative Agency**

HEALTH RESOURCES AND SERVICES ADMINISTRATION, HEALTH AND HUMAN SERVICES, DEPARTMENT OF

MK0076

12/5/22, 7:05 PM                              GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending

Website

https://www.hrsa.gov/ruralhealth/telehealth/index.html

SAM.gov Page

https://sam.gov/fal/8557208a7c3940c89580656c3ac18978/view

SHOW MORE

 Award History                                                                                                         ⓘ

## Transaction History ⌄

| Modification Number ⬍ | Assistance Listing ⬍ | Action Date ⬍ | Amount ⬍ | Action Type ⬍ | Tran |
|---|---|---|---|---|---|
| 00 | 93.211 | 05/20/2021 | $76,250 | B: Continuation | LIC |
| 00 | 93.211 | 06/02/2020 | $245,250 | B: Continuation | LIC |
| 00 | 93.211 | 06/13/2022 | $76,250 | B: Continuation | LIC |
| 00 | 93.211 | 05/21/2019 | $243,625 | B: Continuation | LIC |
| 01 | 93.211 | 10/06/2020 | $0 | C: Revision | LIC |
| 01 | 93.211 | 07/01/2019 | $0 | C: Revision | LIC |
| 01 | 93.211 | 08/25/2022 | $50,000 | C: Revision | LIC |
| 01 | 93.211 | 07/06/2021 | $0 | C: Revision | LIC |
| 02 | 93.211 | 08/04/2021 | $0 | C: Revision | LIC |
| 02 | 93.211 | 07/15/2019 | $0 | C: Revision | LIC |

MK0077

| 03 | 93.211 | 01/05/2022 | $0 | C: Revision | LICENSURE PORTABILITY GRANT PROGRAM |
| 03 | 93.211 | 07/30/2019 | $0 | C: Revision | LICENSURE PORTABILITY GRANT PROGRAM |
| 04 | 93.211 | 12/04/2018 | $0 | C: Revision | LICENSURE PORTABILITY GRANT PROGRAM |

---

**ℹ Additional Information**

Expand All

�
 Unique Award Key                                                                                          ›

🏛 Agency Details                                                                                            ›

📍 Place Of Performance                                                                                      ›

📅 Period Of Performance                                                                                     ›

🏢 Recipient Details                                                                                         ›

👤 Executive Compensation                                                                                    ›

# Stay in touch

## Get release notes delivered to your inbox

Sign up to receive our release notes to keep up with what's new on USAspending.gov.

**Sign Up →**

MK0078

## Request a USAspending training session

Receive customized training for your organization on how to use our tools and data.

**Learn More** →



ABOUT

About USAspending

Careers

HELP

FAQs

Community

Contact Us

DEVELOPERS

API

Explore the Code

Release Notes

OUR SITES

Fiscal Data

      

Accessibility

Privacy Policy

MK0079

GRANT to FEDERATION OF STATE MEDICAL BOARDS OF THE UNITED STATES, INCORPORATED, THE | USAspending

Freedom of Information Act

© 2022 USAspending.gov

**NOTE:** You must click here for very important D&B information.

MK0080



Defend the Facts  Support ProPublica   **DONATE**

**ProPublica**        f  🐦  |  ✉ SIGN UP          **Donate**

EXHIBIT

F

## Nonprofit Explorer
Research Tax-Exempt Organizations

# NATIONAL BOARD OF MEDICAL EXAMINERS

PHILADELPHIA, PA 19104-3102 | TAX-EXEMPT SINCE SEPT. 1937

**EIN:** 23-1352238

**Classification** (NTEE)
Professional Societies, Associations (Health — General and Rehabilitative)

**Nonprofit Tax Code Designation: 501(c)(3)**
Defined as: Organizations for any of the following purposes: religious, educational, charitable, scientific, literary, testing for public safety, fostering national or international amateur sports competition (as long as it doesn't provide athletic facilities or equipment), or the prevention of cruelty to children or animals.

**Donations to this organization are tax deductible.**

**More Resources:** ⌐ GuideStar

**Get notifications:** Sign up for updates about our data.

## Tax Filings by Year

The IRS Form 990 is an annual information return that most organizations claiming federal tax-exempt status must file yearly. Read the IRS instructions for 990 forms.

