## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. MARKCUS KITCHENS, JR.,

      Plaintiff,

    v.

NATIONAL BOARD OF MEDICAL
EXAMINERS,

      Defendants.

Civil Action No. 2:22-CV-03301-JMY

## DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.     NBME and the USMLE ......................................................................... 2

    II.    Dr. Kitchen's USMLE and Litigation History ...................................... 3

    III.   Applying for Residency Programs ........................................................ 7

ARGUMENT .................................................................................................................. 8

    I.     Dr. Kitchens Has Not Satisfied the Demanding Standard for a
          Mandatory  Preliminary Injunction ...................................................... 9

          A.    Dr. Kitchens Has Not Met His Burden of Demonstrating
               Irreparable Harm ...................................................................... 9

          B.    Dr. Kitchens Has Not Made a Clear Showing of Likely
               Success on His Claim .............................................................. 13

               1.    Disability Under the ADA:  Substantial Limitation
                    in a Major Life Activity Compared to Most People
                    in the General Population. ........................................ 13

               2.    Dr. Kitchens Is Not Disabled Within the Meaning
                    of the ADA ............................................................... 15

          C.    NBME and Other Examinees Would Be Harmed by a
               Preliminary Injunction .......................................................... 21

          D.    The Public Interest Does Not Support Dr. Kitchens'
               Motion .................................................................................... 22

    II.    Dr. Kitchens Is Not Entitled to Expungement of His Testing
          Record .................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Acierno v. New Castle Cty.*,
   40 F.3d 645 (3d Cir. 1994)...................................................................................................9

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000)...............................................................................................9

*Bach v. Law Sch. Admission Council*,
   2014 U.S. Dist. LEXIS 124632 (M.D.N.C. 2014)......................................................22, 23

*Baer v. NBME*,
   392 F.Supp.2d 42 (D. Mass. 2005) ..................................................................................10

*Bennington Foods LLC v. St. Croix Renaissance Group, LLP*,
   528 F.3d 176 (3d Cir. 2008)..............................................................................................13

*Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs*,
   2016 WL 1404157 (E.D. Pa. 2016) ..............................................................................15, 22

*Black v. NBME*,
   281 F. Supp. 3d 1247 (S.D. Fla. 2017) ........................................................................15, 22

*Campbell Soup Co. v. ConAgra, Inc.*,
   977 F.2d 86 (3d Cir. 1992)..................................................................................................9

*Collins v. Prudential Investment & Retirement Servs.*,
   119 F. App'x 371 (3d Cir. 2005) .....................................................................................14

*Doe v. Ohio State Univ.*,
   2016 WL 692547 (S.D. Ohio 2016), *objections overruled, report aff'd*, 2016
   WL 1578750 (S.D. Ohio 2016).........................................................................................11

*Doherty v. NBME*,
   791 F. App'x 462 (5th Cir. 2019) ................................................................................19, 22

*Glueck v. Nat'l Conf. of Bar Exam'rs*,
   2018 WL 3977891 (W.D. Tex. 2018).............................................................................22

*Healy v. Nat'l Bd. of Osteopathic Med. Exam'rs*,
   870 F. Supp. 2d 607 (S.D. Ind. 2012) .............................................................................23

*Hentze v. CSX Transp., Inc.*,
   477 F. Supp. 3d 644 (S.D. Ohio 2020) ......................................................................14, 17

*Kaltenberger v. Ohio College of Podiatric Med.*,
    162 F.3d 432 (6th Cir. 1998) ............................................................................................25

*Love v. Law Sch. Admission Council*,
    513 F. Supp. 2d 206 (E.D. Pa. 2007) ...............................................................................14

*Mann v. Louisiana High Sch. Athletic Ass'n.*,
    535 Fed. App'x 405 (5th Cir. 2013) .................................................................................14

*Powell v. NBME*,
    364 F.3d 79 (2d Cir. 2004)...................................................................................2, 3, 22, 23

*Ramsay v. NBME*,
    968 F.3d 251 (3d Cir. 2020)..........................................................................................19, 20

*Rawdin v. Amer. Bd. of Pediatrics*,
    985 F. Supp. 2d 636 (E.D. Pa. 2013), *aff'd on other grounds*, 582 F. App'x
    114 (3d Cir. 2014)..............................................................................................................22

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)................................................................................................9

*Rhodes v. Langston Univ.*,
    462 F. App'x. 773 (10th Cir. 2011) ..................................................................................17

*Rothberg v. Law Sch. Admission Council*,
    102 F. App'x 122 (10th Cir. 2004) ...................................................................................22

*Rumbin v. Ass'n of Amer. Med. Colleges*,
    803 F. Supp. 2d 83, 94 (D. Conn. 2011) ..........................................................................17

*SEC v. Gentile*,
    939 F.3d 549 (3d Cir. 2019)..............................................................................................24

*Shirley v. Univ. of Idaho*,
    2014 WL 12991817 (D. Idaho 2014).................................................................................16

*Singh v. George Wash. Univ.*,
    508 F.3d 1097 (D.C. Cir. 2007) ........................................................................................15

*Steere v. George Washington Univ. School of Medicine.*
    439 F.Supp.2d 17 (D.D.C. 2006) ......................................................................................15

*T.D. Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019)..............................................................................................12

*Valles v. ACT, Inc.*,
    2022 WL 2789900 (E.D. Tex. 2022) ...........................................................................22, 23

*Ware v. Wyoming Bd. of Law Exam'rs*,
    973 F. Supp. 1339 (D. Wyo. 1997), *aff'd mem.*, 161 F.3d 19 (10th Cir. 1998)......................19

*Wells v. Shalala*,
    228 F.3d 1137 (10th Cir. 2000) ...............................................................................8

*Winter v. Nat'l Res. Def. Council*,
    555 U.S. 7 (2008)............................................................................................9, 12

*Wright v. National Board of Medical Examiners*,
    2021 WL 5028463 (D. Colo. 2021).............................................................12, 14, 18, 22

## STATUTES AND REGULATIONS

42 U.S.C. § 2000a-3(a) .......................................................................................24

42 U.S.C. § 12102(1) ..........................................................................................14

42 U.S.C. § 12188(a) ..........................................................................................24

42 U.S.C. § 12189.............................................................................................13

28 C.F.R. § 36.105(d)(1)(v)...............................................................................14, 15

28 C.F.R. § 36.309(b)(1)(v)...................................................................................18

## OTHER AUTHORITIES

A. Harrison, "Adults Faking ADHD:  You Must be Kidding!," The ADHD
    Report, Vol. 14, No. 4..................................................................................21

L. Jasinski & J. Ranseen, "Malingered ADHD Evaluations: A Further
    Complication for Accommodations Reviews," The Bar Examiner (Dec. 2011)....................21

