UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DR. MARKCUS KITCHENS, JR.
PLAINTIFF

v.

UNITED STATES MEDICAL LICENSING EXAMINATION, ET. AL
DEFENDANTS

CIVIL ACTION NO.: 2:22-CV-03301-JMY

**MOTION TO COMPEL DISCOVERY**

**NOTICE**

Notice is hereby provided that the following Motion shall come on for hearing before the Hon. John F. Murphy, of the Eastern District of Pennsylvania as soon thereafter as counsel may be heard.

**MOTION**

Comes the Plaintiff, Dr. Markcus Kitchens, pro se, and pursuant to the Federal Rules of Civil Procedure ("FRCP") 26(b), and for the reasons set forth herein, moves this Court for an Order compelling Defendant National Board of Medical Examiners ("NBME") to fully respond to Plaintiff's Discovery Requests served on March 16, 2023. Pursuant to Local Rule 26.1(f), an affidavit certifying attempts to resolve this discovery dispute is attached as Exhibit 1. In support of his Motion, Plaintiff states as follows:

**PERTINENT FACTS**

1. Plaintiff initiated this action against the Defendant on August 16, 2022, alleging that Defendant NBME and Defendant United States Medical Licensing Examination discriminated against his disability, violating Title II of the Americans with Disabilities Act (42 U.S.C. §12132) and Section 504 of the Rehabilitation Act.

2.   On November 21, 2022, Defendants NBME and USMLE jointly filed a motion to dismiss under FRCP 12(b)(6).

3.   On January 18, 2023, Plaintiff filed a Motion for Leave to file an amended complaint with the amended complaint attached. In the amended complaint, Plaintiff claimed Defendant NBME violated Title III of the Americans with Disabilities Act.

4.   Pursuant to the parties Joint Rule 26(f) Report and the Court's Scheduling Order, Plaintiff propounded his First Set of Interrogatories and Requests for Production of Documents to Defendant NBME on March 16, 2023. Defendant's responses to this discovery was due within thirty (30) days of service, or on April 17, 2023, pursuant to FRCP 33 and 34.

5.   Defendant NBME timely responded on April 17, 2023 and propounded its document production to Plaintiff without a privilege log attached.

6.   On April 19, 2023, Plaintiff sent Defendant's counsel a discovery deficiency letter outlining the deficient Answers to Interrogatories and Responses to Document Production, namely, the lack of privilege log where documents had been heavily redacted or otherwise not produced. *See Exhibit 2*.

7.   On April 26, 2023, Defendant NBME responded to Plaintiff's letter either repeating objections it had raised or claiming that it was not required to provide a privilege log because the information withheld was not on the grounds of privilege or protection within FRCP 26. *See Exhibit 3*.

8.   On May 1, 2023, Plaintiff sent a second deficiency letter to Defendant's counsel, stating that information withheld by the Defendant was still subject to FRCP 26 and required either a privilege log or production, as it was relevant to the ongoing litigation and not protected by privilege or any other legal protection. *See Exhibit 4*.

However, as described below, these supplemental responses from Defendants are still deficient, and thus, Plaintiff is requesting that the Court enter an order compelling complete responses to Plaintiff's First Set of Discovery Requests.

**REQUESTS AT ISSUE**

1. **Defendant NBME has failed to produce its expungement policy in response to Interrogatory No. 3 and Request for Production No. 1.**

Defendant NBME objected to Interrogatory No. 3 as "vague", "seeks information… not relevant to any party's claims or defenses", was not reasonably limited in time and unduly burdensome.

These requests directly relate to Plaintiff's relief sought or a claim to be heard at trial.[1] As claimed in Plaintiff's original and Amended Complaint, Plaintiff requested injunctive relief from the Court by way of an expungement of his examination transcript for exams taken without accommodations. At minimum, Defendant NBME acknowledges that the claim of whether an expungement is injunctive relief under the ADA is a live issue that will be argued at trial; Defendant's document production indicate, in part, that the ability to void or otherwise expunge an examination from an examinee's Exam History-Transcript is possible. Production of the un-redacted documents will demonstrate the NBME does have policies and procedures in place that allow the Defendant to remove, void, null, or otherwise expunge an examinee's USMLE STEP result(s) from their transcript and that Defendant has exercised this ability. This request is relevant to the Plaintiff's claims and is not unduly burdensome.

2. **Defendant NBME has failed to produce responsive policies, procedures, modules, and/or simulations in response to Interrogatory Nos. 4 and 5 and Requests for Production No. 5.**

[1] *See* D.E. 41, p. 2. ¶2, Defendant NBME's letter to the Court dated April 24, 2023 requesting leave to file a motion for summary judgment

In its response, Defendant NBME provides the link to its Test Accommodations webpage and includes the 2023 Training Guide for Disability Assessment Analyst(s), however, Defendant NBME omits the "Orientation to DS processing/flowchart", "Introduction to audit process and writing letters" and "Introduction to Insufficient Documentation (IDOC)". *See Exhibit 5*. As outlined in the Amended Complaint, Plaintiff claimed that the Defendant NBME discriminated against him on the basis of his disability by not providing accommodation(s) for the USMLE STEP examination. These requests are directly relevant to Plaintiff's claim. Production of these training materials will demonstrate the evaluative criteria and processes used by the NBME in determining which applicants are disabled under the ADA and that the NBME's policies and procedures for accommodations fail to take cultural biases or unofficial accommodation into consideration. These requests are relevant to Plaintiff's claims and are not unduly burdensome.

