IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. MARKCUS KITCHENS, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-CV-03301-JFM |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) |
| Defendant. | ) |

**NATIONAL BOARD OF MEDICAL EXAMINERS'
BRIEF ADDRESSING PLAINTIFF'S REQUEST FOR EXPUNGEMENT**

This brief addresses whether expungement of test results is (1) a remedy that the Court has "legal authority to order ... and, if so, (2) is appropriate in this case." Order (Dkt. 47). NBME respectfully submits that expungement is not a permissible remedy under Title III of the ADA and would not be warranted here even if the Court had the authority to award such relief in an appropriate case.

Dr. Kitchens has taken Step 1 of the United States Medical Licensing Examination (USMLE) three times, without passing. He requested accommodation on only two of those exams. He has also taken the USMLE Step 2 Clinical Knowledge exam (Step 2 CK) twice, without requesting accommodations either time; he did not achieve a passing score either time. Although he requested accommodations on only two of his five Step exam attempts, Dr. Kitchens apparently wants the Court to expunge his entire USMLE exam history. This would prevent residency programs and state medical boards from knowing about his multiple failing attempts on the USMLE, an examination program that helps ensure that prospective physicians have the knowledge and skills needed to provide safe and effective healthcare. For the reasons that follow, there is no legal or factual basis for expunging any of his Step exam results.

162075883.1

## I. Dr. Kitchens's Legal Claim And Requested Relief

Dr. Kitchens alleges that NBME violated the ADA by denying two requests he submitted in 2022 for extra testing time. *See* First Am. Compl. ¶¶ 28-56 (Dkt. 15). Although not specified in his Complaint, he apparently seeks an injunction that would require NBME to (1) give him 100% extra testing time on future administrations of the Step 1, Step 2 CK, and Step 3 exams, and (2) expunge his prior USMLE "examination transcript." Dkt. 20 at 4 (preliminary injunction motion).

## II. Expungement Of Prior Test Results Is Not An Available Title III Remedy

The remedies provision for Title III of the ADA — 42 U.S.C. § 12188(a) — adopts by reference the remedies set forth in Title II of the Civil Rights Act of 1964:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by [this Title], a civil action for ***preventive relief***, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved....

42 U.S.C. § 2000a-3(a) (emphasis added). Thus, a Title III plaintiff may only seek relief that prevents a current or future violation of the ADA. *See* 42 U.S.C. § 12188(a)(1); *see also* 28 C.F.R. § 36.501(a) ("Any person who ***is being subjected to discrimination*** on the basis of disability ... ***or*** who has reasonable grounds for believing that such person ***is about to be subjected to discrimination*** ... may institute a civil action for ***preventive relief****....*" ) (emphasis added); *G. v. Fay School*, 931 F.3d 1, 9 (1st Cir. 2019) ("[T]he remedies available under [Title III] are narrow.... The only relief that is available is 'preventive' injunctive relief.").

Here, the alleged violation to be prevented is the failure to provide accommodations that an examinee claims to need in order to test in an "accessible place and manner." 42 U.S.C. § 12189. Therefore, the preventive injunctive relief that is potentially available is an injunction requiring a testing entity to provide accommodations on a future test administration if needed by an examinee to test in an accessible manner. Expungement, by contrast, addresses an alleged *past* ADA violation. That type of relief is not authorized under Title III. *See Barbosa v. Am. Osteopathic Bd.*

*of Surgery,* 2008 WL 2468483, *4 (S.D. Ohio 2008) ("The words 'preventive relief' clearly indicate that the relief afforded a person under Title III is proscriptive or forward-looking in nature. Such relief does not include relief meant to compensate for past wrongs such as: restitution, compensatory damages, or punitive damages."); *Fiorica v. Univ. of Rochester,* 2008 WL 907371, *3 (W.D.N.Y. 2008) ("[T]he injunctive relief sought by the plaintiff (reinstatement to the nursing program) is not preventative relief, and therefore, is not available under Title III of the ADA.").

Dr. Kitchens himself has aptly phrased the narrow injunctive relief that is available under Title III: "'[T]he appropriate function of [an] injunction is to afford preventative relief and not to correct injuries already committed.'" Dkt. 20-2 at 17 (citation omitted). Although the ADA has been in effect since 1990, NBME knows of no court decision that has expunged the results from a prior test administration as a remedy for the denial of testing accommodations that a court found to be warranted under 42 U.S.C. § 12189. Instead, the remedy awarded by courts when such a violation has been found is an injunction requiring the provision of accommodations on a *future* exam administration, so as to prevent a violation of Section 12189.

