**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DR. MARKCUS KITCHENS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:22-CV-03301-JFM** |
| ) | |
| **NATIONAL BOARD OF MEDICAL** ) | |
| **EXAMINERS,** ) | |
| ) | |
| **Defendant.** ) | |

## JOINT PRETRIAL MEMORANDUM

Pursuant to Judge Murphy's policies and procedures, the parties have communicated and provide the following pretrial memorandum.

**A.    Joint Statement of the Nature of the Action and the Basis on Which the Jurisdiction of the Court is Invoked**

This action arises under 42 U.S.C. § 12189, found in Title III of the Americans with Disabilities Act ("ADA"). The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**B.    Joint Statement of the Issues To Be Tried**

The parties have different statements of the issues to be tried:

*Plaintiff's Statement of the Issues To Be Tried*

(1)    Whether Plaintiff is disabled within the meaning of the ADA?  Specifically, has Plaintiff shown that he has a physical or mental impairment that substantially limits his ability to perform one or more major life activities that are relevant to taking the United States Medical Licensing Examination ("USMLE"), as compared to most people in the general population?

(2)     Did NBME violate the ADA by not granting Plaintiff's January 2022 and August 2022 requests for extra testing time on Step 1 of the USMLE? Specifically, (1) was the Plaintiff disabled under the ADA; (2) were the accommodations requested reasonable; and (3) were those accommodations denied by the NBME?

(3)     If the answer to Issue 2 is "yes," is expungement of Plaintiff's results on the administrations of the Step 1 and Step 2 examinations that he took under standard testing conditions after his requests for testing accommodations were denied (i) legally permissible and (ii) appropriate (i.e., under the facts of this case) remedy under Title III of the ADA?

*Defendant's Statement of the Issues To Be Tried*

(1)     Has Plaintiff shown that he is disabled within the meaning of the ADA? Specifically, has Plaintiff shown that he has a physical or mental impairment that substantially limits his ability to perform one or more major life activities that are relevant to taking the United States Medical Licensing Examination ("USMLE"), as compared to most people in the general population?

(2)     Only if the answer to Issue 1 is "yes," has Plaintiff shown that he needs double the amount of standard testing time in order to take the USMLE in an accessible manner on a future test administration?

(3)     Did NBME violate the ADA by not granting Plaintiff's January 2022 and August 2022 requests for extra testing time on Step 1 of the USMLE, based on the documentation that Plaintiff provided to NBME at that time in support of his requests? Specifically, did the documentation that Plaintiff submitted in January 2022 and August 2022 demonstrate that (i) Plaintiff had a mental impairment and, if so, (ii) that the mental impairment resulted in functional limitations that substantially limited him in a major life activity relevant to taking the USMLE

compared to most people; and, if so, (iii) that his requested testing accommodations were necessary for him to test in an accessible manner?

(4)    Only if the answer to all parts of Issue 3 is "yes," is expungement of Plaintiff's results on the two administrations of the Step 1 examination that he took under standard testing conditions after his requests for testing accommodations were denied (in February 2022 and September 2022) a (i) legally permissible and (ii) appropriate (*i.e.*, under the facts of this case) remedy under Title III of the ADA?

(5)    If expungement is a legally permissible remedy under Title III of the ADA, is Plaintiff entitled to expungement of his scores on the May 2022 administration of the Step 1 examination or the May 2022 and June 2022 administrations of the Step 2 CK examination when he did not seek accommodations on any of these tests?

## C.    Joint Statement Summarizing any Contested Issues of Law or Pending Motions

The parties contest whether expungement is an available remedy under Title III of the ADA. NBME submitted a brief on this issue in accordance with the Court's prior deadline. (Dkt. 55) On May 8, 2023, the Court issued an order for plaintiff to show cause as to why the court should not enter judgment that the remedy of past test results is not available in this case by no later than May 11, 2023. (Dkt. 56) It is not clear at this time whether the parties have other contested issues of law.

Dr. Kitchens has a pending motion to compel discovery.

## D.    Any Stipulations of Counsel, Including as to Basic Undisputed Facts

By stipulating to the following items, the parties do not concede that all the facts listed are material and/or constitute statements of fact.

1.    NBME is a non-profit organization based in Philadelphia.

2.      NBME develops and administers (through a third-party vendor) the United States Medical Licensing Examination (USMLE).

3.      State medical licensing boards across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine.

4.      Three "Step" exams comprise the USMLE:

Step 1 assesses whether the examinee understands and can apply important science concepts basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.

Step 2 Clinical Knowledge (Step 2 CK) assesses whether candidates have the patient-centered knowledge, skills and understanding of clinical science that provide the foundation for the safe and competent practice of medicine under supervision.

Step 3 assesses whether an examinee understands and can apply medical knowledge essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings. It is the final examination in the USMLE sequence leading to a license to practice medicine without supervision.

5.      The USMLE is a standardized exam with standard time limitations.

6.      Dr. Kitchens is a graduate of the Medical University of Lublin in Poland.

7.      On Page 4, Section E1 of the USMLE Request for Test Accommodations form completed by Dr. Kitchens, it states: "If accommodations were provided, attach official documentation from each testing agency confirming the test accommodations they provided."

