**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DR. MARKCUS KITCHENS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:22-CV-03301-JFM** |
| ) | |
| **NATIONAL BOARD OF MEDICAL** ) | |
| **EXAMINERS,** ) | |
| ) | |
| **Defendant.** ) | |

**NATIONAL BOARD OF MEDICAL EXAMINERS'**
**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

NBME timely responded to Dr. Kitchens's discovery requests in this case, and in many instances provided responsive information and/or documents even where he sought plainly irrelevant information, in the interest of minimizing discovery disputes. Dr. Kitchens's current motion to compel (Dkt. 52) seeks either (1) information that has already been produced; (2) information that does not exist; or (3) information that is not remotely relevant to the claims and defenses in this action, and it should be denied.

In response to Dr. Kitchens's specific arguments, NBME states as follows:

1.      **NBME produced a copy of its "expungement policy."**

Dr. Kitchens's first argument is that "Defendant NBME has failed to produce its expungement policy in response to Interrogatory No. 3 and Request for Production No. 1," Pl. Mot. at 3, but that is demonstrably incorrect. Dr. Kitchens himself has attached a copy of NBME's "expungement policy" as Exhibit 7 to his motion to compel.[1] NBME also recited this policy in its

---

[1] The information redacted in this document was redacted on the grounds of non-responsiveness, not privilege. This is the only document that NBME produced with redactions (other than redactions of PII).

response to Plaintiff's Interrogatory No. 3. It also informed Dr. Kitchens in response to this interrogatory that, "[t]o the best of NBME's current knowledge, it has expunged scores from USMLE transcript pursuant to this policy." Thus, NBME has already provided in the ordinary course of discovery the very information Dr. Kitchens purports to be seeking in his motion to compel.

Moreover, if the Court concludes that expungement is not an available remedy for Dr. Kitchens (Dkt. 56), any issues relating to this discovery will also be moot.

2.     **The documents referenced in NBME's training document that are the subject of Plaintiff's motion to compel are not responsive to his discovery requests.**

Dr. Kitchens argues that "NBME has failed to produce responsive policies, procedures, modules, and/or simulations" related to reviewing testing accommodation requests in response to Interrogatory Nos. 4 and 5 and Request for Production No. 5. NBME has repeatedly informed Dr. Kitchens that it does not have any "modules" or "simulations."

The "Orientation to DS processing/flowchart" referenced in Dr. Kitchens's Exhibit 5 is a procedural flowchart, not any type of decision-making tool. The references to "Introduction to audit process and writing letters" and "Intro to Insufficient Documentation" are not links to training documents, as Dr. Kitchens seems to think. None of this material "demonstrate[s] the evaluative criteria and processes used by the NBME in determining which applicants are disabled under the ADA," Pl. Mot. at 4, as Dr. Kitchens assumes. It does not relate to substantive decisions at all. Dr. Kitchens also did not ask NBME about these specific record references before filing his motion to compel. Notwithstanding all of this, in the interest of moving forward with trial preparation, NBME will provide Dr. Kitchens with a copy of the "Orientation to DS processing/flowchart" referenced above.

NBME disagrees with Dr. Kitchens's arguments regarding relevancy, tied to topics such as "cultural biases," but will reserve any arguments on these points given that Dr. Kitchens is mistaken in his understanding of the documentation available from NBME.

**3.      NBME produced its decision letter on Plaintiff's first accommodation request, which is the only document that was responsive to request number 8**.

Dr. Kitchens's Document Request Number 8 sought "any and all accommodation recommendations created as a result of Plaintiff's January, 2021 accommodation application." Dr. Kitchens submitted no application with that date. NBME ignored that mistake, however, and responded to the request by producing the decision letter for Dr. Kitchens's January 2022 accommodation request. It has no other responsive document.

