UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. MARKCUS KITCHENS, JR. )<br>                PLAINTIFF )<br>)<br>v.                                     )<br>)<br>UNITED STATES MEDICAL LICENSING EXAMINATION, )<br>    ET. AL                                )<br>                DEFENDANTS           )<br>) | CIVIL ACTION NO.:<br>2:22-CV-03301-JMY |

**PLAINTIFF'S BRIEF IN SUPPORT OF EXPUNGEMENT
AS AN INJUNCTIVE REMEDY**

Plaintiff, Dr. Markcus Kitchens, (hereinafter "Dr. Kitchens"), *pro se*, submits this Brief in Support of expungement as an injunctive remedy under Title III of the ADA.

**INTRODUCTION**

The matter before this court, in part, is whether an expungement of a disabled[1] examinee's failed attempt(s) on their examination transcript after being improperly denied accommodation(s) on a standardized licensure examination is a matter of first impression. Title III of the ADA expressly provides injunctive relief for individual(s) who are discriminated against on the basis of their disability; it is well established that the ADA is not intended to penalize those who discriminate against disabled individuals – but to prevent further discriminatory action(s). However, when the harmful effects of the discriminatory actions are permanent and repeatedly felt – injunctive relief is the *sole* remedy the Court may provide.

To wit, the NBME has repeatedly endorsed the permanency of the examination transcript throughout this litigation. The examinee's transcript contains, in part, the complete examination history of *all* STEP and STEP Components taken – assumedly to ensure residency programs and licensure boards are aware of the type of applicant before them – when a disabled applicant is denied accommodation(s), the

---

[1] For the purpose of this brief, Plaintiff operates under the assumption that the examinee satisfies the criterion of 'disabled' under the ADA.

detrimental impact of *one* failed attempt (let alone multiple) follows for a lifetime. Therefore, an expungement of the examinee's transcript is not only permissible under the ADA but is a necessary remedy to ensure prevent future harm at the hands of a discriminatory entity.

**STANDARD OF REVIEW**

A Title III claimant may only seek relief that prevents a current or ***future*** violation of the ADA. (Emphasis added.)[2] "Any person who is being subjected to discrimination on the basis of disability… or who has reasonable grounds for believing a person is about to be subjected to discrimination… may institute a civil action for preventative relief."[3] As disabled plaintiffs have learned, "[t]he remedies available under [Title III] are narrow…. The only relief that is available is 'preventative' injunctive relief."[4] In other words, a plaintiff who files an ADA claim "can, ***at most*** hope to improve access through an injunction."[5] (Emphasis added).

Black's Law Dictionary (8th ed. 2004) defines a "case of first impression" as one "that presents the court with an issue of law that has not previously been decided by any controlling legal authority in that jurisdiction." *See also* ("A case of first impression is, by definition, one that presents a novel legal question and is not ruled by prior precedents.").[6] "Generally, where we have yet to rule explicitly on an unresolved legal issue, the first decision providing a definitive answer announces a new rule of law."[7] See *Todaro*, 701 A.2d at 1347 (holding that indication of preference against judicial activity, in dicta, does not acquire force of law)." "An opinion establishes a "new" rule 'either by overruling clear past precedent on which litigants

---

[2] 42 U.S.C. 12188(a)(1).
[3] 28 C.F.R. §36.501(a).
[4] *G. v. Fay School,* 931 F.3d 1, 9 (1st Cir. 2019).
[5] *English v. Que Linda, Inc.*, 2010 U.S. Dist. LEXIS 111795, 4 (E.D. TN, Oct. 20, 2010) quoting *Fischer v. SJB P.D., Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000).
[6] *Travelers Prop. Cas. Co. v. R.L. Polk Co.*, 2008 U.S. Dist. LEXIS 62151, 7-8, (E.D. Mi, August 13, 2008) quoting *S. Lindquist, F. Cross, Empirically Testing Dworkin's Chain Novel Theory: Studying the Path of Precedent*, 80 N.Y.U. L. Rev. 1156, 1179 (October 2005).
[7] *Fiore v. White*, 757 A.2d 842, 562 Pa. 634 (Pa. 2000) quoting *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1348 (1997).

may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'"[8] (Omission in original; emphasis added).