If this organization has filed an amended return, it may be reflected in the data below. Duplicated download links may be due to resubmissions or amendments to an organization's original return.

 The Internal Revenue Service is substantially delayed in processing and releasing nonprofit filings, so documents available here may not be the most recent an organization has filed. ProPublica posts new tax forms as they are released by the IRS.



FISCAL YEAR ENDING DEC.
**2020**

The IRS has provided extracted financial data for this filing, but has not yet released the source documents.

**Total Revenue**          **$147,961,859**

**Total Functional Expenses**  $158,761,733
**Net income**          -$10,799,874

| Notable sources of revenue | | Percent of total revenue | |
| --- | --- | --- | --- |
| Contributions | $0 | | |
| Program services | $129,643,354 | | 87.6% |
| Investment income | $4,909,460 | 3.3% | |
| Bond proceeds | $0 | | |
| Royalties | $0 | | |
| Rental property income | $435,338 | 0.3% | |
| Net fundraising | $0 | | |
| Sales of assets | $12,973,707 | 8.8% | |
| Net inventory sales | $0 | | |
| Other revenue | $0 | | |

| Notable expenses | | Percent of total expenses |
| --- | --- | --- |

MK0081

**Total Revenue** **$147,961,859**

**Total Functional Expenses** $158,761,733
**Net income** -$10,799,874
Executive compensation $4,487,205 | 2.8%
Professional fundraising fees $0
Other salaries and wages $54,869,463 | 34.6%

**Other**
Total Assets $396,621,143
Total Liabilities $231,284,700
Net Assets $165,336,443

**Help Keep Nonprofit Explorer Free!**

If you have used our data or site in your research or reporting, add credit and a link to Nonprofit Explorer in your story or publication and let us know.



FISCAL YEAR ENDING DEC.
**2019**

PDF
990
990-T
Full Text

990 (FILED ON JULY 9, 2020)

Full Filing
Schedules ▾

Raw XML
990

**Total Revenue** **$180,705,162**

**Total Functional Expenses** $177,615,287
**Net income** $3,089,875

| Notable sources of revenue | | Percent of total revenue |
|---|---|---|
| Contributions | $0 | |
| Program services | $169,167,743 | 93.6% |
| Investment income | $5,711,865 | 3.2% |
| Bond proceeds | $0 | |
| Royalties | $0 | |
| Rental property income | $411,127 | 0.2% |
| Net fundraising | $0 | |
| Sales of assets | $5,414,427 | 3.0% |
| Net inventory sales | $0 | |
| Other revenue | $0 | |

| Notable expenses | | Percent of total expenses |
|---|---|---|
| Executive compensation | $4,646,537 | 2.6% |
| Professional fundraising fees | $0 | |
| Other salaries and wages | $54,290,169 | 30.6% |

**Other**
Total Assets $397,806,467
Total Liabilities $251,131,566
Net Assets $146,674,901

| Key Employees and Officers | Compensation |
|---|---|
| Peter J Katsufrakis (*President & CEO*) | $664,285 |
| Stephen G Clyman (*SVP, R&D*) | $528,200 |
| Craig N Mills (*SVP, SD&D*) | $444,531 |

+ Show more



FISCAL YEAR ENDING DEC.
**2018**

PDF
990
990-T
Full Text

990 (FILED ON JUNE 21, 2019)

**Total Revenue** **$175,436,266**

**Total Functional Expenses** $172,353,556
**Net income** $3,082,710

| Notable sources of revenue | | Percent of total revenue |
|---|---|---|
| Contributions | $0 | |
| Program services | $158,617,802 | 90.4% |
| Investment income | $7,197,257 | 4.1% |
| Bond proceeds | $0 | |
| Royalties | $0 | |
| Rental property income | $374,626 | 0.2% |
| Net fundraising | $0 | |
| Sales of assets | $9,246,581 | 5.3% |
| Net inventory sales | $0 | |

MK0082



**Total Revenue** **$175,436,266**

| | | Percent of total expenses |
|---|---|---|
| Total Functional Expenses | $172,353,556 | |
| Net income | $3,082,710 | |
| Other revenue | $0 | |