J. Joy *et al*., "Assessment of ADHD Documentation from Candidates Requesting
    [ADA] Accommodations for the National Board of Osteopathic Medical
    Examiners COMLEX Exam," 14(2) J. of Attention Deficit Disorders 104
    (2010)....................................................................................................21

## Index of Acronyms

| AAMC | Association of American Medical Colleges |
|------|------------------------------------------|
| CBSE | Comprehensive Basic Science Examination |
| CBSSA | Comprehensive Basic Science Self-Assessment |
| ECFMG | Educational Commission for Foreign Medical Graduates |
| ERAS | Electronic Residency Application Service |
| IMG | International Medical Graduate |
| MCAT | Medical College Admission test |
| NBME | National Board of Medical Examiners |
| NRMP | National Resident Matching Program |
| USMLE | United States Medical Licensing Examination |

## INTRODUCTION

This lawsuit relates to plaintiff Markus Kitchens' request for twice the amount of testing time that other examinees receive on the United States Medical Licensing Examination ("USMLE"), based upon a claim that he is disabled within the meaning of the Americans with Disabilities Act ("ADA"). Dr. Kitchens has taken the USMLE Step 1 and Step 2 CK examinations multiple times, without success. He now seeks an emergency preliminary injunction that would enable him to retake both exams in the next few weeks, with double testing time, with the objective of participating in the 2023 National Resident Matching Program ("NRMP" or "Match"). Dr. Kitchens says that he will suffer irreparable harm if he cannot participate in the 2023 Match. However, he has already missed one deadline that was necessary for him to participate in the 2023 Match and almost certainly will miss other deadlines, regardless of how the Court decides his motion for a preliminary injunction. He thus faces no risk of irreparable harm that the Court could prevent by granting his motion, even if he could satisfy the other requirements for a preliminary injunction -- which he cannot.

Most examinees would like to have extra testing on the USMLE, for precisely the same reasons as Dr. Kitchens: it would make them less anxious while testing and give them a better opportunity to maximize their performance. But extra testing time is not warranted here. The lack of imminent, non-speculative irreparable harm and a record devoid of evidence showing that Dr. Kitchens is disabled within the meaning of the ADA mandate denial of his preliminary injunction motion, as does the potential harm that NBME would suffer from an award of relief that cannot be undone after the fact, and the harm to the public interest if unwarranted accommodations are provided on a medical licensure examination. It is unfortunate that Dr. Kitchens has not yet been able to pass his Step exams despite all his hard work, but he is not entitled to the extraordinary relief requested in his motion.

## BACKGROUND

### I.   NBME and the USMLE

NBME is a non-profit organization based in Philadelphia whose mission is to protect the public health through the development and administration of high-quality examinations, including the USMLE. Decl. of Erin Convery ¶¶ 3-4 ("Convery Decl."). Licensing authorities across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine. *Id.* ¶ 5.

Three "Step" exams comprise the USMLE:

- Step 1 assesses whether the examinee understands and can apply important science concepts basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy. Convery Decl. ¶ 6.a.

- Step 2 Clinical Knowledge (Step 2 CK) assesses whether candidates have the patient-centered knowledge, skills and understanding of clinical science that provide the foundation for the safe and competent practice of medicine under supervision. *Id.* ¶ 6.b

- Step 3 assesses whether an examinee understands and can apply medical knowledge essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings. It is the final examination in the USMLE sequence leading to a license to practice medicine without supervision. *Id.* ¶ 6.c.

Examinees take the USMLE under standard conditions, including standard testing time. NBME provides accommodations, however, to individuals who are disabled within the meaning of the ADA. *Id.* ¶¶ 7-8. In all instances, NBME's objective is to ensure that "individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage…." *Powell v. NBME*, 364 F.3d 79, 88-89 (2d Cir. 2004).

"As administrator of the national exam used by … states for licensing medical doctors, [NBME] has a duty to ensure that its examination is fairly administered to all those taking it." *Id*. NBME also has a duty to protect the integrity of USMLE scores, given the USMLE's role in helping jurisdictions ensure the minimum competency of licensed physicians.

## II.   Dr. Kitchen's USMLE and Litigation History

Dr. Kitchens attended the Medical University of Lublin in Poland and graduated in January 2021. Decl. of Dr. Markus Kitchens (Dkt. 20-1) ("Kitchens Decl.") ¶ 1. Unlike most U.S. medical students, he did not take the Step 1 or Step 2 CK exams during medical school. Instead, Dr. Kitchens enrolled in a USMLE prep course soon after graduating. *Id*. ¶ 32. The prep course concluded in February 2021, but Dr. Kitchens did not attempt any Step exam at that time. He registered to take the Step 1 exam in the Fall of 2021, but he ended up not testing then either. Convery Decl. ¶ 16.

On January 5, 2022—one year after he graduated from medical school—Dr. Kitchens submitted a request for accommodations on Step 1 to NBME. *Id.* ¶ 16. Dr. Kitchens has testified that he submitted a request for accommodations in October 2021 to NBME, Kitchens Decl. ¶ 33, but this is not correct, Convery Decl. ¶¶ 17-18 and Exs. 4-5.

In his application for accommodations, Dr. Kitchens reported that he was diagnosed with ADHD in 2013 and Test Anxiety in 2018. *Id.* Ex. 3. He did not, however, submit documentation substantiating either of these diagnoses. *See id.* Ex. 6-11, 13; Decl. of Michael Gordon, Ph.D. ("Gordon Decl.") ¶¶ 17-20, 42. His application form disclosed that he did not receive any type of accommodations on his college admission test, in college, on the Medical College Admission Test (MCAT), or in medical school. Convery Decl. Ex. 3 p.4. It also disclosed that he did not receive accommodations in elementary school, middle school, or high school. *Id.* p.5.

Along with his application, Dr. Kitchens submitted (1) a half-page personal statement, a significant part of which was legal argument;[1] (2) a four-sentence letter from a doctor in Illinois dated April 2020; (3) a one-page excerpt from a 2020 dermatology appointment record; (4) a two-page excerpt from medical records dated May 2018 reflecting a short visit to his healthcare provider; (5) two pages of medical records from a July 2017 visit to his healthcare provider; and (6) a document showing that he was scheduled to take an examination in medical school (the Comprehensive Basic Science Exam, or CBSE) with "extended time." *Id.* Exs. 6-11. At NBME's request, *id.* Ex. 5, he later provided NBME with his CBSE score report. *id.* Ex. 12. The report showed that he did very badly on the exam, despite having extended time. *Id.*

NBME's published Guidelines for requesting test accommodations provide a thorough discussion of the types of documentation a candidate should submit, including guidelines relating to specific types of claimed impairments. *See id.* Exs. 2, 5. Dr. Kitchens did not comply with the Guidelines in multiple respects. Indeed, when deposed, he said he was not sure whether he had read the documentation Guidelines. Opp. Ex. 9 (Trans. 100-101).