**3. Defendant NBME has failed to produce responsive evaluation records in response to Request for Production No. 8.**

Defendant NBME objected to this request as "vague" and merely produced its decision letter in response to Plaintiff's request for accommodation. This request is directly relevant to Plaintiff's claim; Defendant's internal procedure manual identifies that the evaluator(s) make "diagnostic conclusions" of the examinee's application and that "decisions should be entered in the Remarks field of the PIER tab." *See Exhibit 6*. Either Plaintiff's accommodation application was considered by the Auditor or to a consultant for third-party review, since there would undoubtedly be a notation or comment left in Plaintiff's application file, production of these communications will demonstrate that Defendant NBME's accommodation policies fail to take cultural biases or unofficial accommodation into consideration. These requests are relevant to Plaintiff's claims and are not unduly burdensome.

4. **Defendant NBME has failed to produce responsive business records in response to Interrogatory Nos. 9 and 10 and Requests for Production Nos. 1, 2.**

Defendant NBME objected to Interrogatories 9 and 10 as “vague”, “seek[s] highly confidential and proprietary information regarding USMEL step examination scoring methodologies”, and unduly burdensome.

As outlined in the Amended Complaint, Defendant’s failure to provide reasonable accommodations resulted in Plaintiff being unfairly evaluated on his disability rather than his skills and competency. Production of these policies and procedures will demonstrate that the scoring system will indicate whether Plaintiff’s disability played a significant role in the scores received as well as indicate whether accommodations would have remedied this issue. This request is made for a specific time period relevant to Plaintiff’s claims and is not unduly burdensome.

5. **Defendant NBME has failed to produce responsive business records in response to Interrogatory No. 11 and Requests for Production Nos. 1 and 2.**

Defendant NBME objected to the Interrogatory as “vague”, “not proportional to the needs of the case”, and unduly burdensome. This Interrogatory asks for the identity of individuals on two specifically named committees who are responsible for determining the score validity of an examination and/or examinee from January, 2020 to the present and the identity of individual(s) who reviewed the Plaintiff’s examinations, if any. These records are directly related to Plaintiff's claim and will provide insight into the Defendant’s evaluation process for examination accuracy, including how an individual who scored so poorly across multiple attempts was not flagged for suspicious activity, how the scores reflect his disability, instructions on what is considered ‘suspicious activity’, and internal processes for evaluating the validity of an examinee’s score(s). These requests are relevant to Plaintiff’s claims and are not unduly burdensome.

6. **Defendant NBME has failed to produce examination documents in response to Requests for Production Nos. 16-21.**

Defendant NBME has flatly objected to producing relevant examination documents in response to the above-referenced Requests for Production. These Requests were specifically tailored to address Defendant's concerns for security, integrity, or alleged improper use by the undersigned; Plaintiff's request specifically indicated that the review would be conducted at the same secure facility used by Defendant NBME to administer the exam. These records are directly relevant to Plaintiff's claims and will provide insight into crucial aspects of the exam, such as the length of the questions, the level of concentration and focus required, and how an individual with ADHD may be disproportionately affected without accommodations.

In the alternative, Plaintiff requested the correct answers to be supplemented with Defendant's production. These records are relevant to Plaintiff's claims and will provide insight into the number of experimental versus graded questions on a given examination, including how it may have affected an individual with ADHD on a prolonged, high-intensity exam. This information is essential for identifying any potential discrepancies in the time spent on different questions, which can be a critical factor for individuals with ADHD who may struggle with concentration and focus on extended, demanding exams. These requests are made for specific examinations directly related to Plaintiff's claims, are not unduly burdensome, and any claims for privilege or protection were waived when Defendant NBME failed to produce a privilege log.

**STANDARD OF REVIEW**

As demonstrated above, the discovery requested by the Plaintiff is directly relevant to his claim against the Defendant. Plaintiff is entitled to the requested discovery pursuant to FRCP 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Accordingly, "a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Degen v. United States*, 517 U.S. 820, 825–26 (1996) (quoting Fed. R. Civ. P. 26(b)(1)). The district court has the

authority to order discovery "for good cause" into "any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The district court also has the authority to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Accordingly, "the court exercises a broad discretion to manage the discovery process in a fashion that will implement the philosophy of full disclosure of relevant information and at the same time afford the participants the maximum protection against harmful side effects." *Clement Commc'ns, Inc. v. Am. Future Sys., Inc.,* No. 89-6280, 1990 WL 50791, at *1 (E.D. Pa. Apr. 19, 1990).