According to Dr. Kitchens, *Agranoff v. Law School Adm. Council*, 97 F. Supp. 2d 86 (D. Mass. 1999), supports "expungement [as] a remedy" for examinees under Title III. Dkt. 27 at 7. *Agranoff*, however, provides no such support. The court in that case granted a preliminary injunction requiring LSAC to allow plaintiff to take the LSAT with extra time. In balancing the equities as part of its preliminary injunction analysis, the court found that the risk of harm to LSAC did not outweigh plaintiff's alleged harm because "Plaintiff's exam score from the October 2 examination may be deleted" by LSAC if it prevailed on the merits. *Id.* at 88. This finding falls well short of supporting a court's authority under Title III to expunge a prior test result at an examinee's request as a remedy for an alleged ADA violation by a testing entity in denying

- 3 -

accommodations. The score deletion referenced in *Agranoff* would simply have undone the effects of an improvidently issued preliminary injunction. The court was not interpreting Title III's remedy provision and did not hold that expungement is a permissible remedy for examinees.

### III.     Expungement Would Not Be Warranted In This Case In Any Event
#### A.     Dr. Kitchens's USMLE testing history

Dr. Kitchens graduated from a medical school in Poland in January 2021. One year later, and in anticipation of taking the USMLE Step 1 exam for the first time, he submitted an accommodation request to NBME asking for 100% extra testing time. Convery Decl. (Dkt. 26-1) ¶ 17, Ex. 3 (Dkt. 26-4). His request form stated he had been diagnosed with ADHD and Test Anxiety but had not received any formal accommodations in elementary school, middle school, or high school; on his college admission test; in college; on the Medical College Admission Test (MCAT); or in medical school. *Id*., Ex. 3 at pp. 4-5.

NBME provides guidance to candidates regarding the types of supporting documentation they should submit when requesting accommodations. The requested documents include an evaluation report from a qualified professional that confirms the candidate's impairment(s) and discusses any functional limitations. NBME also encourages candidates to submit a personal statement that includes "specific information about the disability-related symptoms and how they affect your academic, occupational, social and other important areas of functioning"; a description of "the extent to which your daily functioning is impaired and how that impairment interferes with your ability to access the examination under standard conditions"; and "a clear rationale for the requested accommodation(s) and [a description of] how each requested accommodation will alleviate the functional limitations caused by your disability." *Id*., Ex. 2 (Dkt. 26-3). Dr. Kitchens, however, did not provide an evaluation report from a healthcare professional for either of his claimed impairments when he requested accommodations. Nor did he provide any other

documentation that confirmed his impairments and addressed his functional limitations. After reviewing the limited information Dr. Kitchens provided, NBME denied his request because it did not show that accommodations were warranted. *See id*. Ex. 15 (Dkt. 26-15).

Dr. Kitchens took the Step 1 exam on February 25, 2022, and he did not pass. *Id*. ¶ 23. He took Step 1 again on May 9, 2022, this time without requesting accommodations. He again failed to pass. *Id.* On May 28, 2022, and June 29, 2022, Dr. Kitchens took the Step 2 CK exam, without requesting accommodations. He did not come close to passing on either occasion. *Id.* ¶ 24.

On August 30, 2022, Dr. Kitchens submitted another accommodation request to NBME, again limited to Step 1. This time, he requested 50% extra time and extra breaks. *Id.* Ex. 15 (Dkt. 26-16). He did not submit any new documentation in support of this request. *Id.* ¶ 25 and Ex. 15.

NBME promptly notified Dr. Kitchens that he should provide additional documentation, *id*. ¶ 26 and Ex. 16 (Dkt. 26-17), and "strongly encourage[d]" him to review the USMLE accommodation guidelines, including the "specific guidelines for requesting [accommodations] on the basis of neurodevelopmental disorders such as ADHD." *Id*. Ex. 18 (Dkt. 26-19). However, Dr. Kitchens chose to test under standard conditions, rather than provide additional documentation. *Id.* Ex. 19 (Dkt. 26-20). He re-took Step 1 on September 29, 2022, and he did not pass. *Id.* ¶ 29.

**B.** **Because Dr. Kitchens did not demonstrate his need for accommodations, NBME did not violate the ADA in denying his two accommodation requests in 2022, and no relief is warranted with respect to those tests**

To be disabled under the ADA, a person must have "a physical or mental impairment that substantially limits one of more major life activities," 42 U.S.C. § 12102(1), "as compared to most people in the general population," 28 C.F.R. § 36.105(d)(1)(v). Having a diagnosis is not sufficient to establish a disability under the ADA, and "not every impairment will constitute a disability[.]" 28 C.F.R. § 36.106(d)(1)(v).

Testing entities may request reasonable supporting documentation from individuals who request accommodations. 28 C.F.R. § 36.309(b)(1)(iv). Supporting documentation allows the testing entity to confirm the existence of the impairment, understand the nature of any functional limitations, and approve appropriate accommodations.