8.      On Page 5, Section E2 of the USMLE Request for Test Accommodations form completed by Dr. Kitchens, it states: "Attach copies of official records from each school(s) confirming the accommodations they provided."

9.      On Page 5, Section E3 of the USMLE Request for Test Accommodations form completed by Dr. Kitchens, it states: "Attach copies of official records from each school listed confirming the accommodations they provided."

10.      In January 2022, Dr. Kitchens submitted a request form to NBME seeking testing accommodations on Step 1 of the USMLE.

11.      Dr. Kitchens's request form sought 100% extra time on Step 1.

12.      Dr. Kitchens reported no formal accommodations received in elementary school, middle school, high-school, college, or medical school.

13.      Dr. Kitchens reported on his request form that he did not receive accommodations on the ACT or Medical College Admission Test (MCAT).

14.      NBME denied Dr. Kitchens's request by letter dated February 8, 2022.

15.      The Comprehensive Basic Science Self-Assessment (CBSSA) is a practice test designed for students planning to take the USMLE Step 1.

16.      NBME informs examinees on its website that the CBSSA enables them to (among other things) "[e]valuate [their] readiness to take the USMLE Step 1 and get an estimate of [their] probability of passing if [they] test within a week (i.e., with a similar level of knowledge)".

17.      Test-takers can choose to take their self-assessment in either a standard-paced or self-paced format.

18.      Dr. Kitchens took a CBSSA on July 12, 2021 and received an Assessment Score of 151 under standard-paced timing.

19.      Dr. Kitchens took a CBSSA on September 13, 2021 and received an Assessment Score of 143 under self-paced timing.

20.     Dr. Kitchens took a CBSSA on February 14, 2022 and received an assessment score of 212 under standard-paced timing.

21.     Dr. Kitchens took Step 1 of the USMLE on February 22, 2022 under standard conditions without accommodations and did not pass.

22.     Dr. Kitchens took a CBSSA on March 21, 2022 and received a Total Equated Percent Correct Score of 77% under standard-paced timing.

23.     Dr. Kitchens took a CBSSA on April 1, 2022 and received a Total Equated Percent Correct Score of 69% under standard-paced timing.

24.     Dr. Kitchens took Step 1 a second time on May 9, 2022 under standard conditions and did not pass.

25.     Dr. Kitchens took Step 2 CK on May 28, 2022 under standard conditions and did not pass. He received a score of 169.

26.     Dr. Kitchens took Step 2 CK on June 29, 2022 under standard conditions and did not pass.  He received a score of 195.

27.     Dr. Kitchens submitted a second request for accommodations on Step 1 of the USMLE on or about August 30, 2022.  He sought 50% extra time and extra breaks.  He did not submit any new documentation in support of this request.

28.     NBME asked Dr. Kitchens to provide new documentation in support of his August 2022 request for accommodations on the Step 1 exam.

29.     Dr. Kitchens acknowledged the NBME's request and responded stating that he had no new documents.

30.     Dr. Kitchens took Step 1 on September 29, 2022 under standard conditions without accommodations and did not pass.

31.     ADHD is recognized as a mental impairment under regulations implementing the ADA. 28 C.F.R. § 36.105(b)(2).

32.     ADA regulations also state that not every impairment will constitute a disability. 28 C.F.R. § 36.105(d)(1)(v).

33.     Dr. Kitchens took a CBSSA on March 3, 2023 and obtained a Total Equated Percent Correct Score of 77% under standard-paced timing.

**E.     Each Party's Brief Statement of Facts and Contentions as to Liability (e.g., Claims and Defenses)**

### _Plaintiff's Statement_

The present matter involves a disabled medical graduate who applied for testing accommodations on January 5, 2022 and again on August 30, 2022. The application, submitted by Dr. Kitchens, was an application for additional time on the standardized licensing examination used by the Defendant national Board of Medical Examiners ("NBME") to determine a prospective physician's knowledge and ability to apply concepts and principles fundamental to clinical practice. The United States Medical Licensing Examination ("USMLE") is a three-part test broken down to STEP 1, STEP 2 CK, and STEP 3, (collectively "Boards" or "Board Exams") each of which are required in order to gain medical licensure in the United States. STEP 1 is designed to assess whether the prospective physician understands and can apply important concepts of sciences basic to medicine, with emphasis on the principles and mechanisms underlying health, disease, and modes of therapy.

The Plaintiff, Dr. Markcus Kitchens, has active diagnoses of attention deficit-hyperactivity disorder ("ADHD") and anxiety, and has been receiving prescription medication for both since 2013 and 2018 respectively. After completing his medical school education at the Medical

University of Lublin, Poland in January, 2021, Dr. Kitchens began studying for the Board Exams. It was around this time that the shutdowns of the COVID-19 pandemic were at an all time high, so Dr. Kitchens studied for approximately ten months prior to registering for the STEP 1 exam. After registering, however, Dr. Kitchens contacted the NBME and requested accommodation for his exam via email.