Dr. Kitchens refers to a "third-party review" in his motion to compel, Pl. Mot. at 4, but no external consultant reviewed his request for purposes of NBME's February 2022 response. Dr. Kitchens also refer to an "Auditor." *Id.* This is a reference to the initial audit of an accommodation request. NBME has already produced its communications with Dr. Kitchens following its "audit" of his accommodation requests, where it requested that Dr. Kitchens produce additional documentation. Finally, Dr. Kitchens refers to the "PIE Decision-making" procedures in NBME's Disability Analysts Training Guide, *id.*, which he attaches as part of Exhibit 6 to his motion. The "Remarks" field of the "PIER" tab (note: PIER is a typo for PIE) referenced by Dr. Kitchens has no relevance here as the PIE process is not applicable to Plaintiff's request. The referenced procedures relate to requests for Personal Item Exceptions (PIE), which allows approved examinees to have certain medical items in the testing area. *See generally* https://www.usmle.org/step-exams/test-accommodations/personal-item-exceptions-pies. This process did not apply to Dr. Kitchens's requests for testing accommodations.

Contrary to the Court's meet-and-confer expectation, Dr. Kitchens did not raise a follow-up question with NBME's counsel regarding these particular documents before filing his motion to compel. Indeed, document request number 8 was not even mentioned in his letters to NBME. *See* Pl.'s Exs. 2, 4.

> **4.** **Interrogatories 9 and 10 seek irrelevant information, but NBME nevertheless provided information in response to the requests**.

Dr. Kitchens argues that "Defendant NBME has failed to produce responsive business records in response to Interrogatory Nos. 9 and 10 and Requests for Production Nos. 1, 2." Pl. Mot. at 5.  The requested information relates to how Step exams are scored, a topic that has nothing to do with whether Plaintiff was entitled under the ADA to testing accommodations in 2022 based upon the limited supporting documentation he submitted to NBME, or to whether he will be able to show at trial that he is entitled to such accommodations on future exams based upon the new information and documentation he relies upon in this lawsuit. There is no issue in this case regarding whether Plaintiff's three Step 1 attempts and two Step 2CK attempts were properly scored.

Interrogatory number 9 states: "Identify any and all policies, procedures, and/or training regarding grading the STEP examination(s) from January 1, 2020 to the present."

Interrogatory number 10 states: "Identify each and every person known or believed to you who reviewed and/or graded the Plaintiff's STEP examination(s)."

Document requests 1 and 2 generally seek documents referred to in NBME's interrogatory responses or that support NBME's interrogatory responses.

Again, the "grading" (presumably this is a reference to scoring) of Plaintiff's Step exams is not an issue in this ADA case. Although it may be a topic of interest to Plaintiff, who apparently

believes that his tests were improperly scored based upon his belief after testing that he had done well, this lawsuit is not a dispute about test scoring.

Notwithstanding the fact that information about exam scoring is completely irrelevant to any party's claims or defenses, NBME did explain its general scoring process in response to Interrogatory Numbers 9 and 10. As NBME explained in response to Interrogatory Number 9:

> [T]he general process for scoring the USMLE Step examination can be described as follows: When an examinee takes a Step exam, the examinee's test data is delivered electronically to NBME. An examinee's item responses are converted into a raw score (the sum of the points earned from correct responses). A secondary scoring system is used to verify scoring outputs and verify that the two independent scoring systems are in agreement. The raw score is then converted into a three-digit score after score equating. For Step 2 CK and Step 3, the three-digit score is reported to the examinee and authorized score recipients. For Step 1, examinees and authorized score recipients are informed whether the examinee passed or failed the exam. Throughout the scoring process, analyses are performed to detect aberrant results, and final quality assurance procedures are performed to verify that a correct score report is produced.

And as NBME explained in response to Interrogatory Number 10:

> As reflected in NBME's response to Interrogatory Number 9, Step examination scoring is automated. Although data analysts run the secondary scoring system to confirm the outcome of the automated score and run other quality assurance analyses, no individual person manually scores the Step examinations.

Additional detail or information about the nature of exam scoring is highly confidential and proprietary (and again, completely irrelevant to this dispute).