## ANALYSIS

### I. EXPUNGEMENT IS A MATTER OF FIRST IMPRESSION

The NBME stated that it "knows of **no court decision** that has expunged the results from a prior test administration as a remedy" since the ADA's enactment in 1990.[9] So too, Dr. Kitchens has not found any court decisions wherein an expungement of a prior test administration was offered as a remedy. However, there is case law that *resemble* the matter before this Court. Specifically, *Agranoff v. Law School Adm. Council* and *Ramsay v. Nat'l Bd. of Med. Exam'rs.* While it does not sufficiently address the issue of expungement, it does open the door.

In *Agranoff*, the plaintiff applied for accommodation on the Law School Admission Test ("LSAT") due to focal dystomia, a physiological-neurological disorder that affects his ability to write and hold a writing utensil for long periods of time. The Plaintiff, having been denied by LSAT, moved for a preliminary injunction to compel Defendant LSAC for accommodations; the Court granted Plaintiff's motion and held "[s]hould Judge Zobel decide in the Defendant's favor on the merits, Plaintiff's exam score from the October 2 examination *may be deleted*."[10] (Emphasis added.)

In other words, if the accommodations provided to the Plaintiff-examinee were improperly issued, the Defendant LSAC, under the Court's authority, could delete the results of said examination. Defendant NBME would have the analysis stop there. However, what is good for the goose is good for the gander. If the Court can authorize the deletion of an exam result taken **with** accommodations, the Court can authorize the deletion of exam result(s) for an exam result taken **without** accommodations. While the Court was not directly interpreting Title III's remedy provision, the effect of its holding remains.

---

[8] *Bohus v. Restaurant.com, Inc.,* 784 F.3d 918 (3rd Cir. 2015) quoting *Coons v. Am. Honda Motor Co. ("Coons II "),* 3 96 N.J. 419, 476 A.2d 763, 768 (1984).
[9] *See* Def. Brief Addressing Pl.'s Request for Expungement, D.E. 55, p. 3.
[10] *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp.2d 86, 86 (D. Mass. 1999).

Defendant NBME improperly attempts to minimize the Court's holding in *Agranoff v. Law School Adm. Council*, the opinion does indicate the Court's authority to remove or reinstate examination results due to an applicant's disability. Moreover, this is not the first time a Court has indicated that exam scores could be invalidated if taken with accommodations. In *Ramsay v. Nat'l Bd. of Med. Exam'rs*, the Defendant appealed the district court's decision and asked if "[Defendant NBME] could **invalidate her score or prevent her from submitting the score to residency programs**."[11] (Emphasis added). Alternatively, in *Berger v. Nat'l Bd. of Med. Examiners*, the Court ordered the NBME to "score and **report** the results of the accommodated USMLE STEP 2 CK."[12] (Emphasis Added). An expungement of an examinee's transcript is not the creation of new law, but rather, occupies a unique gap due to the transcript's *lifelong* significance on a prospective physician's career, a fact acknowledged by all medical professionals, Defendant NBME included.

### a. The USMLE Transcript is a Permanent Record

The USMLE transcript (hereinafter "Transcript") is a permanent record of a medical professional's career. Per the Defendant's website, the Transcript includes, but is not limited to:

1. "Your complete examination history of all Steps and Step Components that you took;
2. Your history of any examinations for which no results were reported;
3. Annotation(s) of any actions taken against you by medical licensing authorities or other credentialing entities that have been reported to the FSMB Physician Data Center."[13]

As indicated by the points above, including actions taken against a practicing physician "by medical licensing authorities or other credentialing entities", the Transcript acts as the indefinite report card of a physician's skills, competency, and compliance with the standards promulgated by the medical community. Defendant NBME espouses the Transcript as the metric used by "residency programs and state medical boards" to determine whether prospective physicians have the knowledge and skills required to practice.[14]

---

[11] *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3D 251, 263 (3rd Cir. 2020).
[12] *Berger v. Nat'l Bd. of Med. Examiners*, 2019 U.S. Dist. LEXIS 145666, 61 (S.D. Ohio, Aug. 27, 2019).
[13] See *What's Included on Your Transcript?*, *Transcripts*, USMLE (May 10, 2023), https://www.usmle.org/scores-transcripts/transcripts
[14] *See* Def. Brief Addressing Plf.'s Request for Expungement, D.E. 55, p. 3.