**Notable expenses**

| | | Percent of total expenses |
|---|---|---|
| Executive compensation | $5,738,646 | 3.3% |
| Professional fundraising fees | $0 | |
| Other salaries and wages | $51,473,677 | 29.9% |

**Other**

| | |
|---|---|
| Total Assets | $337,351,702 |
| Total Liabilities | $213,114,730 |
| Net Assets | $124,236,972 |

| Key Employees and Officers | Compensation |
|---|---|
| Peter J Katsufrakis *(President)* | $642,734 |
| Kim E LeBlanc *(Executive Director, CSEC)* | $519,892 |
| Stephen G Clyman *(SVP, R&D)* | $483,328 |

+ Show more



FISCAL YEAR ENDING DEC.
**2017**

PDF

990

990-T

Full Text

990 (FILED ON MAY 10, 2018)

Full Filing

Schedules ▾

Raw XML

990

**Total Revenue** **$175,591,889**

| | |
|---|---|
| Total Functional Expenses | $167,550,910 |
| Net income | $8,040,979 |

**Notable sources of revenue**

| | | Percent of total revenue |
|---|---|---|
| Contributions | $0 | |
| Program services | $153,939,975 | 87.7% |
| Investment income | $5,711,270 | 3.3% |
| Bond proceeds | $0 | |
| Royalties | $0 | |
| Rental property income | $230,338 | 0.1% |
| Net fundraising | $0 | |
| Sales of assets | $15,710,306 | 8.9% |
| Net inventory sales | $0 | |
| Other revenue | $0 | |

**Notable expenses**

| | | Percent of total expenses |
|---|---|---|
| Executive compensation | $5,937,806 | 3.5% |
| Professional fundraising fees | $0 | |
| Other salaries and wages | $47,136,404 | 28.1% |

**Other**

| | |
|---|---|
| Total Assets | $361,484,921 |
| Total Liabilities | $183,848,220 |
| Net Assets | $177,636,701 |

| Key Employees and Officers | Compensation |
|---|---|
| Donald E Melnick *(President (Ret))* | $932,255 |
| Peter J Katsufrakis *(President)* | $571,025 |
| Stephen G Clyman *(SVP, R&D)* | $471,074 |

+ Show more



FISCAL YEAR ENDING DEC.
**2016**

PDF

990-T

**Total Revenue** **$158,255,403**

| | | Percent of total revenue |
|---|---|---|
| Total Functional Expenses | $161,704,467 | |
| Net income | -$3,449,064 | |

**Notable sources of revenue**

| | | Percent of total revenue |
|---|---|---|
| Contributions | $0 | |
| Program services | $151,101,701 | 95.5% |
| Investment income | $5,228,825 | 3.3% |

MK0083



Full Text

990 (FILED ON MAY 3, 2017)

Full Filing

Schedules

Raw XML

990

## Total Revenue $158,255,403

| | | |
|---|---|---|
| **Total Functional Expenses** | **$161,704,467** | |
| **Net income** | **-$3,449,064** | |
| Bond proceeds | $0 | |
| Royalties | $0 | |
| Rental property income | -$46,539 | |
| Net fundraising | $0 | |
| Sales of assets | $1,971,416 | 1.2% |
| Net inventory sales | $0 | |
| Other revenue | $0 | |

| Notable expenses | | Percent of total expenses |
|---|---|---|
| Executive compensation | $7,445,834 | 4.6% |
| Professional fundraising fees | $0 | |
| Other salaries and wages | $45,084,638 | 27.9% |

**Other**

| | |
|---|---|
| Total Assets | $333,550,555 |
| Total Liabilities | $205,247,823 |
| Net Assets | $128,302,732 |

| Key Employees and Officers | Compensation |
|---|---|
| Donald E Melnick *(President)* | $1,177,726 |
| Peter J Katsufrakis *(SVP, Assmt Prgm)* | $453,909 |
| Stephen G Clyman *(SVP, R&D)* | $446,067 |

+ Show more



FISCAL YEAR ENDING DEC.