Despite his documentation deficiencies, NBME considered Dr. Kitchens' request on the merits when he declined to provide additional documentation. After a thorough review of his supporting documentation, NBME concluded he had not shown that accommodations were warranted, and it denied his request. NBME explained its decision in a letter dated February 8, 2022. *See* Convery Decl. Ex. 14.

---

[1] NBME advises candidates that personal statements should include "specific information about the disability-related symptoms and how they affect your academic, occupational, social and other important areas of functioning"; a description of "the extent to which your daily functioning is impaired and how that impairment interferes with your ability to access the examination under standard conditions"; and "a clear rationale for the requested accommodation(s) and [a description of] how each requested accommodation will alleviate the functional limitations caused by your disability." Convery Decl. Ex. 2. Dr. Kitchens did not follow this guidance.

Dr. Kitchens took Step 1 on February 22, 2022 under standard conditions and did not pass. *Id.* ¶ 23. After he had received his results, his wife wrote to NBME on his behalf, identifying Dr. Kitchens as her client in a letter on her law firm's letterhead. Opp. Ex. 1. Mrs. Kitchens accused NBME of mistakenly administering an examination to Dr. Kitchens with an excessive number of questions or erroneously reporting the scores of another examinee. She sought an investigation of the examination and expungement of Dr. Kitchens' results. *Id.*

Dr. Kitchens took Step 1 again on May 9, 2022, without requesting accommodations, and again did not pass. Convery Decl. ¶ 23. He took Step 2 CK on May 28, 2022, and again on June 29, 2022, without requesting accommodations, and he did not pass either time. *Id.* ¶ 24.

On August 16, 2022, Dr. Kitchens filed his complaint in this action, seeking damages but not injunctive relief relating to future administration of the USMLE. Dkt. 1 at pp.4-8.

On August 30, 2022, Dr. Kitchens submitted another accommodation request to NBME, again limited to Step 1. This time, he sought 50% extra time (rather than 100%) and extra breaks. Convery Decl.  Ex. 15. He did not submit any new documentation in support of this request, relying instead on the same handful of medical records and abbreviated personal statement he provided in support of his initial request. *Id.* ¶¶ 25-26 and Ex. 15. NBME asked him to provide additional documentation. *See id.* ¶ 26 and Ex. 16. Dr. Kitchens, however, chose not to do so, saying, "Acknowledged, I have no new documents." *Id.* Ex. 17.

At that point, Dr. Kitchens was given two options: proceed with testing under standard conditions or submit additional information so that NBME could evaluate his need for accommodations. *Id.* Ex. 18. NBME also "strongly encourage[d]" Dr. Kitchens to "review the USMLE Guidelines for Requesting Test Accommodations," including the guidance for requesting accommodations if you say that you have ADHD. *Id.*

On September 7, 2022, Dr. Kitchens elected to proceed with testing under standard conditions, rather providing additional documentation. *Id.* Ex. 19. He took Step 1 on September 29, 2022 and did not pass.[2] *Id.* ¶ 29.

On January 18, 2023, Dr. Kitchens filed an amended complaint in this action, asserting an ADA claim relating to his Step 1 and Step 2 CK exams (even though he had never requested accommodations on Step 2 CK). He attached new medical records and an affidavit from a professor that he had not submitted to NBME in support of his accommodation requests. Dkt. 15 Exs. A, B.

On February 7, 2023, Dr. Kitchens filed his motion for preliminary injunction, claiming that NBME's actions jeopardize his ability to participate in the 2023 NRMP, Pl. Mot. (Dkt. 20) ¶¶ 2-3, and seeking to enjoin NBME from "refusing to grant" him 100% additional testing time on all three Steps of the USMLE. He also seeks to have his "examination transcript" expunged, to prevent the reporting of his past Step 1 and Step 2 CK attempts to residency programs and medical licensing authorities. *Id.* p.4. His preliminary injunction papers include additional documentation that was not submitted to NBME in support of his Step 1 accommodation requests, consisting of a lengthy personal declaration, a declaration from his mother, and additional medical records. Dkt. 20-1; Dkt. 25 Exs. B, E, P. He filed additional medical records with the Court on February 12, 2023, which he had not submitted to NBME when he requested accommodations. Dkt. 22.

---

[2] On September 20, 2022, Dr. Kitchens called NBME inquiring about a score recheck. In that call, Dr. Kitchens explained: "I didn't think the exam was actually that hard for me and then when I look at the score, it's almost like a zero percent, like in the law 20th percentile, which I mean, I did all of my work at Mayo Clinic …. I am the top of all these things in research, etc. so that's — and even my mentors and directors, even Johns Hopkins is not understanding this as well." Opp. Ex. 8. In addition to being drastically at odds with his current description of his testing experience when he first took Step 1, Dkt. 20-1 ¶¶ 35-36, Dr. Kitchens' statements on this call do not accurately state his background.  He did an internship at the Mayo Clinic, not a rotation, and he spent no time at Johns Hopkins, in any capacity. Opp. Ex. 9 (Trans. 28-32, 190-91).

### III.    Applying for Residency Programs

Applying for residency programs is a lengthy, multi-step process. As explained by the Association of American Medical Colleges (AAMC):

> Applying for residency involves two separate activities: preparing and submitting your application to your chosen programs, and interviewing at the programs that offer you an invitation. This high-stakes process spans many months—beginning as early as the fall of your third year in medical school.

Opp. Ex. 2 at 1.

Medical students apply electronically for residency positions through AAMC's Electronic Residency Application Service (ERAS). Opp. Exs. 2, 3. To register for ERAS, International Medical Graduates (IMGs) like Dr. Kitchens must obtain a token through the Educational Commission for Foreign Medical Graduates (ECFMG). Opp. Exs. 3 at 2, 4. Dr. Kitchens thinks he has obtained such a token but he is not sure. Opp. Ex. 9 (Trans. 203).

Medical students must separately register for the NRMP Match. Opp. Ex. 3 at 3. Dr. Kitchens correctly notes that most medical students use the Match to obtain residency positions. Pl. Mot. (Dkt. 20) ¶ 10. Registration for the 2023 Match opened in September 2022, the standard registration deadline was **January 31, 2023, and the late deadline is March 1, 2023**. Opp. Ex. 7. Applicants interview with programs in the fall and winter, Opp. Ex. 2, and then must submit rank order lists by **March 1, 2023**, Opp. Ex. 7. Applicants learn if they have matched on **March 13, 2023**. There is a follow-up period for applicants who did not match (but who timely registered for and participated in the regular Match), and on **March 17, 2023**, Match results are announced. *Id.*

IMGs must obtain ECFMG Certification to participate in the NRMP Match. To obtain ECFMG Certification, IMGs must pass Step 1 and Step 2 CK and also satisfy other requirements, including attaining a satisfactory score on the Occupational English Test (OET) for Medicine, which is administered by an entity other than NBME. Opp. Exs. 5, 6. ***Dr. Kitchens has not taken***

***the OET yet, and he has missed the January 31, 2023 deadline for registering to do so, meaning***

***he will not be able to participate in the 2023 Match because he will not be able to obtain the***

***requisite ECFMG Certification.*** Opp. Ex. 6. Indeed, he testified in his deposition that he had not

"been on the ECFMG's website" and was not aware of the deadline for registering to take the OET

exam. Opp. Ex. 9 (Trans. 205-210).