## ARGUMENT

As outlined above, Plaintiff narrowly tailored the scope of his discovery requests so as to be directly relevant to his claim, limited in scope, and not overly broad. These requests are specifically related to Defendant's accommodation application process, its scoring process, and who and/or what internal system(s) Defendant NBME has in place to ensure that the examination process is properly and fairly applied to all applicants. The Defendant's objections to producing these documents on the grounds of blanket non-responsiveness, unrelatedness, or otherwise "confidential, proprietary, or trade secret" information are inappropriate when Plaintiff has provided reasonable alternative(s) for production.

### I. Privilege Log

In the alternative, Plaintiff moves this Court to compel Defendant NBME to produce a privilege log. Federal Rule of Civil Procedure 26(b)(5)(A) provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. *Fed. R. Civ. P. 26(b)(5)(A).*

Thus, "[o]nce a party withholds responsive documents on the basis of an assertion of privilege, '[a] log describing those documents not made available is in order.'" *Parks, LLC v. Tyson Foods, Inc.,* No. 5:15–cv–00946, 2015 WL 5042918, at *4 (E.D. Pa. Aug. 26, 2015) (quoting *Tex. Capital Corp. v. Fleet Capital*

*Corp.,* No. Civ. A. 03–1605, 2004 WL 1472778, at *1 (E.D. Pa. June 14, 2004)) (collecting cases). Accordingly, a privilege log "should 'identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'" *McCrink v. Peoples Benefit Life Ins. Co.*, No. 2:04CV01068LDD, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29. 2004) (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). The submission of a privilege log is important because it "allow[s] opposing counsel and, if necessary, the court to determine the basis of the claim. . . . [thus] [w]ithout such a log, that part of the review process cannot begin." *Velocity Int'l, Inc. v. Celerity Healthcare Sols., Inc.*, No. 09–102, 2010 WL 2196423, at *4 (W.D. Pa. June 1, 2010). If a party fails to properly assert a privilege the privilege may be waived. *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.,* 254 F.R.D. 216, 221 (E.D. Pa. 2008) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996)).

Defendant NBME seeks to withhold certain documents and the information contained therein from discovery due to it being "nonresponsive", however, since Defendant NBME did not assert the privilege until after Plaintiff's deficiency letter, the right to assert any privilege – including whether the redacted information is responsive – is waived. *See Exhibit 7*. Defendant NBME's statement does not satisfy Federal Rule of Civil Procedure 26(b)(5)(A)(ii) because there is no description of the nature of each document, communication, or tangible object that will enable Plaintiff or this Court to assess the validity of the privilege.

## CONCLUSION

Defendant NBME failed to respond to Plaintiff's discovery requests for information that is directly related to his claim. Accordingly, Plaintiff respectfully requests that this Court enter an Order compelling Defendant to fully respond to Plaintiff's Interrogatories and Requests for Production of Documents within 7 days of entry.

**CERTIFICATION PURSUANT TO LOCAL RULE 26.1(f)**

This will certify that the parties attempted to resolve this discovery dispute through the exchange of correspondence between the parties, and that these attempts did not resolve the dispute.

Respectfully submitted,

*/s/ Dr. Markcus Kitchens*

Dr. Markcus Kitchens
625 Hampton Way, #2
Richmond, KY 40475
T: (423) 314-4096
markzwanz@gmail.com
***Pro Se Plaintiff***

EXHIBIT

1

exhibitsticker.com

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and accurate copy of the foregoing was filed electronically via the Pacer system and served to the following on May 3, 2023.

Jared D. Bayer
Cozen O'Connor
One Liberty Place
1650 Market Street, Ste. 2800
Philadelphia, PA 19103
T: (215) 665-4127
***Counsel for Defendant***
***National Board of Medical Examiners***

Caroline M. Mew
Perkins Coie LLP
700 Thirteenth Street, N.W., Ste. 800
Washington, D.C. 20005-3960
T: (202) 654-6200
E: CMew@perkinscoie.com
***Counsel for Defendant***

*/s/ Dr. Markcus Kitchens*
Dr. Markcus Kitchens
***Pro Se Plaintiff***

April 19, 2023

Hon. Caroline Mew
Perkins Coie
700 13th Street, NW, Ste. 800
Washington, D.C. 20005-3960
T: (202) 654-1767
CMew@perkinscoie.com

Re: *Kitchens, M. v. NBME, Case No.: 2:22-cv-03301-JMY*

Ms. Mew,

As you are aware, I served my Interrogatories and Requests for Production of Documents on Defendant, NBME, on March 16, 2023. I received your client's Responses yesterday, April 17, 2023 and upon review, believe there are the following deficiencies:

INTERROGATORIES

INTERROGATORY NO. 3

Interrogatory No. 3 requests the NBME identify its expungement policy for examination transcripts. NBME produced two pages (NBME000349-000350) titled 'Composite Committee Actions Regarding Expunged Records with four paragraphs redacted and a final paragraph identifying the recommended action the Committee made. After having reviewed all of the discovery produced, I found no privilege log in conformity with FRCP 26(b)(5). Please either produced the un-redacted copies or supplement this answer with a privilege log that "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See FRCP 26(b)(5)(A)(ii).*

INTERROGATORY NO. 4-5

Interrogatory Nos. 4-5 requests the NBME identify all policies, procedures, modules, and/or simulations regarding recommendations made by evaluators from January 1, 2021 to the present. The NBME's response merely recites the ADA's criterion for accommodations. The Interrogatory is tailored to any policies and/or procedures that the NBME uses, provides to its evaluators, and criterion listed within the policies provided by the NBME to its evaluators to assess an application for accommodations and/or whether it should be approved. This information is extremely relevant to the case at hand. Please supplement this answer with this information.