NBME provides guidance on its website regarding the documentation candidates should submit when seeking accommodations, *see* Dkt. 41-1, which is similar to guidance provided by other entities that administer high-stakes licensing exams, such as the Pennsylvania Board of Bar Examiners, *see* Dkt. 41-2. NBME's accommodation policies help ensure that "individuals with bona fide disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage." *Powell v. NBME*, 364 F.3d 79, 88-89 (2d Cir. 2004).

In support of his 2022 requests, Dr. Kitchens submitted (1) a half-page personal statement that did not include any of the descriptive information that NBME encourages candidates to provide; (2) a four-sentence letter from a doctor who said that he was treating Dr. Kitchens for anxiety in April 2020 but provided no diagnostic information and did not identify any functional limitations; (3) a one-page excerpt from a 2020 dermatology record; (4) four pages of excerpts reflecting visits to health care providers in July 2017 and May 2018; and (5) an email showing he was scheduled to take an examination in medical school known as the CBSE with "extended time." Convery Decl. Exs. 6-11 (Dkt. 26-7-26-12). At NBME's request, he later provided a copy of his CBSE score report. *Id.* Ex. 5 (Dkt. 26-6), Ex. 12 (Dkt. 26-13). The report showed that he did not come close to passing the exam, despite having extended time. *Id*.

The documents that Dr. Kitchens submitted to NBME in 2022 were deficient in two primary respects. <u>First</u>, they did not include any evaluation report or similar information from a

healthcare professional who had diagnosed Dr. Kitchens with either ADHD or anxiety. In the absence of such information, NBME had no obligation to approve his request for accommodations.[1] Second, they did not address how Dr. Kitchens is impacted by his alleged impairments.[2] Therefore, they provided no basis for concluding that he is substantially limited in any major life activity relevant to taking the Step 1 exam or for finding that extra testing time was a necessary accommodation. Even if the documents had referenced a diagnosis, a diagnosis alone is not sufficient to establish a disability or warrant accommodations under 42 U.S.C. 12189. *See Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs,* 2016 WL 1404157, at *7 (E.D. Pa. 2016) (examinee with dyslexia was not disabled under the ADA).[3]

The sparse documentation that Dr. Kitchens submitted to NBME in 2022 with his two accommodation requests stands in stark contrast to the ***additional*** documentation he has provided in this lawsuit, including: an ADHD evaluation report from Christina Bacon, which Dr. Kitchens obtained shortly before the preliminary injunction hearing; results from a computerized assessment of ADHD symptoms that was administered to him in 2023; a record from 2013 reflecting an interaction with the disability services office at his college; a declaration from his mother

---

[1] *See Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("[T]he College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD ....").

[2] Exhibits A and B hereto show the information Dr. Kitchens submitted with his 2022 accommodation requests. As shown by the added highlighting, the documents reference ADHD and anxiety but do not state when or how the diagnoses were made, if a diagnosis was made at all. Importantly, the documents also provide no information on any functional limitations Dr. Kitchens purportedly experiences, which is essential not only for determining whether he is disabled under the ADA, but also for determining whether he needs extra testing time in order to test in an accessible manner.

[3] *See also, e.g., Hentze v. CSX Transp.*, 477 F. Supp. 3d 644, 670-71 (S.D. Ohio 2020) (individual diagnosed with anxiety was not disabled under the ADA); *Black v. NBME,* 281 F. Supp. 3d 1247, 1249-50 (S.D. Fla. 2017) (medical school student with ADHD diagnosis was not disabled under the ADA).

discussing his educational background; a declaration from a college professor, stating she provided informal accommodations to Dr. Kitchens in her classes; a descriptive personal declaration providing far more information than what he provided in his personal statement to NBME in 2022 with his accommodation requests; additional medical records from White House Clinics from 2014 to 2018; more recent medical records from Baptist Health Medical Group; and numerous school transcripts. Although all this information either already existed or could have been obtained at the time Dr. Kitchens requested accommodations (just as he has obtained it for use in this lawsuit), none of it was presented to NBME in 2022.

Because Dr. Kitchens did not provide sufficient documentation to support his two requests for accommodations in 2022, NBME did not violate the ADA in denying either of those requests. And because NBME did not violate the ADA with respects to those two requests, there is no basis for awarding Dr. Kitchens *any* relief with respect to those two exams, including any injunctive relief that would require expungement of his results on those exams--even if the Court had the authority to award relief in an appropriate case. Even more obviously, because Dr. Kitchens did not request accommodations on either of his Step 2 CK exams or the third administration of Step 1, he plainly is not entitled to expungement of those scores.