NBME provides a blank form for all impairments to be used by applicants for accommodation. On NBME's website and on the form itself, NBME lists required document(s) in order to support an individual's request for accommodation – the documentation listed includes 'official records from school(s)', 'official documentation from testing agency(ies)', and 'official academic records'. On January 5, 2022, Dr. Kitchens submitted an application for double-time (100% additional time) over two days on his STEP 1 exam for due to ADHD and anxiety. On his application, Dr. Kitchens indicated that he was diagnosed with ADHD and anxiety in 2013 and 2018 and had no official accommodation from testing agencies nor schools since he had not been diagnosed at the time. As part of his application, Dr. Kitchens provided his personal statement, a letter from his treating physician dated April 22, 2020, medical records listing ADHD as an active diagnosis since 2013, and documentation of prescriptions for anxiety and ADHD. After submitting his application, NBME Disability Services, responded outlining the documentation necessary for a review of his application.

Dr. Kitchens responded indicating that he had provided all of the medical documentation available to him and requested his application be processed. On February 8, 2022, NBME sent Dr. Kitchens a letter denying his accommodation request and indicated that his treating physicians 'did not provide sufficient information' for his ADHD diagnosis. Having been rejected, Dr. Kitchens took a Comprehensive Basic Science Self-Assessment ("CBSSA") to gauge whether he was

prepared to take the STEP 1 exam. NBME provides the CBSSA as a practice test for examinees to ascertain their probability of passing the exam if taken within a week. On February 14, 2022, Dr. Kitchens' CBSSA score was 212, eighteen points higher than the minimum passing score for the STEP 1 and a projected actual performance of 208-228 if taken within one week. On February 25, 2022, Dr. Kitchens sat for the STEP 1 exam without accommodation, and upon receiving his score back, had failed in fiftieth percentile.

After confirming with the NBME that the score was valid and accurate, Dr. Kitchens took another CBSSA on March 21, 2022. Dr. Kitchens received a total equated percent correct score of 77% - based on the results, the CBSSA projected that Dr. Kitchens had a 99% likelihood of passing if he took the exam within a week. In an abundance of caution, Dr. Kitchens continued studying and took another CBSSA on April 1, 2022. This time he received a total equated percent correct score of 69%, which the CBSSA predicted a 97% percent likelihood of passing the STEP 1 if taken within one week.

On May 9, 2022, Dr. Kitchens took the STEP 1 for the second time without accommodation and failed in the fortieth percentile. In an attempt to stay on track for residency applications, Dr. Kitchens registered for and took the STEP 2 on May 28, 2022 without accommodation. Because he had already been rejected by the NBME for accommodation on STEP 1, Dr. Kitchens did not apply for accommodation on STEP 2. Similar to his results on the STEP 1, Dr. Kitchens failed the STEP 2 exam with a score of 169, a score drastically below most, if not all, examinees. On June 29, 2022, Dr. Kitchens took the STEP 2 exam a second time without accommodation and scored a 195 – a score that was still failing, but thirty points higher than his original score. At no point did NBME flag his score for irregular behavior. Due to the dramatic differences in score, Dr. Kitchens submitted a score re-check for his June 29, 2022 STEP 2 exam.

Based on these repeated failed attempts, Dr. Kitchens applied for accommodations a second time on August 30, 2022. This time, however, he applied for time and a half (50% additional time) and additional break time over two days. That same day, NBME's disability services responded stating that they could not review applications without new documentation. Dr. Kitchens responded indicating that he had no new documentation to provide.

On September 21, 2022, the Educational Commission for Foreign Medical Graduates ("ECFMG") sent a letter to Dr. Kitchens indicating that his STEP 2 score was correct. On September 29, 2022, Dr. Kitchens sat for the STEP 1 exam without accommodation for the third time and tested within the fortieth percentile.

Throughout this process, Dr. Kitchens has been receiving prescription medication for ADHD and anxiety. During the early days of litigation, Dr. Kitchens learned that he was, in fact, evaluated for and diagnosed with ADHD as an early adolescent. Based upon her limited understanding of medication at the time, Dr. Kitchens' mother turned down prescription treatment and chose to implement a strict behavioral regiment and outside tutoring programs to accommodate him. While unavailable to him prior to applying for accommodations, Dr. Kitchens was evaluated for ADHD on February 7, 2023 by Christina Bacon, LPP. Her evaluation diagnosed Dr. Kitchens with ADHD-combined presentation and recommended additional time on standardized tests and continue medication management and/or therapy.

## STATEMENT OF ISSUES OF LAW

Dr. Kitchens Amended Complaint alleges that Defendant NBME violated Title III of the Americans with Disabilities' Act ("ADA") when it failed to provide reasonable accommodations to Dr. Kitchens in order for his knowledge, skills, and competency on the STEP 1 and STEP 2 exams to be tested in appropriate and accessible manner.