Dr. Kitchens's suggestion that "production of these policies and procedures will demonstrate that the scoring system will indicate whether Plaintiff's disability played a significant role in the scores received as well as indicate whether accommodations would have remedied this issue" simply has no basis in reality.  The same scoring policies and procedures are applied to all examinees, whether they test with or without accommodations.

5.    **Plaintiff's request for identification of NBME committee members through Interrogatory Number 11 misunderstands the roles of these committees.**

Dr. Kitchens's Interrogatory Number 11 seeks identification of individuals on the USMLE Committee for Individualized Review (CIR) and USMLE Composite Committee who "are responsible for determining the score validity of an examinee" and "the individual(s) who reviewed Plaintiff's Step 1 and Step 2 examinations." No members of the CIR or Composite Committee "reviewed" Plaintiff's examinations or played any role in deciding whether Plaintiff was or is entitled to accommodations on any Step exam. Moreover, this request does not seek information relevant to this case. This is an ADA case, not a case about "examination accuracy," "suspicious activity," or the "internal process for evaluating the validity of an examinee's score(s)." Pl. Mot. at 5. The interrogatory and Dr. Kitchens's motion to compel thus seek information that is irrelevant to this case.

6.    **Plaintiff already has the information he is seeking with respect to document requests 16-21.**

Document requests 16-21 reflect Dr. Kitchens's attempt to get access to the highly secure, non-public exam questions that appeared on the Step 1 and Step 2 CK exams that he has taken to date. In response to these requests and Dr. Kitchens's discovery letter, NBME explained at some length why the actual content of any Step examinations is not relevant to this dispute and why production of this secure test material is not proportional to the needs of the case. *See* Pl. Mot. Ex. 3; *see generally Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC*, 2011 WL 7615071, *1 (W.D. Tenn. 2011) ("The three USMLE examinations include multiple-choice questions, which are administered by computer. The development of multiple-choice questions is a time-consuming and expensive process. The Plaintiffs own copyrights to USMLE tests and test questions and have registered USMLE test forms with the United States Copyright Office in compliance with the regulations adopted for protecting the confidentiality of 'secure' tests. As a 'secure' test, questions

- 6 -

used on each USMLE are confidential and not disclosed to the public. Plaintiffs reuse a certain number of questions from each examination on subsequent examinations in order to equate scores from one test form to another. Accordingly, USMLE questions are intended to be disclosed only during actual test administrations and the unauthorized disclosure of those questions compromises the integrity of the examination.") (citations omitted).

In any event, Dr. Kitchens asserts that, "[i]n the alternative," he sought the correct answer responses correlating to the "outcomes" data that NBME produced. That information, however, is already in the data that NBME has produced to him, which NBME has explained to Dr. Kitchens This issue therefore appears moot.

Finally, to the extent Dr. Kitchens requests a privilege log in his motion, as explained, the redactions to the document shown at Plaintiff's Exhibit 7 (the only redactions made in NBME's production, other than for PII) were made on the grounds of non-responsiveness, not privilege. No privilege log is required.

## CONCLUSION

NBME provided a significant amount of information in discovery in this case, including information on issues such as exam scoring that is not even remotely relevant to the dispute at hand. Dr. Kitchens's motion to compel is based on misunderstandings about the information already produced or unsupported assumptions about issues that have no relationship to the single ADA claim he has asserted in this case. The motion to compel should be denied.

162090910.1

Dated: May 9, 2023

Respectfully submitted,

*/s/ Caroline M. Mew*
Caroline M. Mew - admitted *pro hac vice*
Perkins Coie LLC
700 13th Street, NW, Suite 800
Washington, DC 20005
Phone: (202) 654-1767
cmew@perkinscoie.com

Jared D. Bayer
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: 215-255-8590
jbayer@cozen.com

*Attorneys for NBME*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2023, a true and correct copy of the foregoing document

was served by electronic mail on plaintiff Markcus Kitchens, Jr. at markzwanz@gmail.com

*<u>/s/ Caroline M. Mew</u>*

162090910.1