("This would prevent residency programs and state medical boards responsible for protecting the public from knowing his prior test outcomes….")[15] ("Licensing authorities across the country rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine.")[16] Therefore, the information contained within the Transcript continues beyond a medical graduate's application for residency.

### b. Expunging the Transcript is Injunctive When the Transcript is Required for Licensure

Although federal standards govern medical training and testing, "each state has its own licensing board, and medical doctors must procure a license for every state in which they practice medicine."[17] These licensing requirements vary by state. For instance, to be licensed in:

> Kentucky: an examinee is allowed "**one to four (1-4) attempts** at STEP 1, four (4) attempts at STEP 2 CK, [18] [and] four (4) attempts at STEP 3."[19]

> Tennessee: "applicants who fails any STEP of the USMLE… more than three (3) times **must show ABMS Board Certification** and proof of meeting requirements for Maintenance of Certification to be **considered** for licensure."[20]

> Colorado: "**no limit** on the number of attempts on the USMLE."[21]

It is important to note that licensure does not equate to residency. As demonstrated by University of Kentucky's ("UK")[22], University of Tennessee – Knoxville's ("UTK")[23], and University of Colorado – Boulder ("CUB")[24] residency website, programs unabashedly discourage applicants who have a failed attempt on *either* USMLE STEP 1 and STEP 2 from applying.

---

[15] *See* Def. Opposition to Plf.'s Motion for Preliminary Injunction, D.E. 26.1, p. 23.
[16] *See* Amended Joint Rule 26F Report, *D.E.* 33, p. 13.
[17] Kocher, Bob, *"Doctors Without Borders: Practicing Across State Lines",* Health Affairs Forefront (February 18, 2014), https://www.healthaffairs.org/do/10.1377/forefront.20140218.036973#:~:text=Although%20federal%20standards%20govern%20medical,consultations%2C%20and%20during%20emergencies).
[18] The FSMB website also included STEP 2 CS, but as of July 21, 2021, the Step 2 CS was discontinued for the foreseeable future.
[19] *State Specific Requirements for Initial Medical Licensure: Kentucky*, USMLE STEP 3, Federation of State Medical Boards, (May 10, 2023), https://www.fsmb.org/step-3/state-licensure/#KY.
[20] *State Specific Requirements for Initial Medical Licensure: Tennessee*, USMLE STEP 3, Federation of State Medical Boards, (May 10, 2023), https://www.fsmb.org/step-3/state-licensure/#TN.
[21] *State Specific Requirements for Initial Medical Licensure: Colorado*, USMLE STEP 3, Federation of State Medical Boards, (May 10, 2023), https://www.fsmb.org/step-3/state-licensure/#CO.
[22] *See* Notice of Filing Exhibits to Memo Supporting Preliminary Injunction, D.E. 20, Exhibit K, MK000122.
[23] *See* Notice of Filing Exhibits to Memo Supporting Preliminary Injunction, D.E. 20, Exhibit J, MK000112-113
[24] *See* Notice of Filing Exhibits to Memo Supporting Preliminary Injunction, D.E. 20, Exhibit L, MK000126.

Unlike the legal profession (or most other professions that require licensure), there is no 'reciprocity' or 'grandfather clause' for practicing physicians. The Interstate Medical Licensure Compact (IMLC) is "an agreement among participating U.S. states and territories to work together to significantly streamline the licensing process for physicians who want to practice in multiple states."[25] It is important to note that "[t]hese licenses are still issued by the **individual states** – just as they would be using the standard licensing process…."[26] (Emphasis added.) While physicians are not required to use the IMLC to gain licensure in multiple states, in order to participate in the IMLC, physicians must "pass[] each component of the USMLE… or equivalent **in no more than three attempts for each component**."[27] (Emphasis added). This requirement by the IMLC unequivocally demonstrates the implications an examinee's Transcript holds *in the future*; therefore, should an examinee be denied reasonable accommodations by the NBME and fail the STEP exam as a result of their disability, the effects of the failed attempt will be beyond the initial residency application.