**2015**

PDF

990

990-T

Full Text

990 (FILED ON MAY 16, 2016)

Full Filing

Schedules

Raw XML

990

## Total Revenue $154,368,929

| | | |
|---|---|---|
| **Total Functional Expenses** | **$145,079,048** | |
| **Net income** | **$9,289,881** | |

| Notable sources of revenue | | Percent of total revenue |
|---|---|---|
| Contributions | $0 | |
| Program services | $142,002,705 | 92.0% |
| Investment income | $5,420,876 | 3.5% |
| Bond proceeds | $0 | |
| Royalties | $0 | |
| Rental property income | -$141,748 | |
| Net fundraising | $0 | |
| Sales of assets | $7,087,096 | 4.6% |
| Net inventory sales | $0 | |
| Other revenue | $0 | |

| Notable expenses | | Percent of total expenses |
|---|---|---|
| Executive compensation | $7,051,488 | 4.9% |
| Professional fundraising fees | $0 | |
| Other salaries and wages | $40,058,294 | 27.6% |

**Other**

| | |
|---|---|
| Total Assets | $314,995,058 |
| Total Liabilities | $193,384,592 |
| Net Assets | $121,610,466 |

| Key Employees and Officers | Compensation |
|---|---|
| Donald E Melnick *(President)* | $1,055,517 |
| Ronald J Nungester *(SVP, Prof Svcs)* | $476,756 |
| Peter J Katsufrakis *(SVP, Assmt Prgm)* | $426,580 |

+ Show more

FISCAL YEAR ENDING DEC.



**Highly Confidential**



EXHIBIT

_____ G _____

February 8, 2022

Markcus Zwanz Kitchens
625 Hampton Way #2
Richmond, KY 40475

RE: USMLE Step 1                          USMLE ID#: 1-077-051-9

Dear Markcus Zwanz Kitchens:

We have thoroughly reviewed the documentation you provided in support of your request for test accommodations on the United States Medical Licensing Examination (USMLE) Step 1.

Accommodations are intended to ensure that individuals with a documented disability as defined by the Americans with Disabilities Act (ADA) can take the USMLE exams in an accessible place and manner. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA defines disability as a physical or mental impairment that substantially limits a person's ability to perform one or more major life activities, as compared to most people in the general population. Therefore, not every impairment will constitute a disability.

**We conducted an individualized review of your request in accordance with the guidelines set forth in the ADA. Specifically, one or more doctoral-level psychological or medical professionals:**

- Carefully considered all of the information you provided, including the recommendations of your treating and/or evaluating professional(s)
- Gave substantial weight to your history of accommodations on standardized examinations
- Considered whether and how your reported impairment(s) affects your ability to access a computer-based examination like the USMLE

**Based upon this review, we have concluded that you have not shown that your requested accommodations are necessary for you to access the USMLE. Accordingly, your request is being denied, for the following primary reasons:**

- Your treatment professionals did not provide sufficient information regarding the basis for the diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD). Even if not formally diagnosed in childhood, the essential feature of ADHD, a neurodevelopmental disorder, is a persistent pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development. According to the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*, manifestation of the disorder must be present in more than one setting (e.g., home and school, work). Adult self-report and recall is not sufficient to substantiate a history of substantial symptoms across settings. Your documentation does not objectively demonstrate that you have shown pervasive problems managing daily demands for attention, concentration, or organization in school, work, social, or other domains.

**NBME** 3750 Market Street, Philadelphia PA 10104-3102, USA **T** 215-590-9700 **W** nbme.org

MK0085

- While we noted your 2018 diagnosis of Test Anxiety, experiencing anxiety during high-stakes examinations is not, in and of itself, evidence of a disability or impairment in a major life activity.

- Your documentation reveals a history of not being substantially limited in your ability to perform the functions that are relevant to taking a standardized test like the USMLE. As best one can tell, you progressed throughout your education with an academic record and scores on timed standardized tests sufficient to gain admission to and graduate from university and medical school, all without formal accommodations.

We hope this information assists you in understanding the basis for our decision. We will request processing of your exam application without test accommodations. You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

**Please monitor the USMLE announcements page at www.usmle.org and the Prometric website at www.prometric.com/corona-virus-update for up-to-date information regarding the impact of the coronavirus (COVID-19) pandemic on USMLE testing.**

Sincerely,
Disability Services

Highly Confidential

MK0086