## ARGUMENT

Dr. Kitchens seeks the extraordinary remedy of a mandatory preliminary injunction that

would provide him with double the standard amount of testing time on the USMLE and also

"expunge" his prior testing record. He seeks this emergency relief to enable his participation in the

2023 Match.  However, he will not be able to participate in the 2023 Match no matter what happens

on his motion because he will not have his ECFMG Certification.

In addition to there being no urgency and thus no risk of imminent irreparable harm, Dr.

Kitchens has not shown a likelihood of success on the merits of his ADA claim. He asserts that

NBME discriminated against him in February and August 2022 by not approving his requests for

accommodations, but that is clearly not the case given the limited information he provided to

NBME to support his request and his decision not to provide the additional documentation that

NBME requested. *Cf. Wells v. Shalala*, 228 F.3d 1137, 1145-46 (10th Cir. 2000) ("[Where an

employee] fails to provide necessary medical documentation, [an] employer is not liable for failing

to provide a reasonable accommodation.") (citation omitted).

Dr. Kitchens fares no better if the Court also considers the additional documents he has

provided in this court proceeding. The record before the Court still fails to support his reported

diagnoses or provide any evidence that he is substantially limited in any major life activity relevant

to taking the USMLE as compared to most people, which is the operative standard under the ADA.

Dr. Kitchens may be struggling to pass a demanding medical licensing test (for any number of possible reasons), but he has not shown a likelihood of success on the merits of his ADA claim.

## I.   Dr. Kitchens Has Not Satisfied the Demanding Standard for a Mandatory Preliminary Injunction

A preliminary injunction is an "extraordinary" remedy that should not be granted unless a plaintiff shows that all four prerequisite factors support the requested relief. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20, 22 (2008). Dr. Kitchens must make a "clear showing" that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Id.* at 20, 22; *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Because Dr. Kitchens is seeking a mandatory preliminary injunction, rather than a prohibitory injunction to preserve the status quo, he bears "a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994).

### A.  Dr. Kitchens Has Not Met His Burden of Demonstrating Irreparable Harm

Dr. Kitchens' motion fails at the outset on the irreparable harm factor. "[T]he moving party must make a 'clear showing of *immediate* irreparable harm,'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (original emphasis, citation omitted), and the risk of irreparable harm must be certain, not speculative, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). Dr. Kitchens has not made, and cannot make, a non-speculative showing that he will suffer immediate irreparable harm in the absence of preliminary injunctive relief.

The basis for Dr. Kitchens' motion is his claimed interest in participating in the 2023 NRMP Match. *See* Pl. Mot. (Dkt. 20) ¶¶ 2, 3, 10, 15.b. But Dr. Kitchens is already foreclosed from participating in the 2023 NRMP because he has not obtained eligibility certification from the ECFMG and cannot do so now, having missed the registration deadline for taking a third

"Pathways" examination that is required for certification. Opp. Exs. 5, 6. Dr. Kitchens will also inevitably miss other deadlines, including the late registration deadline to participate in the 2023 NRMP Match (March 1, 2023), and the deadline for submitting rank order lists (also March 1, 2023). Opp. Ex. 7. Even if tested next week, he will not have taken Step 1 and Step 2 CK in time to have reportable results prior to March 1st. *See* Convery Decl. ¶ 30 (explaining results are typically available two to four weeks after a test date and may take up to eight weeks). Dr. Kitchens is thus not facing any risk of immediate harm relating to the 2023 NRMP that can be attributed to when he retakes the Step 1 and Step 2 CK exams because it is impossible for him to participate in the 2023 NRMP for other reasons.

Dr. Kitchens' alleged risk of irreparable harm is also speculative. He is asking the Court to assume that he will pass Step 1 and Step 2 CK if given double testing time and, conversely, that he will fail without extra testing time. But both propositions are speculative, making a preliminary injunction unwarranted. *See Baer v. NBME*, 392 F.Supp.2d 42, 49 (D. Mass. 2005) ("[I]t is not certain that [plaintiff] will suffer the predicted harm; she may pass the test.") (denying preliminary injunction). There is no evidence beyond his own assertions that a need for extra testing time explains his past performance on Step 1 and Step 2 CK, as opposed to a deliberate testing style, his knowledge of the subject matter, misguided test-taking strategies, his test preparation, his mood the days he tested (*e.g.*, was he anxious or depressed), or whether he had a good night's sleep the night before.

For example, in December 2020, Dr. Kitchens did poorly on his Comprehensive Basic Science Examination (CBSE), which enables candidates to get a sense of their likely "performance on Step 1" if both exams are taken "under the same conditions and with the same level of knowledge.," Convery Decl. Ex. 12 at 1. He did poorly even though he had been "studying

consistently for this exam" and says that he received double testing time. Opp. Ex. 9 (Trans. 77, 79, 83). He now attributes his poor performance to the distractions of preparing to move around the time he took that exam and his motivational level, *id*. 81-83, but his poor performance might instead (or also) have reflected a lack of subject matter mastery. Conversely, Dr. Kitchens performed well on a different exam that he took in February 2022 under standard time conditions (the Comprehensive Basic Science Self-Assessment, or CBSSA), which also "represents an estimate of [future] performance on the USMLE Step 1," achieving a score that would be a passing result on Step 1. Opp. Ex. 1 at 3. This shows that it is speculative whether Dr. Kitchens would pass Step 1 if given double testing time, and equally speculative that he would fail Step 1 without extra testing time.

Dr. Kitchens suggests that his chances of obtaining a residency position would be better if he participates in the 2023 NRMP Match than if he waited to participate in the 2024 Match or pursued other avenues for obtaining a residency position. This, too, is speculative. *See Doe v. Ohio State Univ.*, 2016 WL 692547, *10-11 (S.D. Ohio 2016) (denying medical student's motion for a preliminary where student "offered only his own testimony that residencies are more likely to be obtained by someone who is a student in good standing" based upon his understanding of "the 'match' and 'scramble' procedures by which medical students are offered residencies"), *objections overruled, report aff'd*, 2016 WL 1578750 (S.D. Ohio 2016).