INTERROGATORY NO. 8

Interrogatory No. 8 requests, in part, the number of applicants who applied for and received accommodations from January 1, 2020 to the present. In Response, NBME objected stating that it does not track accommodation requests or decisions based on whether applicants are from an LCME or IMG program, however, it does require the applicant to provide the ECFMG ID number (and its LCME equivalent). Thus, it would not be overly burdensome nor outside the scope of the NBME to differentiate between applicants from IMG programs and those who are from LCME programs. I ask that you please supplement this Answer.

EXHIBIT 2

Furthermore, you state that from January 1, 2020 to April 5, 2023, NBME received 6,960 requests for accommodations and approved approximately 5,850 of those applications. Please supplement your answer to identify the number of applications per year and the number of approved applications for the identified year.

INTERROGATORY NO. 9-11

Interrogatory Nos. 9-11 requests the NBME to identify any and all "policies, procedures, and/or training regarding grading the STEP examinations from January 1, 2020 to the present". In Response, NBME objected citing 'confidential and proprietary information' regarding scoring methodologies. The scoring systems implemented by NBME are relevant if a disabled applicant produces a raw score that is disproportionately lower than the CBSSE that applicant took just before. (A score that NBME has demonstrated access to.) Furthermore, if no individual person manually reviews the examination analyses until a score recheck is requested, the data analysts and/or the automated systems could be mis-calibrated while grading my examination(s).[1] I ask that you supplement your answer to this Interrogatory with either a privilege log in conformity with FRCP 26(2)(b)(5) or the scoring systems, data analysts, and computation process for determining an examinee's score and the validity of the results calculated.

REQUESTS FOR PRODUCTION

REQUEST NOS. 16-21

Request Nos. 16-21 request that Defendant NBME produce my prior STEP examinations at a secure prometric center of my choosing. In Response, NBME objected that the Requests were 'completely irrelevant to any party's claim or defense' and sought 'confidential, proprietary examination questions'. While noted, these objections are meritless. This Request is not irrelevant nor is it outside the proportional needs of this case. The exams requested are exams that I have already sat for, been evaluated on, and have failed. Furthermore, NBME produced each exam's timing sequence and, what looks to be the question chosen, and whether points were awarded for that answer for each exam. In order to best understand the interaction between the time spent on question(s), the answer chosen, and the correct answer, I will need to review the exam itself with the produced data.

The NBME's repeated refusal to identify and/or produce information behind 'compromising the integrity of the examination' blatantly ignores the fact that the examinations are administered at prometric centers (or secure examination facilities) across the globe; my request was to review the prior STEP examinations *at a secure prometric center* – the very center at which I took the original exam(s) – which would prevent any improper dissemination of questions and/or otherwise proprietary information. Lastly, the NBME alleges that I am not substantially limited by my ADHD and/or anxiety diagnoses and cites in part, my lack of formal accommodations in all other standardized testing environments, therefore, this evidence is extremely relevant to my claims. I ask that you supplement this response with either a privilege log in conformity with FRCP 26(2)(b)(5) or produce the requested examinations.

---

[1] "A scoring error occurred when an applicant identifier was entered into a database spreadsheet twice, causing a limited number of other applicants' scores to be misaligned and assigned to the wrong applicant." *See* Marika Gerkin, Rebekah Riess, *15 were informed they did not pass the Kentucky Bar Exam after being previously told they did*, CNN (Dec. 7, 2020, 7:10 PM EST), https://www.cnn.com/2020/12/07/us/kentucky-bar-exam-error-trnd/index.html.

Sincerely,

/s/ Dr. Markcus Kitchens

PERKINS COIE

700 13th Street, NW
Suite 800
Washington, D.C. 20005-3960

T +1.202.654.6200
F +1.202.654.6211
PerkinsCoie.com

April 26, 2023

Caroline M. Mew
CMew@perkinscoie.com
D. +1.202.654.1767
F. +1.202.624.9551

**VIA EMAIL**

Markcus Kitchens, Jr.
625 Hampton Way, #2
Richmond, KY 40475

**Re: Kitchens v. NBME**

Dear Dr. Kitchens:

We are writing in response to your April 19, 2023 letter regarding NBME's discovery responses.

(1) Your comment regarding Interrogatory Number 3 appears to actually relate to the document produced at NBME000349-350. Please note that the redactions in this document were made on the grounds of non-responsiveness, not privilege.