### C. Expungement is also unwarranted because Dr. Kitchens cannot show that his failure to pass the Step 1 exam was caused by a need for extra testing time

Even if expungement were a permitted remedy, and even if NBME had violated the ADA by not approving his requests for accommodations in 2022 (a different question from whether he can now show a need for accommodations), expungement would be warranted only if Dr. Kitchens could show that the denial of extra testing time caused him to fail. A necessary premise for Dr. Kitchens' expungement request is that he did not pass the Step 1 exam because he was not allowed additional testing time, but he cannot make such a showing.

Evidence will show that, after taking Step 1 the first time, Dr. Kitchens felt so good about his performance that he asked NBME to recheck his score. He also called NBME after receiving his test results, explaining on the call: "I was very confident that — I didn't think the exam was actually that hard for me …." Dkt. 26-29. This description of his testing experience is drastically at odds with his assertion in this case that he ran out of time and randomly guessed at many of his answers. *See* Dkt. 20-1 ¶¶ 35-36.

Records will also show that he answered all questions each time he took the Step 1 and Step 2 CK examinations. *See* Ex. C. Indeed, he did not even use all the *standard* testing time on many sections of his exams. *See* Ex. D. This indicates that testing time was not an issue for him. Similarly, although he sought extra breaks in his second request for testing accommodations, he never used all the *standard* break time allotted for any of his tests. *See id.*

Evidence will also show that Dr. Kitchens did not seek accommodations in college, only prescription medications. (Dkt. 25 p. 181) And evidence will show that on multiple recent occasions, Dr. Kitchens has reported to his treatment providers that any symptoms of anxiety or ADHD he reports experiencing are well-controlled by medication. *See, e.g.,* Ex. E. Although the effects of medications and other mitigating measures cannot be considered when determining if someone is disabled under the ADA, *see* 42 U.S.C. § 12102(4)(E)(i)(1), they can be considered when determining if accommodations are needed, 81 Fed. Reg. 53,204, 53,232 (Aug. 11, 2016).

Evidence will further show that Dr. Kitchens graduated from high school with a 2.8 GPA. *See* Ex. F. He attended a liberal arts college, where he majored in music and graduated with a 2.6 GPA. *See* Ex. G. His highest grade in a science class in college was a C+. *Id.* He reports scoring in the "zero percentile" on the MCAT, Dkt. 43 at 4, and he graduated from medical school with a 2.54 GPA in his course work. *See* Ex. H. Against this academic background, it is entirely possible

that Dr. Kitchens' performance on the demanding Step 1 exam is attributable to not having sufficient knowledge of or proficiency in the tested subject matters. Alternatively, he might have had a poor night's sleep before he tested or been distracted by other things going on in his life.[4]

In all events, Dr. Kitchens cannot show that he failed Step 1 because he did not have enough testing time. Absent that showing, which is his burden to make, it would be inappropriate to expunge his results on those two Step exams,[5] even if expungement were a permissible remedy under Title III and even if NBME had violated the ADA by denying his 2022 accommodation requests (neither of which is the case).

Dr. Kitchens could have sought preventive injunctive relief *before* testing, to address whether he should receive testing accommodations. From both a legal and factual perspective, expungement of his prior test scores now would inappropriately deprive residency programs and state medical boards of important information regarding Dr. Kitchens's USMLE testing history.

Dated: May 5, 2023

Respectfully submitted,

*/s/ Caroline M. Mew*

| | |
|---|---|
| Jared D. Bayer | Caroline M. Mew - admitted *pro hac vice* |
| Cozen O'Connor | Perkins Coie LLC |
| 1650 Market Street, Suite 2800 | 700 13th Street, NW, Suite 800 |
| Philadelphia, PA 19103 | Washington, DC 20005 |
| Phone: 215-255-8590 | Phone: (202) 654-1767 |
| jbayer@cozen.com | cmew@perkinscoie.com |
| | *Attorneys for NBME* |

---

[4] In his deposition, Dr. Kitchens explained that his very low score on the CBSE examination—where he received double testing time—was due to multiple reasons such as testing while he was also getting ready to graduate and move. *See* Ex. I.

[5] *Cf. Singh v. George Wash. Univ. School of Medicine & Health Sciences*, 667 F.3d 1, 5-6 (D.C. 2011) ("We need not decide whether Singh had an impairment within the meaning of the ADA, or whether that alleged impairment substantially limited a major life activity. The district court's factual finding on causation ... alone dooms her case. The district court identified 'many reasons aside from [Singh's] impairment that might explain why [she] has done relatively poorly on extremely time-limited tests.'") (citations omitted).

- 11 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2023, a true and correct copy of the foregoing document was served by electronic mail on plaintiff Markcus Kitchens, Jr. at markzwanz@gmail.com

*/s/ Caroline M. Mew*