The primary issues of law to be resolved at trial include, but are not necessarily limited to the following:

1. Whether Dr. Kitchens is considered disabled under the ADA.

2. Whether Dr. Kitchens requested reasonable accommodations for standardized exams.

3. Whether Dr. Kitchens' request for accommodations were denied.

4. Whether expungement of Dr. Kitchens' exam transcript is injunctive relief permissible under the ADA.

In order to prevail, Plaintiff, Dr. Kitchens, must establish that he meets the criteria of the ADA's definition of disability and that without accommodation, Dr. Kitchens' ability to be evaluated on the knowledge and skills the STEP 1 and STEP 2 exams evaluate in an accessible place and manner will be discriminated against. Dr. Kitchens must also establish that expungement of his examination transcript is injunctive relief allowed by the ADA. In doing so, Dr. Kitchens will produce evidence of the following:

**I.    Dr. Kitchens has a mental impairment.**

A physical or mental impairment is defined to include "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." *See* 29 CFR §1630.2(h)(2). As to the term impairment, the applicable Department of Justice ("DOJ") regulations provide that "mental impairment" includes ADHD. *Ramsay v. Nat'l Bd. Of Med. Exam'rs*, 968 F.3d 251, 257 (3rd Cir. 2020) quoting 28 C.F.R. §36.105(b)(2). Therefore, a diagnosis of ADHD constitutes a mental impairment under the ADA.

The record reflects that Dr. Kitchens has been diagnosed with ADHD by multiple physicians in early adolescence and in early adulthood. His diagnosis with ADHD in 2013 and

again in 2023, for which he required regular treatment, is a diagnosis in conformity with the Diagnostic and Statistical Manual-5.

Additionally, there is evidence that Dr. Kitchens has consistently received treatment and medical management for ADHD before, during, and after taking the Board Exams, disproving any alleged 'malingering' or 'drug seeking' behavior(s). The record is clear and evidence will be presented at trial to support the position that Dr. Kitchens has a longstanding history of ADHD and anxiety, both of which, are mental impairments under the ADA. Therefore, Dr. Kitchens has a mental impairment.

## II.   Dr. Kitchens' mental impairment affects at least one major life activity.

Major life activities include, but are not limited to, "learning, reading, concentrating, thinking, communicating, and working." *See* 42 U.S.C. §12102(2)(A). Courts across jurisdictions have held that thinking and concentrating are major life activities under the ADA. "[F]inding that ADHD and major depression qualify as mental impairments which substantially limit the major life activities of thinking, concentrating, and sleeping." *Karlik v. Colvin*, 15 F.Supp. 3d. 700, 17 (E.D. Mich., March 18, 2014) quoting Ugactz *v. United Parcel Serv.*, 2013 U.S. Dist. LEXIS 43481, 7-8 (E.D.N.Y. Mar. 26, 2013). The record is clear, and evidence will be presented at trial to support the position, that Dr. Kitchens' mental impairments affected at least one major life activity.

## III.   Dr. Kitchens' mental impairment substantially limits major life activities.

While an impairment is required, the DOJ regulations state that "[a]n impairment is a disability… if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *See* 28 C.F.R. §36.105(d)(1)(v). Accordingly, "[n]ot every impairment will constitute a disability… but [an impairment] will meet the definition

[of a disability] if 'it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *J.D. by Doherty v. Colonial Williamsburg Found*, 925 F.3d 663, 670 (4th Cir. 2019) quoting 28 C.F.R. §36.105(d)(1)(v). However, the "threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." *See* 28 C.F.R. §36.105(d)(1)(ii).

The record illustrates that Dr. Kitchens was substantially limited compared to the general population in thinking and concentrating by the numerous unofficial accommodations required to manage his symptomology. Throughout his educational career, Dr. Kitchens has had to utilize a significant number of organizational-structural tools, rely on unofficial accommodations, and medication management to progress through life.

Additionally, Dr. Kitchens will attest that he oriented his life in such a manner that he did not have to request official accommodation. Dr. Kitchens was employed in people-oriented positions that did not require comprehensive reading, high-stakes time-specific tasks, nor sustain high-levels of focus for significant periods of time. Evidence will be presented at trial to support the position that Dr. Kitchens is substantially limited by his ADHD and anxiety in major life activities.

**IV.   Expungement of the Exam Transcript is Injunctive Relief.**

Dr. Kitchens is claiming an expungement of his examination transcript as well as the accommodations requested for in his applications. "A private plaintiff suing under Title III of the ADA can obtain injunctive relief but not compensatory damages." *Powell v. Bartlett Med. Clinic & Wellness*, 2021 U.S. Dist. LEXIS 12970, 15 (S.D. Ohio, Jan. 25, 2021) quoting *E.F. by Fry v. Napoleon Cmty. Sch.,* 2019 U.S. Dist. LEXIS 164075, 8 (E.D. Mich., Sept. 25, 2019). Title III of

the ADA (42 U.S.C. §12188(a)) adopts by reference the remedies set forth in Title II of the Civil

Rights Act of 1964:

> Whenever a person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by this title, a civil action for preventative relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved…. *See* 42 U.S.C. §2000a-3(a).

Therefore, a Title III plaintiff may only seek relief that prevents a current or future violation of the

ADA. *See* 42 U.S.C. §12188(a)(1). "[T]he remedies available under [Title III] are narrow…. The

only relief that is available is 'preventive' injunctive relief." *G. v. Fay School*, 931 F.3d 1, 9 (1st

Cir. 2019). As expounded upon more fully in Dr. Kitchens brief in support of expungement as an

injunctive remedy, because the exam transcript follows Dr. Kitchens, and all prospective

physicians, indefinitely, the ramifications of any attempts on the Board Exams without

accommodations reflected on Dr. Kitchens' transcript will be felt presently and in the future. The

record is clear, and evidence will be presented at trial to support the position, that Dr. Kitchens'

expunging examination transcript is an appropriate and permissible injunctive remedy under the

ADA.