## II. EXPUNGEMENT IS A REMEDY THAT OCCUPIES A VOID IN OTHERWISE SETTLED LAW

### a. Expunging the Transcript Prevents Future Employers and State Licensure Boards from Discrimination

Pursuant to Title III, discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."[28] An M.D. graduate must receive further training in a medical residency program before he can be licensed as a physician. Almost all M.D. graduates are placed in residency programs through the National Residency Matching Program ("NRMP" or the "Match"). In applying for residency programs after graduation, prospective physicians must submit their USMLE transcript.

---

[25] *See A Faster Pathway to Physician Licensure: Introduction*, Interstate Medical Licensure Compact, (May 10, 2023) https://www.imlcc.org/a-faster-pathway-to-physician-licensure/.
[26] *Id*.
[27] *Id.*
[28] 42 U.S.C.S. §12182(b)(2)(A)(ii).

Expunging a disabled examinee's transcript ensures that any accommodation(s) improperly withheld by the NBME does not follow the examinee into their career. Title III of the ADA requires the Defendant NBME take steps as may be necessary to ensure that "no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids…."[29] If left on an examinee's transcript, the examinee will be repeatedly excluded from residency programs, specialties, and even so far as whole states due to the NBME's discriminatory actions.

### III. THE ADA'S FAVORABILITY TOWARDS EXPANSIVE COVERAGE SUPPORTS ALLOWING EXPUNGEMENT AS A REMEDY

Courts have held that the ADA is intended to "interpret remedial statutes broadly, and in a way that fulfills their ameliorative purposes."[30] ([H]olding that "the ADA is a remedial statute and should be broadly construed to effectuate its purpose).[31] "Although the ADA is a broad remedial statute, the obligations that it imposes on covered entities are not limitless..."[32]. As demonstrated above, unlike almost all other licensed professionals, the Transcript of a prospective physician follows them for life. The Court need not weigh lofty legal principles in determining whether expungement is injunctive relief under Title III of the ADA, rather, the Court need only use common sense and fairness. When an examinee's score is voided due to improperly awarded accommodations, the principle of fairness demands that the score received should be nullified, because the accommodations received "**fundamentally alter[ed]** the measurement of the skills or knowledge the examination is intended to test".[33]

In cases where accommodations are improperly denied, the validity and integrity of the examination process are *compromised*. As demonstrated by Defendant NBME's USMLE mission statement:

> "The United States Medical Licensing Examination (USMLE) program supports medical licensing authorities in the United States through its leadership in the development,

---

[29] 42 U.S.C.S. §12182(b)(2)(A)(iii).
[30] *McNamara v. Ohio Bld. Auth.*, 697 F.Supp.2d 820, 828 (N.D. Ohio, March 19, 2010) quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000).
[31] *Id*. quoting *Arnold v. United Parcel Serv., Inc.,* 136 F.3d 854, 861 (1st Cir. 1998).
[32] *Doe v. Haverford School*, CIVIL ACTION NO. 03-3989, 11 (E.D. Pa. Aug. 5, 2003).
[33] 28 C.F.R. §36.309(b)(2), (3).

delivery, and continual improvement of high-quality assessments across the continuum of physicians' preparation for practice."[34]

It is only reasonable, therefore, to rectify this injustice by expunging the flawed score from the examinee's transcript. By doing so, we restore the fairness and integrity of the USMLE system and ensure that all examinees are evaluated on a level playing field. In the case at hand, Dr. Kitchens current examination transcript demonstrates three (3) failed STEP 1 attempts and two (2) failed STEP 2 attempts.[35] According to the Federation of State Medical Boards, Dr. Kitchens will be disqualified for clinical licensure and considered incompetent in *nineteen (19) states*.[36] **Permanently**. Without the Court's intervention, Dr. Kitchens' failed attempts will unequivocally impede the career and aspirations of an individual who has already endured an unjust denial of accommodations.

    a. **Testing Entities Demonstrate Entrenched Prejudice Against Disabled Examinees Seeking Rightful-Reasonable Accommodations**