Dr. Kitchens complains of being delayed in pursuing his chosen profession, Pl. Br. (Dkt. 20-2) at 13-14, but he did not even attempt Step 1 until a year after he graduated from medical school (unlike most other medical students). Convery Decl. ¶ 23; Kitchens Decl. (Dkt. 20-1) ¶ 1. Then, after his accommodation request was denied in February 2022, he did not seek court relief

until August 2022 and did not file his motion for preliminary injunction until February 2023—a full year after NBME denied his request.

In *Wright v. National Board of Medical Examiners*, 2021 WL 5028463 (D. Colo. 2021), the examinee also sought an emergency preliminary injunction, claiming that he faced his last opportunity to take the Step 3 examination and needed to take the test on an expedited basis (with his requested accommodations) given deadlines for applying for medical licensure in Colorado. In denying the motion, the court noted (among other things) that the application deadline may have already passed and that "the emergency nature of this litigation is at least in part due to [the examinee's] own choices. He has taken the USMLE Step 3 three times since 2017 and requested accommodations twice but did not bring this case until August 27, 2022. The inability to fully litigate his claims before the apparent testing deadline is at least in part of his own doing." *Id.* *9. Similar reasoning applies here.

Furthermore, while Dr. Kitchens complains of a delay in pursuing his "chosen profession," he reported just two weeks ago that "[h]e plans to resume studying for his Master's Degree [in Healthcare Administration] after the completion of board exams." Dkt. 22 at 2. That would appear to be inconsistent with his stated desire to participate immediately in the Match so that he can begin his residency training.

Dr. Kitchens invites the Court to "presume" irreparable harm in the absence of an injunction "when there is a violation of the ADA," Pl. Br. 13, but his argument improperly assumes there has been such a violation. His suggestion is also inconsistent with the Supreme Court's directive in *Winter* that a party seeking a preliminary injunction must establish all four factors, including irreparable harm. *Cf. T.D. Bank N.A. v. Hill*, 928 F.3d 259, 279-80 (3d Cir. 2019)

(irreparable harm cannot be presumed based upon a finding of a Copyright Act violation, for purposes of applying the four-factor test for permanent injunction relief) (citing, inter alia, *Winter*).

"[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008). Dr. Kitchens has not come close to meeting this standard.

### B.  Dr. Kitchens Has Not Made a Clear Showing of Likely Success on His Claim

The premise of Dr. Kitchens' lawsuit and preliminary injunction motion is that NBME unlawfully denied his request for testing accommodations. The sparse documentation he submitted to NBME in support of his request, however, gave NBME no valid basis for providing disability-based accommodations. *See* Convery Decl. Exs. 5-19; Gordon Decl. ¶¶ 5-20, 39-42, 45. Dr. Kitchens all but conceded this point when he submitted additional medical documents and information to the Court in support of his lawsuit and motion that were never offered to NBME for its consideration in the first instance. And even taking into account his new documentation, he has not established a likelihood of success. His ADHD and Test Anxiety diagnoses are not supported. And even if his diagnoses were accepted, the documentation does not show that he is substantially limited in any major life activity relevant to taking the USMLE when compared to most people, the standard under the ADA.

#### 1.  Disability Under the ADA:  Substantial Limitation in a Major Life Activity Compared to Most People in the General Population.

Under the ADA, a private entity that "offers examinations ... relating to applications, licensing, certifications, or credentialing for ... professional ... purposes shall offer such examinations ... in a place and manner accessible to persons with disabilities or offer alternative arrangements for such individuals." *See* 42 U.S.C. § 12189. Pursuant to Section 12189, persons

who qualify as disabled under the ADA are entitled to reasonable accommodations, if needed, during test-taking. To be disabled under the ADA, a person must have "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1), "as compared to most people in the general population," 28 C.F.R. § 36.105(d)(1)(v).

Dr. Kitchens argues that "[c]ourts regularly construe anxiety and ADHD as disabilities that substantially limit the major life activities of reading, writing, learning, and concentrating," Pl. Br. (Dkt. 20-2) at 6, but having a diagnosed impairment is not sufficient to establish a disability under the ADA. As set forth in DOJ's implementing regulations, "not every impairment will constitute a disability[.]" 28 C.F.R. § 36.105(d)(1)(v); *see also Love v. Law Sch. Admission Council*, 513 F. Supp. 2d 206, 226 (E.D. Pa. 2007) ("An impairment and a disability are two different things."). While ADHD and anxiety *can* be disabilities under the ADA, each is a disability *only* if it substantially limits a person's ability to perform major life activities as compared to most people. This is reflected in many court decisions finding that individuals who have been diagnosed with anxiety, ADHD, or other mental impairments were *not* disabled within the meaning of the ADA. *See, e.g., Mann v. Louisiana High Sch. Athletic Ass'n.*, 535 Fed. App'x 405, 410 (5th Cir. 2013) ("[A] plaintiff must still show substantial limitation....") (setting aside preliminary injunction in case involving a diagnosed anxiety disorder); *Collins v. Prudential Investment & Retirement Servs.*, 119 F. App'x 371, 378 (3d Cir. 2005) ("[Plaintiff's] testimony about her work, academic [background], and community involvement contradicts her claim that her ADHD/ADD substantially limits her abilities to think, learn, remember and concentrate"); *Wright v. NBME*, 2021 WL 5028463, at *4 (examinee diagnosed with a learning disorder, ADHD, and depressive disorder not likely to succeed on merits of ADA claim); *Hentze v. CSX Transp., Inc.*, 477 F. Supp. 3d 644, 670-71 (S.D. Ohio 2020) (railroad employee who failed employment test and was

diagnosed with anxiety not disabled under the ADA); *Black v. NBME,* 281 F. Supp. 3d 1247, 1249-50 (S.D. Fla. 2017) (medical school student with ADHD diagnosis not disabled under the ADA); *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs,* 2016 WL 1404157, at *7 (E.D. Pa. 2016) (examinee with dyslexia not disabled under the ADA); *Steere v. George Washington Univ. School of Medicine*. 439 F.Supp.2d 17, 21-25 (D.D.C. 2006) (medical student diagnosed with ADHD not disabled under the ADA).

In evaluating whether Dr. Kitchens is substantially limited, his claimed limitations must be measured against the general population, not against other college graduates or medical students. *See, e.g., Singh v. George Wash. Univ.*, 508 F.3d 1097, 1103-04 (D.C. Cir. 2007) ("[A]ny measure of substantial limitation that might change based on a plaintiff's particular educational environment—e.g., a comparison of '[m]edical students … to their fellow students,' …—would make disabled status vary with a plaintiff's current career choices, and would fail to achieve the ADA's additional purpose of providing 'clear, strong, *consistent*, [and] enforceable standards' to address discrimination.") (original emphasis, citations omitted); *Black v. NBME,* 281 F. Supp. 3d at 1249-50 ("Although Black insists that the Board must compare Black's performance to her 'medical-school peers,' under 28 C.F.R. § 36.105(d)(1)(v) the substantial-limitation determination depends on a person's performance in comparison to 'most people in the general population.'"); *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs*, 2016 WL 1404157, at *6 ("It is inappropriate under the ADA to compare an individual to her academic peer group or, in the case of standardized tests, other test-takers who are not representative of the general population").