(2) With respect to Interrogatory Numbers 4-5, your statement that "NBME's response merely recites the ADA's criterion for accommodations" is incorrect. Please see NBME's responses to Interrogatory Numbers 4 and 5. You appear to be referring to NBME's response to Interrogatory Number 6, which was a response to your request for NBME to identify "any and all statute(s), industry standards, rule(s) and/or regulation(s) that you relied on in approving or denying testing accommodations for each STEP examination…." In the context of that interrogatory, it was entirely appropriate for NBME to refer to the applicable provision in the Americans with Disabilities Act ("ADA") and its implementing regulation.

(3) With respect to Interrogatory Number 8: The information sought is not relevant to the claims or defenses in this action. The issue presented by the single claim in your amended complaint is whether you have demonstrated a disability and the need for testing accommodations under the ADA. Your status as an IMG is not relevant to this issue, nor are NBME's decisions with respect to other IMGs or non-IMGs. NBME stands by its objections to producing any such information.

With respect to your follow-up request regarding the overall number of individuals who applied for accommodations between January 1, 2020 to present, we believe that we provided the information you sought in your interrogatory as propounded, but NBME will break down these numbers on a yearly basis and we expect to be able to provide that information by the end of the week.

EXHIBIT
3
exhibitsticker.com

(4) With respect to Interrogatory Number 9 (you reference Interrogatory Numbers 9-11 in your letter, but your actual question only relates to Interrogatory Number 9), the information sought regarding "grading" the Step examinations is not relevant to any claims or defenses in this litigation and is not proportional to the needs of the case. Again, the issue raised by your single ADA claim is whether you have demonstrated a disability and the need for testing accommodations under the ADA. This is not a "scoring error" lawsuit, and the manner in which USMLE exams are scored is not relevant to that issue. NBME provided you with general information regarding NBME's scoring process in the interest of minimizing discovery disputes, but in providing this information, it has not waived its objections to the discovery request.

We further note that you are seeking information in your discovery letter ("the scoring systems, data analysts, and computation process") that, while vaguely described, was not part of Interrogatory Number 9 as propounded.

We are not withholding information on the grounds of any privilege or protection contemplated in Rule 26 with respect to this Interrogatory, and therefore we will not be producing a privilege log.

(5) With respect to Document Request Numbers 16-21, we disagree with your assertion that the content of your actual test questions is relevant to the issues in dispute. NBME is not relying on the content of any test question as part of its defenses to your claim. In the declaration you filed in this action, you testified that when you took the Step 1 examination, "as I came to the end of the hour for each block, I would then randomly guess at questions until the clock ran out to be sure nothing was left blank." Decl. of Markcus Kitchens (Dkt. 20-1) ¶ 36. You further testified that you were "not able to read through a sizeable portion of vignettes in each block" of the Step 2 examination. *Id.* ¶ 42; *see also id.* ¶ 43. You also testified that, during the September 29, 2022 Step 1 examination, you answered a large number of questions with the answer "C," and relied on this random guess for approximately 120 questions that you did not have time to read. *Id.* ¶ 51. NBME is offering evidence of your test timing and the letters you provided as answer choices in response to this testimony. The content of the test questions themselves is not relevant to this showing.

NBME's objections to disclosing its confidential and proprietary test questions in discovery also are not "meritless." Developing USMLE questions is a time-consuming and expensive process that requires input from subject matter experts across the country, numerous meetings, and support from NBME editors and other technical staff.

The USMLE is a "secure" test, meaning that questions are kept confidential before and after an exam is administered. USMLE questions are registered with the United States Copyright Office pursuant to special regulations that exempt "secure tests" from the Copyright Act's usual requirement of leaving a deposit copy with the Copyright Office. *See* 37 C.F.R. § 202.20(c)(2)(vi). The regulations are designed to "afford protection" to secure tests, "the beneficial purpose of which would be defeated" if copies were available for review." *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies*, 692 F.2d 478, 484 n.6 (7th Cir. 1982).

Confidentiality of exam content is critical because—as is common with standardized tests—NBME reuses a significant number of questions from prior exams on each exam form to "equate" USMLE scores (*i.e.*, adjust for variation in the difficulty of test forms so that scaled scores will reflect the same level of performance test-to-test). *See generally Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies*, 458 F. Supp. 2d 252, 254 (E.D. Pa. 2006) ("Because plaintiff reuses many MBE questions, it goes to great lengths to maintain the secrecy of those questions."); *Enow v. Nat's Ass'n of Bds. of Pharmacy*, 2019 WL 6130747, at *4 (D. Colo. Nov. 19, 2019) ("[The National Association of Boards of Pharmacy] has a legitimate business interest in shielding past test questions from disclosure[.]").

"[T]he unique nature of secure tests," reflected in the special Copyright Office regulations, "means that *any* use [of the test questions] is destructive of [the test owner's] rights" in those questions." *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 543-45 (3d Cir. 1986) (emphasis added) (affirming preliminary injunction prohibiting unauthorized use and disclosure of secure test questions, and finding that test owner would suffer irreparable harm absent an injunction). Courts have had little difficulty concluding that secure test questions constitute trade secrets. *See, e.g., United States v. Hedaithy*, 392 F.3d 580, 594 (3d Cir. 2004).