### *Defendant's Statement*

Dr. Kitchens claims that NBME violated the Americans with Disabilities Act (ADA) by denying

two requests he made for extended testing time on Step 1 of the USMLE.  Both denials took place

in 2022, and both were based upon identical, sparse documentation that Dr. Kitchens provided in

support of those requests.

Two central questions are presented:  (1) Did NBME discriminate against Dr. Kitchens by

denying the requests he submitted to NBME in 2022; and (2) has Dr. Kitchens now shown that he

is disabled within the meaning of the ADA and needs twice as much testing time as other examinees receive in order to take the Step 1 exam in an accessible manner?

NBME's position is that it did not discriminate against Dr. Kitchens by denying his prior requests for accommodations because his supporting documentation did not substantiate either of his claimed impairments, did not demonstrate that either alleged impairment substantially limited his ability to perform one or more major life activities (which is the applicable requirement for demonstrating that an impairment constitutes a disability with the meaning of the ADA), and did not show that he needed his requested accommodations to take the Step 1 examination in an accessible manner.

Dr. Kitchens sought accommodations from NBME based upon an alleged diagnosis of Attention-Deficit/Hyperactivity Disorder (ADHD) that he claimed to have first received in 2013 and an alleged diagnosis of "Test Anxiety" that he claimed to have received in 2018. He did not submit documentation to NBME, however, to substantiate either diagnosis, or to show the functional limitations that he claims to experience as a result of those alleged impairments.

Dr. Kitchens has provided additional documentation and information in this litigation, beyond what he had provided to NBME last year when he actually asked NBME for accommodations. The additional documentation included, for the first time, a diagnostic report relating to one of his claimed impairments. That report, however, and the other, new documentation he has submitted in this litigation still fail to establish that he is disabled within the meaning of the ADA or needs accommodations to access the USMLE. And the new documentation clearly cannot be relied upon to show that NBME should have granted his requests for accommodations in 2022.

Even as supplemented, the record does not show that Dr. Kitchens is "substantially limited" in any major life activity relevant to taking the USMLE. Having a diagnosed impairment is not sufficient to establish a disability under the ADA. Dr. Kitchens must show that the impairments substantially limit his ability to perform relevant major life activities, and the claimed limitations must be measured against the general population, not against other college graduates or medical students. Dr. Kitchens cannot make this showing.  Therefore, he is not entitled to double testing time on Step exams that he takes in the future.

Dr. Kitchens is also seeking expungement of his prior USMLE test scores. Expungement is not appropriate as a factual or legal matter, for the reasons stated in NBME's Brief Addressing Plaintiff's Request for Expungement (Dkt. 55) (May 5, 2023).

**F.      Each Party's List of Every Item of Monetary Damages Claims**

Monetary damages are not available under Title III of the ADA.

**G.      Each Party's Witness List, Identifying Names, Addresses, a Substantive Summary of the Expected Testimony, and Whether the Witness Is Expected to Testify Live, by Written Deposition, or by Video Deposition**

   _**Plaintiff's Witness List**_

**1.   Missie King – Live Testimony**

Mrs. King will testify consistent with her testimony in the preliminary injunction hearing that Dr. Kitchens was evaluated as a young child for ADHD, that she implemented behavioral accommodations for Dr. Kitchens instead of medication or an Individualized Education Plan ("IEP"), and requested unofficial accommodations from early education teachers.

**2.   Dr. Markcus Kitchens, Jr. – Live Testimony**

Dr. Kitchens will testify consistent with his deposition that he has anxiety and ADHD that substantially limits multiple areas of his life, including concentrating-focusing and thinking, and that without accommodations, he cannot be adequately evaluated on his skills or competency. He will also testify that because his examination transcript will be used for residency applications and applications for licensure before state medical boards, the expungement of his examination transcript is necessary to prevent future harm as a result of the NBME's failure to provide reasonable accommodation.

3.  **Dr. Christopher Pullins, M.D. – Live Testimony**

Dr. Pullins' curriculum vitae setting forth his background information, credentials, and qualifications is attached as Exhibit A. Dr. Pullins' opinions in this case are based upon his education, knowledge, training, professional experience, and personal experience, and are offered within a reasonable degree of professional certainty. Dr. Pullins will further base his opinions in this case upon all the filings with the court and all documents exchanged between the parties, including without limitation: all pleadings; deposition transcripts; exhibits to depositions; all exhibits listed below and all exhibits disclosed by the Defendants; all medical records relating to Dr. Kitchens; the applications submitted by Dr. Kitchens; Ms. Bacon's evaluation report; and any affidavits, statements, or testimony provided by any other expert witness proffered by Defendant. Dr. Pullins will base his testimony on the fact that family medicine physicians would not require an updated/recent evaluation for a pre-existing diagnosis of ADHD and anxiety.