Defendant NBME's discriminatory actions do not stand alone. On February 5, 2014, the DOJ found that the "[Louisiana Supreme] Court's processes for evaluating applicants to the Louisiana bar, and its practice of admitting certain persons with mental health disabilities under a conditional licensing system, discriminate against individuals on the basis of disability, in violation of the ADA."[37] Even as recently as June 30, 2022, "most bar examinees being denied accommodation requests have non-apparent disabilities, including ADHD, PTSD, depression and dyslexia… [due to] what the NCBE and boards of law examiners see as insufficient documentation and a history of strong or average achievement in testing and higher education."[38]

---

[34] *USMLE Mission Statement, About the USMLE*: USMLE, (May 10, 2023), https://www.usmle.org/about-usmle#:~:text=USMLE%20Mission%20Statement&text=To%20provide%20to%20licensing%20authorities,safe%20and%20effective%20patient%20care.
[35] *See* Exhibit 1.
[36] *State Specific Requirements for Initial Medical Licensure*, *USMLE STEP 3*, Federation of State Medical Boards, (May 10, 2023), https://www.fsmb.org/step-3/state-licensure/#bodyTop.
[37] Jocelyn Samuels, The United States' Investigation of the Louisiana Attorney Licensure System Pursuant to the Americans with Disabilities Act, 2, (Civil Rights Division, U.S. DOJ, Feb. 5, 2014).
[38] Stephanie F. Ward, *Bar Examinees have little success with accommodation requests and say the process is stressful*, ABA Journal: Bar Exam, (June 30, 2022 9:52 a.m.), https://www.abajournal.com/web/article/bar-examinees-have-little-success-with-accommodation-requests-and-say-the-process-is-stressful.

Testing agencies' predisposition against applicants with disabilities is palpable. Since the enactment of the ADA Amendments Act of 2008, an applicant's symptomatology is often denounced as 'malingering'[39] or 'drug-seeking' "primarily in the interest of gaining access to stimulant medication and/or academic accommodations…."[40] This is demonstrated by Defense Counsel's own article published in March, 2011, wherein Ms. Mew states:

> "[i]f examinees are willing to engage in conduct that is illegal to increase their scores on high stakes tests, it should come as no surprise that some examinees will be less than forthright in their efforts to obtain a diagnosis that will give them extra time."[41]

The forms of discrimination encountered by individuals with disabilities include "overprotective rules and policies," "exclusionary qualification standards and criteria," and "relegation to lesser services, programs, activities, benefits, jobs, or other opportunities."[42] By acknowledging the USMLE's purpose – "to provide licensing authorities meaningful information from assessments of physician characteristics" – state medical boards use USMLE outcomes to inform licensure decisions and to help achieve their mission of public protection. It is not merely a test to determine an individual's knowledge and competence in the medical field, but a critical evaluation that determines one's eligibility to practice medicine in the United States.

Expunging an examinee's transcript is not only fair, it aligns with the principle of proportionality. The examinee's performance without accommodations cannot be considered a true reflection of their abilities. To hold a failed attempt against an examinee would be disproportionate and unjust, as it fails to account for the adverse impact of denied accommodations on their performance and violates the sole purpose and mission of the USMLE.

---

[39] The DSM-5 defines malingering as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives."
[40] L. Jasinski & Ranseen, *Malingered ADHD Evaluations: A further Complication for Accommodations Reviews*, The Bar Examiner (Dec. 2011) at 7. https://thebarexaminer.ncbex.org/wp-content/uploads/PDFs/800411_Jasinski_Ranseen.pdf.
[41] Robert A. Burgoyne & Mew, *New Regulations Under Titles II and III of the ADA: What Has Changed Relative to the Administration of Licensing Examinations?*, The Bar Examiner, March 2011 at 50 quoting See, e.g., James A. Wollack, *Detecting Answer Copying on High-Stakes Tests*, The Bar Examiner, May 2004, at 35; Gregg Colton, *Exam Security and High-Tech Cheating*, The Bar Examiner, August 1998, at 13.
[42] Jocelyn Samuels, The United States' Investigation of the Louisiana Attorney Licensure System Pursuant to the Americans with Disabilities Act, 2, (Civil Rights Division, U.S. DOJ, Feb. 5, 2014) quoting 42 U.S.C. §12101(b)(1) and 42 U.S.C. §12101(a)(5).