## 2.  Dr. Kitchens Is Not Disabled Within the Meaning of the ADA

If a diagnosis is unwarranted, or if an impairment does not result in substantial limitations, the individual is not disabled under the ADA and is not entitled to accommodations.

Dr. Kitchens has not demonstrated that he meets the diagnostic criteria for ADHD. Gordon Decl. ¶¶ 6-38. His alleged "Test Anxiety" diagnosis is also unsupported. *Id*. ¶ 42.

Even if Dr. Kitchens had been properly diagnosed, there is also nothing in the record which demonstrates that he is substantially limited in any major life activity relevant to taking the USMLE compared to most people. Gordon Decl. ¶¶ 36-38, 41. Dr. Kitchens complains of difficulty taking a timed medical licensure test, but this is not enough to show substantial limitation in a major life activity compared to most people. *See Shirley v. Univ. of Idaho*, 2014 WL 12991817, at *2 (D. Idaho 2014) (explaining plaintiff's allegations of disability based on an unspecified cognitive disorder "were insufficient, in large part, because Shirley was limited only in his ability to read some highly abstract and complex materials in a short period of time, namely law school examinations").

In arguing he has shown a "reasonable probability" of success on the merits, Dr. Kitchens relies on results from a Conners Continuous Performance Test (CPT) apparently administered earlier this month by Tina Holbrook, APRN (Advanced Practice Registered Nurse), and an "affidavit" from Mrs. Holbrook, reportedly attached as Exhibit E to his motion. Pl. Br. (Dkt. 20-2) at 8, 9-10, 11-12. But the Conners CPT report, standing alone, is not diagnostic of ADHD. *See* Gordon Decl. ¶¶ 31-32. And there is no affidavit from Mrs. Holbrook—it was not included as an exhibit to Dr. Kitchens' brief, and apparently it never existed. Opp. Ex. 9 (Trans. 174-76).

There is a recent evaluation report from Christina Bacon, LPP (Licensed Psychological Practitioner) (Dkt. 22), but Ms. Bacon's report simply repeats Dr. Kitchens' self-report of his alleged symptoms.[3] It does not show that he is experiencing real-world functional limitations that

---

[3] For example, Ms. Bacon's report notes that Dr. Kitchens "endorsed all nine criteria for inattention related to ADHD ....: failing to give close attention to details, difficulty sustaining attention in tasks, does not seem to listen when spoken to directly, failing to follow through on instructions,

would justify an ADHD diagnosis, much less provide any basis for concluding that he is substantially limited compared to most people and thus disabled under the ADA. *See* Gordon Decl. ¶¶ 29-37. Indeed, Ms. Bacon offers no opinion on the critical issue before the Court—whether Dr. Kitchen is substantially limited in any relevant major life activity compared to most people. *See Rumbin v. Ass'n of Amer. Med. Colleges*, 803 F. Supp. 2d 83, 94 (D. Conn. 2011) (noting that plaintiff's doctor "never compared [plaintiff's] reading or seeing skills to the 'average person'"); *see also Rhodes v. Langston Univ.*, 462 F. App'x. 773, 778 (10th Cir. 2011) ("Rhodes' neuropsychological evaluation does not answer the question of whether her impairment substantially limits Rhodes' ability to learn as a whole for purposes of daily living, as compared to most people."). Likewise, the four-sentence letter from Dr. Khan in 2020 says only that he was treating Dr. Kitchens for anxiety. Convery Decl. Ex. 7. It does not state who, if anyone, diagnosed Dr. Kitchens with anxiety, how the diagnosis (if any) was arrived at, or what the resulting functional limitations are (if any). *See Hentze v. CSX Transp., Inc.*, 477 F. Supp. 3d at 669 ("After all, 'some situational anxiety' on a test that could have severe job consequences would be expected for just about anyone. Yet there is no indication in Dr. Hustak's letter as to whether, or by how much, Hentze's anxiety in that setting is worse than anyone else's.").

Dr. Kitchens nevertheless argues that Ms. Holbrook's report (which does not exist) and the "reports" of other qualified individuals who have personally evaluated him (there is only one such

---

difficulty organizing tasks and activities, avoiding, disliking, or is reluctant to engage in tasks that require sustained mental effort, loses things necessary for tasks or activities, easily distracted by extraneous stimuli, and forgetful in daily activities." Dkt. 22 at 5. When asked in his deposition whether he would be able to deliver safe and effective health care if he in fact experiences all of these symptoms and to the level he reported to Ms. Bacon, Dr. Kitchens responded, "I honestly feel that I want to pass on that question." Opp. Ex. 9 (Trans. 193-95). In all events, the alleged symptoms are not consistent with his academic record, the feedback he says he received from patients and in his hospital rotations, or the effort he has put into representing himself in this litigation and drafting all his various court filings. *See id.* (Trans. 31-32, 152-53, 156, 159-60, 198).

report, the recent report from Ms. Bacon, which did not exist when he requested accommodations from NBME, and which reflected two one-hour sessions with Dr Kitchens, conducted remotely) "should take precedence over reports [of] testing entity reviewers who have never conducted the requisite assessment of the candidate." Pl. Br. (Dkt. 20-2) at 8.

Putting aside the non-sensical proposition that NBME should have deferred to evaluation reports that either do not exist at all or were never provided to NBME for review in deciding his accommodation requests, nothing in the ADA or its implementing regulations requires NBME (or a court) to simply "defer" to the conclusions of an examinee's evaluating professional in determining whether an examinee is disabled, without independently assessing whether the examinee meets the ADA criteria. *See Wright v. NBME,* 2021 WL 5028463, at *7 (in response to plaintiff's argument that the "ADA effectively mandates that the Board provide accommodations based on the recommendations from professionals … who [have] provided … in-person evaluations," noting: "It would certainly make courts' jobs easier if that were the case. But a professional evaluation is not the only piece of evidence a court should consider under the ADA. A diagnosis alone does not satisfy the ADA disability standard.").