The disclosure of secure questions from a licensing exam is harmful because it jeopardizes the validity of future exam results. "USMLE questions are intended to be disclosed only during actual test administrations and the unauthorized disclosure of those questions compromises the integrity of the examination." *Nat'l Bd. of Med. Exam'rs v. Optima Univ.*, 2011 WL 7615071, at *1 (W.D. Tenn. Sept. 29, 2011); *cf. Detroit Edison Co. v. NLRB*, 440 U.S. 301, 304, 313 (1979) (explaining that "[t]est secrecy" is "critical to the validity" of tests used by employers).

Although you were given access to secure USMLE questions for the authorized purpose of taking the examination, you were subject to strict confidentiality obligations and were required to agree not to reproduce or disseminate any information relating to questions or answers from the exam as part of your examination agreement. You are presumably seeking access to your prior USMLE examination questions at this time so that you can take notes about and/or discuss the

content of those questions in connection with this litigation. Any such reproduction or disclosure would compromise the secure nature of the test. There are also concerns with providing you, as a potential future examinee, with additional exposure to live examination questions. The questions are not relevant to any issues in the litigation, and their disclosure would cause significant harm.

We are not withholding information on the grounds of any privilege or protection contemplated in Rule 26 with respect to these requests, and therefore we will not be producing a privilege log.

******

I am available to discuss these issues with you further if you have any remaining concerns.

Sincerely,

/s/ Caroline M. Mew

Caroline M. Mew

cc: Jared Bayer

May 1, 2023

*Via E-Mail*

Hon. Caroline Mew
Perkins Coie
700 13th Street, NW, Ste. 800
Washington, D.C. 20005-3960
T: (202) 654-1767
CMew@perkinscoie.com

Re: *Kitchens, M. v. NBME, Case No.: 2:22-cv-03301-JMY*

Dear Ms. Mew,

I am writing to acknowledge that I have received and reviewed your letter dated April 26, 2023, in response to my letter dated April 19, 2023. I would like to take this opportunity to address some of the points you raised in your letter.

INTERROGATORIES

For Interrogatory No. 3, the redacted information is relevant because it falls under the "Composite Committee Actions Regarding Expunged Records" heading. If it were not related or non-responsive, it would be categorized under a different heading. Therefore, the redacted information is pertinent to the subject matter at hand and should be taken into consideration by those reviewing the document. However, as stated in my April 19th letter, if the redacted text is non-responsive, please supplement your response with a privilege log pursuant to FRCP 26(b)(5)(A)(ii).

For Interrogatory Nos. 4-5, I requested any and all policies, procedures, modules, and/or simulations provided by the NBME (in training and/or providing criterion) for its evaluators or outside consultants to rely on in evaluating an application for accommodation(s). In your response, you indicated it "generally considers" and then list

> "(1) the documentation supports the assigned diagnosis/diagnoses of one or more physical impairments;
> (2) the documentation supports the conclusion that the examinee is substantially limited in his or her ability to perform one or more major life activities relevant to taking the USMLE as a result of the claimed impairment(s);
> (3) the requested accommodations are appropriate and necessary to address functional limitation(s) and allow the examinee to take the examination in an accessible manner.

The request is asking for a comprehensive list of all policies, procedures, modules, and/or simulations provided by the National Board of Medical Examiners (NBME) regarding recommendations made by evaluators and/or outside consultants who review and evaluate an application for testing accommodation(s). This information is critical because it sheds light on the processes used by the NBME to determine whether a testing accommodation is appropriate for an individual. By identifying these policies and procedures, the requestor will gain a deeper understanding of the evaluative criteria and processes used by the NBME, which is essential in assessing the fairness and accuracy of their decisions. Additionally, the modules and simulations

EXHIBIT
4

provided by the NBME can help the requestor better understand how accommodations are granted and what factors are taken into account when making such determinations.

To clarify further: I am requesting if there are any new-hire training plan(s), training packets-manuals, checklist(s),[1] criteria-outline(s), training video(s), practice applications, and/or any other material(s) used for evaluators, who may or may not have any medical training or background, to determine whether an application is forwarded to an outside consultant or is determined by said evaluator. Neither the guidelines listed on your website nor do the internal training documents indicate what instruction, if any, an evaluator is to rely on in determining whether an applicant is eligible for accommodation.

For Interrogatory No. 8, the individual's race, gender, or status as an International Medical Graduate (IMG) is relevant in the litigation because my claim for ADA accommodations include the allegation(s) that the National Board of Medical Examiners (NBME) does not have the ability to consider or take into account cultural biases or unofficial accommodations. These factors may be relevant in determining whether the NBME's evaluation process is biased or unfairly disadvantageous towards certain groups of individuals. For instance, if I can demonstrate that the NBME's evaluative criteria are biased against IMGs or individuals of a certain race or gender, then it may support the claim that my application was unfairly denied appropriate accommodations. Therefore, the race, gender, and IMG status of applicants considered by the NBME are be relevant in determining whether the NBME has failed to provide a fair and impartial evaluation process. Please supplement your answer accordingly.