Dr. Pullins is expected to testify as to the standard of care provided by family medicine-primary care physicians. Dr. Pullins is expected to testify that as a practicing family medicine-primary care physician, he would refer a patient out for an evaluation and treat in accordance with the results of the evaluation. Dr. Pullins is expected to testify that adults with a history of ADHD

and anxiety are not repeatedly evaluated to 'confirm' their diagnosis. Dr. Pullins is expected to testify as to the relationship between medicine and the African American diaspora. Dr. Pullins is also expected to testify as to barriers in the medical community as an African American male physician including but not limited to residency applications, licensure, and clinical practice.

### 4. Dr. Jonathan Shepherd, M.D.

Dr. Shepherd's curriculum vitae setting forth his background information, credentials, and qualifications is attached as Exhibit B. Dr. Shepherd's opinions in this case are based upon his education, knowledge, training, professional experience, and personal experience, and are offered within a reasonable degree of professional certainty. Dr. Shepherd will further base his opinions in this case upon all the filings with the court and all documents exchanged between the parties, including without limitation: all pleadings; deposition transcripts; exhibits to depositions; all exhibits listed below and all exhibits disclosed by the Defendants; all medical records relating to Dr. Kitchens; the applications submitted by Dr. Kitchens; Ms. Bacon's evaluation report; and any affidavits, statements, or testimony provided by any other expert witness proffered by Defendant.

Dr. Shepherd is expected to testify as to the standard of care provided by psychiatrists. Dr. Shepherd is also expected to testify on the type(s) of evaluation(s) conducted on patients suspected of, or those who have confirmed, diagnoses of ADHD; what psychiatrists factor in when conducting evaluation(s) (including but not limited to the patient's age, educational, and/or professional history); how malingering and/or drug seeking behaviors are detected, if any; and how often psychiatrists would conduct evaluations on a patient with a diagnosis ADHD. Dr. Shepherd is expected to testify as to the relationship between mental health and the African American diaspora; specifically, mental health and African American men. Dr. Shepherd is also

expected to testify as to barriers in the medical community as an African American male physician, including but not limited to residency applications, licensure, and clinical practice.

**5. Dr. Joanne Senoga, M.D., Ph.D., MPH**

Dr. Senoga's curriculum vitae setting forth his background information, credentials, and qualifications is attached as Exhibit C. Dr. Senoga's opinions in this case are based upon his education, knowledge, training, professional experience, and personal experience, and are offered within a reasonable degree of professional certainty. Dr. Senoga will further base his opinions in this case upon all the filings with the court and all documents exchanged between the parties, including without limitation: all pleadings; deposition transcripts; exhibits to depositions; all exhibits listed below and all exhibits disclosed by the Defendants; all medical records relating to Dr. Kitchens; the applications submitted by Dr. Kitchens; Ms. Bacon's evaluation report; and any affidavits, statements, or testimony provided by any other expert witness proffered by Defendant.

Dr. Senoga is expected to testify about the overall licensure process, including but not limited to, failing the USMLE STEP exam(s); the residency application process; the MATCH process; how a failed attempt on her examination transcript affected her application(s); and the effect of the USMLE Exam Transcript has on a prospective physician's overall career prospects.

6. Defendant NBME's Disclosed Experts

7. Any experts identified by Plaintiff for purposes of providing rebuttal expert opinions.

8. Any witness who has been listed in discovery responses.

9. Any witness listed by the Defendant.

Dr. Kitchens reserves the right to delete witnesses and to change the order of witnesses as the trial of this action proceeds and dependent on the results of any pending motions.

### *Defendant's Witness List*

The following summaries of testimony are not intended to be exhaustive, and different/additional testimony may be presented by NBME depending on how Plaintiff presents his case.

1.   Dan Jurich - Live Testimony
     National Board of Medical Examiners, Associate Vice President

Dr. Jurich is expected to testify regarding his background, credentials, and current position at NBME. He is also expected to discuss the nature and role of NBME and the United States Medical Licensing Examination (USMLE), and to describe the three Step examinations that comprise the USMLE.

Dr. Jurich is expected to explain that the USMLE is a standardized examination, which generally means that all examinees test under the same testing conditions. Standardization of assessments ensures comparability of performance across examinees. Dr. Jurich is also expected to testify that the overall outcomes that candidates achieve on each Step exam (currently pass/fail for all Steps in addition to a 3-digit score for Steps 2 CK and 3) are included on a candidate's USMLE transcript and that state medical boards rely upon a candidate's USMLE transcript to help determine eligibility for licensure.  Dr. Jurich is expected to further testify that it is NBME's practice to report all prior USMLE test scores to score recipients so that they may make informed decisions about candidates.

Dr. Jurich is expected to testify to Dr. Kitchens's USMLE testing history, as well as "outcomes" and "timing" data related to the three times Dr. Kitchens has taken Step 1 and the two times Dr. Kitchens has taken Step 2 CK. Dr. Kitchens has taken USMLE Step 1 three times and has not obtained a passing score. Dr. Kitchens has taken the USMLE Step 2 CK two times and has not obtained a passing score. NBME testing data do not indicate that Dr. Kitchens rushed through

any sections of the exams or engaged in random guessing. Dr. Kitchens did not use all the allotted time for some sections of the exams and did not use all his standard break time on any of the exams. Dr. Kitchens also spent a meaningful amount of time on nearly all individual items.