## **CONCLUSION**

The expungement of an examinee's USMLE score transcript is not only an injunctive remedy under Title III of the ADA, but also a logical remedy. Courts have recognized the possibility of invalidating exam scores taken with accommodations or, in the alternative, ordered the scoring and reporting of results for accommodated exams. The importance of an examinee's USMLE transcript cannot be overstated. It serves as a lifelong record of a physician's career, impacting their prospects for residency, state licensure, and professional advancement. The transcript is relied upon by residency programs and state medical boards to evaluate an individual's qualifications and competence in the field of medicine. The consequences of a failed attempt on the USMLE can be severe, potentially disqualifying an examinee from clinical licensure in multiple states and impeding their career aspirations.

Expunging an examinee's transcript ensures that any accommodations improperly denied by the NBME do not unjustly hinder their future career prospects. It aligns with the purpose of the ADA to eliminate discrimination and ensure equal treatment for individuals with disabilities. The mission of the USMLE is not just to test knowledge and competence but to provide licensing authorities with meaningful information about physician characteristics. Expunging an examinee's flawed score restores fairness and integrity to the evaluation process, ensuring that all examinees are evaluated on an equal footing.

It is clear that expungement of an examinee's USMLE score transcript is a logical remedy that aligns with common sense, fairness, and the principles of the ADA. The court has the authority and the duty to rectify the injustice caused by the NBME's discriminatory actions and ensure equal opportunities for individuals with disabilities in pursuing their medical careers.

    Respectfully submitted,

    */s/ Dr. Markcus Kitchens*
    Dr. Markcus Kitchens
    625 Hampton Way, #2
    Richmond, KY 40475
    T: (423) 314-4096
    markzwanz@gmail.com
    ***Pro Se Plaintiff***

**CERTIFICATE OF SERVICE**

       It is hereby certified that a true and accurate copy of the foregoing was filed electronically via the Pacer system and served to the following on May 10, 2023.

Jared D. Bayer
Cozen O'Connor
One Liberty Place
1650 Market Street, Ste. 2800
Philadelphia, PA 19103
T: (215) 665-4127
***Counsel for Defendant***
***National Board of Medical Examiners***

Caroline M. Mew
Perkins Coie LLP
700 Thirteenth Street, N.W., Ste. 800
Washington, D.C. 20005-3960
T: (202) 654-6200
E: CMew@perkinscoie.com
***Counsel for Defendant***

                                               */s/ Dr. Markcus Kitchens*
                                               Dr. Markcus Kitchens
                                               ***Pro Se Plaintiff***



# AVTS Report

**Name:** Kitchens, Markcus Zwanz Jr.  **DOB:** [redacted]  **USMLE ID:** [redacted]

- ETS Number:
- Test Date:
- Form Entry Date:
- Processing Status:
- Fee Status:
- Applicant Status:
- Score Accepted:
- Letter Status:
- Letter Send Date:

## Exam History - All Exams

| Cert? | Date | Exam Type | Result | Score 2 | Score 3 | Report Date | Update Date | IB | TA | Void? |
|---|---|---|---|---|---|---|---|---|---|---|
|  |  | STEP1 | NO SHOW |  |  | 01/12/2022 | 01/19/2022 | No | No | No |
|  | 09/29/2022 | STEP1 | FAIL |  |  | 10/12/2022 | 10/12/2022 | No | No | No |
|  | 06/29/2022 | STEP2 | FAIL |  | 195 | 07/13/2022 | 07/13/2022 | No | No | No |
|  | 05/28/2022 | STEP2 | FAIL |  | 169 | 06/08/2022 | 06/08/2022 | No | No | No |
|  | 05/09/2022 | STEP1 | FAIL |  |  | 07/06/2022 | 07/06/2022 | No | No | No |
|  | 02/25/2022 | STEP1 | FAIL |  |  | 03/09/2022 | 03/09/2022 | No | No | No |

® Registered in the U.S. Patent and Trademark Office.
Copyright © 2003 Educational Commission for Foreign Medical Graduates. All rights reserved.

EXHIBIT 1

NBMEECFMG0008