Dr. Kitchens also references the regulation found at 28 C.F.R. § 36.309(b)(1)(v) requiring that "considerable weight" be given to documentation of past modifications or accommodations in received in similar testing situations and explains that he "is asking for the same accommodation—extended time—he has received from NBME on the CBSE and that his own medical school has recognized is necessary." Pl. Br. (Dkt. 20-2) at 6-7. To clarify the facts, he did <u>not</u> receive accommodations from NBME on the CBSE, which he took while in medical school. NBME does not decide who receives accommodations on subject examinations like the CBSE. That decision is made by a student's medical school. *See* Convery Decl. ¶ 20.a. And we do not

-18-

know why Dr. Kitchens' medical school approved him for extra time on the CBSE, or how much time it approved. As the Fifth Circuit noted in a similar dispute where the examinee pointed to the receipt of accommodations at Tulane University School of Medicine as justification for receiving accommodations on the USMLE: "[T]he record does not provide evidence of whether Tulane gave Doherty accommodations because it found that she met the definition of disability under the ADA; Tulane may grant accommodations to individuals who do not meet the ADA's definition of disability." *Doherty v. NBME,* 791 F. App'x 462, 466 (5th Cir. 2019) (reversing preliminary injunction); *cf. Ware v. Wyoming Bd. of Law Exam'rs,* 973 F. Supp. 1339, 1357 (D. Wyo. 1997) ("[T]he fact that a person has been granted a particular accommodation in the past does not mean that such accommodations are presumptively reasonable."), *aff'd mem.,* 161 F.3d 19 (10th Cir. 1998).

In any event, NBME considered Dr. Kitchens' limited documentation of past accommodations, along with the other (albeit limited) documentation he submitted in support of his request. *See* Convery Decl. Ex. 14. Apart from the test appointment confirmation showing "extended time" on the CBSE, no other documentation showed he received accommodations in medical school or on other standardized tests. To the contrary, he reported that he took the SAT/ACT and MCAT without accommodations and received no accommodations in medical school. *Id.* Ex. 3. The apparent *absence* of such documented accommodations over the balance of Dr. Kitchens' academic history (based upon the information he provided to NBME) says more about his alleged impairments and need for accommodations than his receipt of extended testing time on one test when he was attending medical school in Poland.

Dr. Kitchens quotes at length the Third Circuit's decision in *Ramsay v. NBME,* 968 F.3d 251 (3d Cir. 2020), *see* Pl. Br. (Dkt. 20-2) at 10, but this case is nothing like *Ramsay*. The plaintiff

in *Ramsay*, unlike Dr. Kitchens, followed the NBME documentation guidelines and submitted much more information in support of her accommodation requests, including diagnostic assessments that explained the diagnoses and addressed her reading abilities.  968 F.3d at 254-55, 258.

Dr. Kitchens also argues at some length that NBME improperly "ignores the fact that Dr. Kitchens academic successes are based [on] his ability to self-accommodate for his disability." Pl. Br. 11. But nothing in the limited documentation that he provided to NBME mentioned, much less substantiated, any history of "self-accommodation."

While Dr. Kitchens now claims to have received various supports throughout his schooling, Kitchens Decl. (Dkt. 20-1) ¶¶ 9-16, 22, 29, he made virtually no reference to this in the documentation he submitted to NBME in support of his two accommodation requests.  Informal accommodations were mentioned in a single sentence in his personal statement: "While in university, I never had the need to file an official documentation for my situation due to my professors [sic] willingness to take my exams one on one with extended time." Convery Decl. Ex. 6. He now attempts to bolster this single assertion with an affidavit from a university professor who states that she provided "unofficial testing accommodations to Dr. Kitchens" that, coincidentally, included 100% extra testing time, Dkt. 15, Ex. B at ¶¶ 3-7, but that affidavit is entitled to little weight. It was prepared by Dr. Kitchens, and he has acknowledged that the reference to 100% extended testing time is not entirely accurate.  Opp. Ex. 9 (Trans. 153-56).

Finally, Dr. Kitchens points to his Adderall prescription as evidence of his disability. The fact that Dr. Kitchens has been prescribed medication is not a diagnostic marker of ADHD, *see* Gordon Decl. ¶ 27, and says nothing about whether he actually has ADHD or experiences any substantial limitations as a result. Stimulant medication is easy to obtain and improves focus for

almost all people, regardless of whether they have ADHD or a disability. *Id.* It is also an "uncomfortable fact that some individuals with no history of learning difficulty may be motivated to seek a diagnosis of ADHD or LD, primarily in the interest of gaining access to stimulant medication and/or academic accommodations...." L. Jasinski & J. Ranseen, "Malingered ADHD Evaluations: A Further Complication for Accommodations Reviews," The Bar Examiner (Dec. 2011), at 7.[4]

The record before the Court does not establish that Dr. Kitchens has ever received a proper diagnosis of ADHD or anxiety and does not, in all events, show that he has any impairment that substantially limits him in any major life activity relevant to taking the USMLE compared to most people. Therefore, he has not satisfied his burden of showing likelihood of success on the merits.

### C. NBME and Other Examinees Would Be Harmed by a Preliminary Injunction

Dr. Kitchens argues that "NBME will suffer no harm" if it grants him double time on the USMLE because "NBME grants additional time over two days on examinations." Pl. Br. (Dkt. 20-2) at 14. But that reasoning misses the mark. The harm here has nothing to do with the logistics of providing accommodations (which NBME does when warranted), Convery Decl. ¶¶ 8-9, and everything to do with ensuring fairness to other examinees, preserving the integrity of the USMLE, and protecting the public welfare by ensuring that accommodations are only provided to those with disabilities under the ADA. *Those* are the interests NBME seeks to protect, and they are important.

---

[4] *See also* J. Joy *et al.*, "Assessment of ADHD Documentation from Candidates Requesting [ADA] Accommodations for the National Board of Osteopathic Medical Examiners COMLEX Exam," 14(2) J. of Attention Deficit Disorders 104, 106 (2010) (independent professional review of requests for testing accommodations from 50 individuals who claimed to have ADHD; of the 50 files reviewed, "only 14% (7 out of 50) of applicants provided sufficient clinical information to meet the criteria for ADHD"); A. Harrison, "Adults Faking ADHD:  You Must be Kidding!," The ADHD Report, Vol. 14, No. 4, at 3-4 (Aug. 2006) (discussing studies which have shown that, "without investing too much effort, both adolescents and adults can easily over–report symptoms they currently experience and potentially fake the symptoms of ADHD").

As the Second Circuit noted in *Powell*, NBME's "procedures are designed to ensure that individuals with bona fide disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination." 364 F.3d at 88.

Given that Dr. Kitchens wants his accommodated test results provided almost immediately to medical residency programs who would be making decisions in the coming weeks for their next residency classes, it would be difficult if not impossible for NBME to undo the damage caused by such disclosures if it is later determined that the preliminary injunction should not have issued. *See, e.g., Rothberg v. Law Sch. Admission Council,* 102 F. App'x 122, 126-27 (10th Cir. 2004) (vacating preliminary injunction that allowed plaintiff to take the LSAT with extra time and noting LSAC would be irreparably harmed if the accommodated score were released prior to a decision on the merits). By that point, residency programs would have relied upon the reported results, to the potential detriment of other residency candidates. Given the broader interests at stake and the attendant risks, the balance of harms favors NBME, not Dr. Kitchens.