For Interrogatory No. 9, the grading process for STEP examinations is relevant to an ADA accommodation claim because it is central to determining whether the National Board of Medical Examiners (NBME) is fulfilling its obligations under the Americans with Disabilities Act (ADA) to provide reasonable accommodations to individuals with disabilities. My claim for ADA accommodations is based on the assertion that the NBME's evaluation process unfairly penalized me for my disability, resulting in a lower score than I would have received had I been provided with appropriate accommodations. Therefore, the grading process for the STEP examinations is critical to determining whether I was unfairly disadvantaged due to my disability. Specifically, it may be necessary to examine the grading process to determine whether my disability played a role in the lower score, whether accommodations could have remedied this issue, and whether the NBME properly evaluated my performance with accommodations in place. Ultimately, the grading process is integral to determining whether the NBME violated the ADA in denying my accommodations. Furthermore, the information in my discovery letter does not ask for additional information, it merely uses the language you used in responding to the Interrogatory so as to avoid any additional confusion and/or assumption(s) you may have to make in responding to my letter. Please supplement your answer accordingly.

For Interrogatory No. 10, you indicated that no individual person reviews and/or grades STEP examinations for examinees, rather, data analysts run the secondary scoring system and other quality assurance analyses to ensure the examination scoring process is accurate. Please confirm that no individual analyst reviewed any of the STEP examinations related to this litigation.

For Interrogatory No. 11, the identity of the USMLE Committee for Individualized Review and the USMLE Composite Committee is highly relevant to a potential ADA violation because

[1] See attached IEP Checklist for reference.

these committees play crucial roles in reviewing exams, evaluating the validity of scores, and identifying suspicious activity during an exam. As part of their responsibilities, these committees must ensure that all test-takers are evaluated fairly and that any accommodations provided to individuals with disabilities are in compliance with the Americans with Disabilities Act (ADA). The committees must also identify any potential violations of the ADA and are key players in determining whether the claim is valid and whether there has been any discrimination during the exam. Because these committees' responsibilities toward examinees is seriously to ensure that all exam scores are evaluated fairly and without any bias, the identity of any committee member(s) who reviewed my examinations is relevant to the litigation. It is important to note that the identity of the members who make up the committee are public record, and have been published by the USMLE – therefore, any claims of relevancy are moot.

For Requests 16-21, reviewing a previously taken exam at a secure facility is not intended to facilitate note-taking or improperly disseminating questions during litigation. Instead, it is done to demonstrate crucial aspects of the exam, such as the length of the questions, the level of concentration and focus required, and how an individual with ADHD may be disproportionately affected without accommodations. This review process can help to show how an individual's performance on the exam may have been impacted by their ADHD and why accommodations are necessary to ensure a fair and equitable evaluation. In recognizing the USMLE's interest in protecting the integrity of the exam, I requested to conduct such reviews in a secure facility for the sole purpose of preventing any potential misuse of the exam materials.

However, in the interest of compromise, instead of reviewing the actual exam(s) at a secure facility, I request that you supplement your answer with the correct answer for each question on NBME317-347. Having the correct answer for a question, in addition to your chosen answer, is crucial for determining the amount of time spent on some questions over others, and how it may have affected an individual with ADHD on a prolonged, high-intensity exam. Without knowing the correct answer, it is impossible to determine whether your chosen answer was correct, incorrect, or an experimental question(s) that was not counted towards the actual score of an examine, and how much time it took to arrive at that answer. This information is essential for identifying any potential discrepancies in the time spent on different questions, which can be a critical factor for individuals with ADHD who may struggle with concentration and focus on extended, demanding exams. This data is highly relevant to an ADA violation claim because it can help demonstrate the impact of the individual's disability on their performance and highlight the need for reasonable accommodations to level the playing field. Please supplement your production accordingly.

Sincerely,

/s/ Dr. Markcus Kitchens
Dr. Markcus Kitchens



# 2023 Training Guide
# Disability Assessment Analyst

Disability Services

EXHIBIT
5
exhibitsticker.com

**Processing and Training Tasks**

1) Orientation to DS processing / flowchart:  U:\Disability Services\Procedures\Flow Charts
2) Read the current USMLE Bulletin of Information (https://www.usmle.org/bulletin-information)
    a) Download practice materials https://orientation.nbme.org/Launch/USMLE/STPF1
3) Read USMLE Guidelines for Test Accommodations
    a) https://www.usmle.org/step-exams/test-accommodations/guidelines
4) See other agency documentation guidelines:
    a) https://students-residents.aamc.org/applying-medical-school/taking-mcat-exam/mcat-exam-accommodations/
    b) https://www.nbome.org/Content/Exams/COMLEX-USA/COMLEX-USA_Test_Accommodation_Instructions.pdf
5) DS Specialists:
    a) Orientation to case creation in Salesforce
    b) Observe Specialists review new case and create combined PDF for analyst review
    c) Observe Specialists process a new and subsequent request
    d) Listen to Specialists on routine and difficult phone calls
6) Role of outside consultants:
    a) Review DS Consultant list in TARA
7) Introduction to audit process and writing letters:
    a) Location of files: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE
        i) Intro to Insufficient Documentation (IDOC): U:\Disability Services\Combined Correspondence
        ii) Intro to Decision letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\DEC
        iii) Intro to Approval letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\APP
        iv) Intro to NonADA_Approval letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\APPNONADA
8) Field phone calls from examinees and evaluators, selected with DS Manager approval
9) Introduction to Consultant Web for Consultant reviews
10) Introduction to MicroStrategy
    a) Access Microstrategy
11) Participate in updating documentation guidelines, request forms, letter/e-mail templates, documentation of procedures and best practices
12) Participate in the generation of consultant training materials
13) Read past cases