Dr. Jurich is expected to explain the NBME "expungement" policy for instances where technology problems disrupt the delivery of the computer-based assessments through no fault of the examinee. If needed, Dr. Jurich will explain the nature of the Comprehensive Basic Science Self-Assessment (CBSSA) and its relationship to the Step 1 examination.

2.   Erin Convery - Live Testimony
      National Board of Medical Examiners, Director of Disability Services

Ms. Convery oversees the day-to-day operations of the NBME Disability Services unit, including development and implementation of policies and procedures related to the provision of accommodations and services to examinees taking USMLE. Ms. Convery is expected to explain the general procedures and policies regarding requests for testing accommodations on the USMLE and recent data regarding the number of accommodation requests and NBME's decisions on those requests. Ms. Convery is also expected to explain the Guidelines for requesting accommodations that are made available to all examinees.

Ms. Convery is expected to address the timing of Dr. Kitchens's accommodation requests to NBME, the documentation that he submitted in support of those requests, and the communications that NBME had with Dr. Kitchens regarding his requests.

3.   Lucia McGeehan, Ph.D. - Live Testimony
      NBME, Manager of Examinee Accommodations

In her role as Manager of Examinee Accommodations, Dr. McGeehan oversees the Disability Assessment Analysts and reviews requests for testing accommodations on the USMLE. She also supports the operations of Disability Services and works alongside the Director of

Disability Services. Dr. McGeehan reviewed Dr. Kitchens's two requests for testing accommodations in 2022.

Dr. McGeehan is expected to testify that the Guidelines for USMLE accommodation requests provide important information to candidates to assist them in submitting an accommodation request. Individuals are asked to provide documentation confirming a diagnosed impairment and verifying their current functional impairment.  Dr. McGeehan is also expected to discuss the fact that NBME asks candidates to submit a personal statement with their accommodation request. The personal statement provides an opportunity for the candidate to discuss their impairment(s) and tell NBME the symptoms they are experiencing, how those symptoms are impairing them in their daily life, and how their requested accommodations address their functional limitations.

As noted, Dr. McGeehan reviewed Dr. Kitchens's January 2022 request for 100% additional testing time on Step 1 of the USMLE. She is expected to testify that the information in Dr. Kitchens's accommodation request form, personal statement, medical records, and December 2020 CBSE testing confirmation document did not demonstrate a disability within the meaning of the ADA or the need for accommodations on the Step 1 examination. Dr. McGeehan also reviewed Dr. Kitchens's August 2022 request for testing accommodations (50% additional time and extra breaks on Step 1), which was not supported by any new documentation. She is expected to testify that NBME encouraged Dr. Kitchens to review the Guidelines and submit additional documentation, but he did not do so, choosing instead to test under standard conditions.  Dr. McGeehan may address the psychological evaluation by Christina Bacon that Dr. Kitchens submitted in support of his motion for preliminary injunction.

4.      Michael Gordon, Ph.D. - Live Testimony

Dr. Gordon is a clinical psychologist and Professor Emeritus of Psychiatry on the faculty of SUNY Upstate Medical University who specializes in the evaluation and treatment of children and adults with Attention-Deficit/Hyperactivity Disorder ("ADHD"). Dr. Gordon is expected to testify to the diagnostic criteria for ADHD as set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM). The diagnosis of ADHD depends on evidence of a significant impairment that has a childhood onset. It must be documented beyond self-report that symptoms of ADHD have consistently and pervasively disrupted the individual's functioning across multiple settings (e.g., home, school, work). It must also be demonstrated that the symptoms cannot be better explained by other factors (e.g., depression, anxiety, or cognitive levels).

Dr. Gordon is expected to testify that the information Dr. Kitchens submitted to NBME in support of each of his two requests for accommodations in 2022 did not allow for any assessment of Dr. Kitchens's clinical status and did not demonstrate a disability within the meaning of the ADA or the need for testing accommodations because, among other things, they provided no meaningful information regarding whether and how his claimed impairments resulted in functional limitations that would impact his ability to take the Step 1 exam under standard conditions. Dr. Gordon is further expected to testify that the new information made available in this lawsuit does not show that Dr. Kitchens meets the diagnostic criteria for ADHD, does not demonstrate a disability within the meaning of the ADA, and does not show a need for his requested accommodations on the USMLE. Dr. Gordon's testimony will include a review of Ms. Bacon's recent psychological evaluation. Dr. Gordon is expected to testify that Ms. Bacon's evaluation does not demonstrate functional impairment from ADHD, did not rule out all the many other non-ADHD factors that could more easily and accurately account for Dr. Kitchens's difficulty passing

the USMLE, does not show that Dr. Kitchens is substantially limited compared to most people, and does not support his request for accommodations on the USMLE.

5.      Timothy Allen, M.D. - Live Testimony

Dr. Allen is Board certified in general and forensic psychiatry, maintains a private practice in forensic psychology, and serves as an Associate Clinical Professor in the University of Kentucky Department of Psychiatry.