### D.  The Public Interest Does Not Support Dr. Kitchens' Motion

Dr. Kitchens asserts that "enforcement of the ADA is in the public interest," citing cases where courts have granted preliminary injunctions that awarded testing accommodations. Pl. Br. (Dkt. 20-2) at 15.[5] His argument, however, is based on the mistaken premise that he has shown he

---

[5] Just as Dr. Kitchens has cited cases where courts granted preliminary injunctions to examinees, NBME can cite numerous cases where courts denied preliminary injunctions involving testing accommodations. *See, e.g., Doherty v. NBME*, 791 F. App'x 462 (5th Cir. 2019); *Valles v. ACT, Inc.*, 2022 WL 2789900 (E.D. Tex. 2022); *Wright v. NBME*, 2021 WL 5028463 (D. Colo. 2021); *Bach v. LSAC*, 2014 U.S. Dist. LEXIS 124632 (M.D.N.C. 2014). Other cases have been decided in favor of testing companies on the merits. *See Glueck v. Nat'l Conf. of Bar Exam'rs*, 2018 WL 3977891 (W.D. Tex. 2018); *Black v. NBME*, 281 F. Supp. 3d 1247 (M.D. Fla. 2017); *Bibber v. Nat'l Bd. of Osteop. Med. Exam'rs, Inc.,* 2016 WL 1404157 (E.D. Pa. 2016); *Rawdin v. Amer. Bd. of Pediatrics*, 985 F. Supp. 2d 636 (E.D. Pa. 2013), *aff'd on other grounds*, 582 F. App'x 114 (3d Cir. 2014); *Healy v. Nat'l Bd. of Osteop. Med. Exam'rs*, 870 F. Supp. 2d 607 (S.D. Ind. 2012).

is disabled under the ADA and has a clear likelihood of succeeding on the merits of his claim. *See Valles v. ACT*, 2022 WL 2789900, at *5 (E.D. Tex. 2022) ("The public certainly has an interest in ensuring that those with disabilities are provided adequate accommodations, as required under the law.  However, the public also has an interest in ensuring that the ADA is enforced according to its requirements.") (denying preliminary injunction).

Dr. Kitchens further argues that "[m]any areas of the United States are under-served by physicians, ... so increasing the number of physicians is in the public interest." Pl. Br. (Dkt. 20-2) at 15. However, he does not say that he intends to practice in such "under-served" areas.

Contrary to what Dr. Kitchens argues, the public interest weighs strongly against awarding his requested mandatory preliminary injunction. Like NBME, "the public ... has an interest in the fair administration of standardized tests." *Bach v. LSAC*, 2014 U.S. Dist. LEXIS 124632, at *8. That interest is particularly strong where, as here, residency programs and medical licensing authorities rely on the test to assess the competency of potential doctors. If medical schools, residency programs or other third parties rely on USMLE scores earned with unwarranted accommodations, it will "alter[] the substance of the [exams] because the resulting scores [will] not be guaranteed to reflect each examinee's abilities accurately." *Powell v. NBME*, 364 F.3d at 89.  That would unfairly advantage Dr. Kitchens to the detriment of such third parties, including examinees who meet the ADA's definition of disability -- the very population the ADA is meant to protect.

## II.     Dr. Kitchens Is Not Entitled to Expungement of His Testing Record

In addition to asking the Court to award him double the standard testing time on future Step exams, Dr. Kitchens wants the Court to expunge his USMLE testing history. Pl. Br. (Dkt. 20-2) at 18-22. This would prevent residency programs and state medical boards responsible for

protecting the public from knowing his prior test outcomes, and give Dr. Kitchens more opportunities to pass his Step exams than other examinees receive.

Given that Dr. Kitchens is not entitled to a preliminary injunction, his argument regarding expungement of his testing record does not need to be considered at the present time. Assuming, however, that this issue will come up in later proceedings, NBME will briefly address it here.

Dr. Kitchens is simply wrong when he argues (without any supporting case authority) that "expungement is precisely the type of relief this Court can provide Dr. Kitchens that will make him whole." *Id.* at 16. His claim arises under Title III of the ADA. The remedies provision for Title III is found at 42 U.S.C. § 12188(a), which adopts the remedies in 42 U.S.C. § 2000a-3(a). Section 2000a-3(a) allows individuals to pursue "a civil action for ***preventive relief***...." (emphasis added). Preventive relief, by definition, is forward-looking in nature. As Dr. Kitchens himself acknowledges, "'the appropriate function of injunction is to afford preventative relief and not to correct injuries already committed.'" Pl. Br. (Dkt. 20-2) at 17 (citation omitted); *see also SEC v. Gentile*, 939 F.3d 549, 556 (3d Cir. 2019).

Even if expungement of past test results could be viewed as a preventive remedy (and it cannot), expungement would not be warranted here. Dr. Kitchens requested accommodations on only two of his five Step attempts, and both requests related to Step 1. He supported both requests with sparse documentation that did not comply with NBME's documentation guidelines, even when NBME encouraged him to visit the guidelines and submit supplemental documentation. He has belatedly obtained a new evaluation report and additional documents and information which he cites in his court filings, but those materials were never presented to NBME for consideration in the first instance and cannot be the basis for warranting a retroactive invalidation of NBME's accommodation decisions in 2022 based upon the limited information and he actually presented.

*Cf. Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("[T]he College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD ...."). He requested accommodations on two of his three Step 1 administrations and chose not to provide the additional documentation NBME had requested. And he chose to take the Step 2 CK exam twice without seeking accommodations. There is no basis in law or fact for expunging any of his prior test results, much less all of them.

## <u>CONCLUSION</u>

Dr. Kitchens' motion for preliminary injunction should be denied.

Dated:  February 21, 2023                                  Respectfully submitted,


/s/  Caroline M. Mew
Caroline M. Mew (admitted *pro hac vice*)
Perkins Coie LLP
CMew@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202-654-6200
Facsimile:  202-654-6211

Jared D. Bayer
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: 215-665-4127
Facsimile: 215-701-2427

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to Plaintiff's Motion for a Preliminary Injunction was served on Plaintiff on February 21, 2023, by email per the agreement of the parties to accept and provide service by email, to:

> Markcus Kitchens
> 625 Hampton Way, #2
> Richmond, KY 40475
> markwanz@gmail.com
>
> *Pro se plaintiff*

> */s/ Caroline M. Mew*
> Caroline M. Mew