**Procedures**

**Audit and Insufficient Documentation (IDOC) E-mails**

Steps:

Review and Audit

The DS Specialists review the initial submission for legibility and completeness of the basic information including a signed and completed request form; a personal statement; a Certification of Prior Test Accommodations (when the examinee reports having received accommodations in medical school); and a copy of MCAT scores if relevant. The Specialist confirms that the examinee is registered for the exam(s) with a current Eligibility Period (EP), and we typically request that their scheduling permit is on HOLD.

The file is then assigned to an auditor to review submission for sufficient clinical information to allow for an informed decision regarding the presence of current impairment and what, if any, accommodations is appropriate for the examination. The analyst considers all of the submitted documentation looking for obvious missing or inconsistent data. The diagnostic conclusions of the examinee's evaluator(s) are most valuable when they are supported by complete relevant historical and background information; score data and norms for all tests and measures administered; analysis of a differential diagnosis; and recommendations for treatment/accommodations supported by the data. In addition, evaluations should be supported by objective documentation demonstrating current impairment. A thorough file audit and judicious follow up request for supporting documentation provides the broadest dataset possible to minimize/eliminate speculation allows subsequent reviewers (decision maker, external consultants, legal counsel) to analyze the facts and make informed decisions.

Audit

In general, when performing the Audit, compare what the examinee has submitted to the published USMLE Guidelines to Request Test Accommodations and standard practices in the relevant medical or psychological specialty. The purpose of the Audit is to identify vital information that is missing from the submission as soon as practicable. Missing information that is likely to support the examinee's request may be communicated to the examinee via an insufficient documentation (IDOC) e-mail, the intent of which is to assist the examinee in providing the necessary information needed to document a current impairment and support their request. Typically, IDOC e-mails are written to request Standard Scores when only qualitative information (Average, Low Average, etc) or percentile ranks are reported by the evaluator; clarification on norms used for measures administered by evaluator; for relapsing/remitting conditions that require updated documentation; and updated documentation for psychiatric conditions.

**New Requests:** In general, the following items are required to begin an Audit:
For new (first time) Requests for Accommodations:

EXHIBIT 6

exhibitsticker.com

**Procedures**

**PIE Decision-making**

The case coordinators may bring a PIE request to you when the PIE is ready for review.

This list is not exhaustive and not a checklist, as each review is conducted on a case-by-case basis, but here are some questions to guide the review process.

-Is the examinee registered for the exam they are requesting a PIE?

-Are they scheduled? Is there sufficient time to implement the PIE before their exam date (Note: unusual requests sometimes require coordination with Prometric or CSEC which may take a week or more to coordinate)

-Does the diagnosis and requests on the decision sheet accurately reflect the examinee's condition and requests?

-Has the examinee supplied a personal statement?

-Has the examinee supplied documentation from their doctor? (Note: not needed for PIE requests for breast pumps)

-Does the medical documentation clearly identify the professional, their practice/office location, their relevant licenses, and signature?

-Does the medical documentation match up with personal statement? Are there inconsistencies?

-Is the request for a personal item of a medical nature? Extra time or break time are not personal items. A separate room is not a personal item. A back-brace is a personal item of a medical nature. A pillow is a personal item that may, or may not, be medical in nature depending on the request.

-Is the request medically necessary? For example, an insulin pump is medically necessary for someone with diabetes. Hearing aids are typically necessary for individuals with significant hearing impairments. Having a snack to eat every 10 minutes is typically not medically necessary. Wanting earplugs to focus better is not medically necessary.

-Will the personal item adversely affect the standardized administration by Prometric or CSEC?

Decisions should be entered in the Remarks field of the PIER tab.

Case Coordinators (CC) draft PIE decision emails and save without sending. CCs notify PIE decision-maker when email is ready. PIE maker edits and sends decision email.

**Composite Committee Actions Regarding Expunged Records**



On motion made, seconded and passed, the Composite Committee approved the following recommendation: it is recognized that circumstances may occur in connection with the computer delivery of USMLE which will prevent an examinee from completing his/her examination or which will result in an examinee receiving less than the standard amount of testing time, or which will result in some or all of an examinee=s responses being unavailable for scoring.  When such circumstances occur for reasons related to the computer delivery system and are through no fault of the examinee, an option available to such examinees will be to reschedule and take another administration of the Step in question; and, in the event that the examinee elects this option,

EXHIBIT

7

the administration affected by such circumstances will be omitted from the USMLE transcript and limitations regarding the frequency of reexamination will not be applicable to the rescheduled examination.