Dr. Allen is expected to explain the nature of anxiety and the confusion (and mistaken diagnoses) that can sometimes result where the same word ("anxiety") applies to both a disorder and a normal emotion. He is also expected to explain that "test anxiety" is not a mental illness or disorder, and that it is normal and expected to feel anxious about taking a test (particularly a high-stakes test). He is also expected to explain that if someone is experiencing a clinical level of impairment from anxiety, it will be seen in other areas of their life at an impairing level, not just in the narrow context of taking tests. He is expected to discuss the fact that research shows that there is no correlation between anxiety and reading functions.

Dr. Allen is expected to explain that, in reviewing a request for testing accommodations based on anxiety, he looks for a description of the history of the illness (e.g., its course over time, treatment, symptom burden, and when functioning is better/worse), and he also looks for treatment records that corroborate any personal statements. Dr. Allen is expected to explain that historical information is important, but it is also important to know the current level of symptoms and impairment, because anxiety is not a static impairment in terms of its impact on an individual. Dr. Allen's testimony is expected to primarily focus on anxiety but will also touch on issues relevant to ADHD as reflected in Dr. Kitchens's documentation.

Dr. Allen is expected to testify that the documentation Dr. Kitchens submitted to NBME in 2022 did not support his requests for accommodations. Dr. Allen is also expected to testify that,

although providing for the first time the type of documentation that is appropriate for evaluating a request for testing accommodations, the additional information and documentation submitted by Dr. Kitchens as part of this litigation does not support his requests for accommodations on future Step exams. As part of this testimony, Dr. Allen is expected to explain the nature of the diagnostic codes used by Dr. Kitchens's healthcare providers as well as other information in the medical records from Berea College, White House Clinics, Northwestern University, and Baptist Health, and in Christina Bacon's psychological evaluation. He is also expected to address the medications prescribed to Dr. Kitchens for ADHD and anxiety.

6.      Christina Bacon, LPP - Written Deposition

NBME anticipates introducing deposition testimony by Christina Bacon, who performed an ADHD evaluation of Dr. Kitchens in February 2023. NBME has not yet designated deposition testimony under the schedule agreed to by the parties, but Ms. Bacon's testimony is expected to address her evaluation of Dr. Kitchens.

**H.      Agreement to Timely Exchange Deposition Designations, Counter-Designations, and Objections**

The parties have agreed to exchange deposition designations by 5 pm on May 9 (Tuesday), counter-designations by 5 pm on May 10 (Wednesday), and any objections to deposition designations or counter-designations by 5 pm on May 11 (Thursday).

**I.      Joint Exhibit List and Each Party's Exhibit List**

*See* Ex. A.  The parties will update their individual exhibit lists given the joint exhibit list and will then apply exhibit numbers.

**J.      Handling Witness Identification and Objections to Exhibits and Deposition Designations**

The parties have agreed to exchange objections to exhibits by 5 pm on May 9 (Tuesday) and objections to deposition designations or counter-designations by 5 pm on May 11 (Thursday), so that issues may be addressed during the pre-trial conference on May 12 (Friday), if appropriate.

The parties are identifying trial witnesses through this joint pretrial memorandum.

**K.   Each Party's Proposed Questions for *Voir Dire***

Not applicable

**L.   An Estimate of the Number of Days Required for Trial**

The Court has set aside three days for trial

**M.   The Parties' Views on Whether the Trial Should Be Timed and How**

Assuming there will be approximately 20 hours available for trial:

(a)   Plaintiff proposes that each party be allowed 10 hours, or however long is necessary, to put on their respective cases, including opening and closing statements, direct witness examinations, cross-examinations, and deposition designations.

(b)   NBME proposes that each party be allowed up to 10 hours to put on their respective cases, including opening and closing statements, direct witness examinations, cross-examinations, and deposition designations.

**N.   Any Other Matter Pertinent to the Case To Be Tried**

NBME would like to discuss the manner in which Dr. Kitchens will present his testimony. Use of narrative-style testimony similar to the preliminary injunction hearing will make it difficult to manage objections.

NBME requests that witnesses be sequestered before they testify.

Dated:  May 8, 2023                              Respectfully submitted,

                                                 /s/ *Dr. Markcus Kitchens (with permission)*
                                                 625 Hampton Way, #2
                                                 Richmond, KY 40475
                                                 (423) 314-4096
                                                 markzwanz@gmail.com

                                                 Pro se Plaintiff

                                                 /s/  *Caroline M. Mew*
                                                 Caroline M. Mew (admitted *pro hac vice*)
                                                 Perkins Coie LLP
                                                 CMew@perkinscoie.com
                                                 700 Thirteenth Street, N.W., Suite 800
                                                 Washington, D.C. 20005-3960
                                                 Telephone: 202-654-6200
                                                 Facsimile:  202-654-6211

                                                 Jared D. Bayer
                                                 Cozen O'Connor
                                                 One Liberty Place
                                                 1650 Market Street, Suite 2800
                                                 Philadelphia, PA 19103
                                                 Telephone: 215-665-4127
                                                 Facsimile: 215-701-2427

                                                 Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on Plaintiff on

May 8, 2023, by email per the agreement of the parties to accept and provide service by email.


*/s/ Caroline M. Mew*
Caroline M. Mew