UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. MARKCUS KITCHENS, JR. | ) | |
| PLAINTIFF | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | 2:22-CV-03301-JMY |
| | ) | |
| UNITED STATES MEDICAL LICENSING EXAMINATION, | ) | |
| ET. AL | ) | |
| DEFENDANTS | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

Plaintiff, Dr. Markcus Kitchens, Jr. (hereby "Dr. Kitchens"), pro se, provides the following Response in Opposition to the Defendants' Motion in Limine.

## INTRODUCTION

The issue of expungement in the case at hand is indisputable by both parties, while the finer points are contested, the overall question of law remains. However, Defendant NBME wishes to exclude the expert testimony of Dr. Joanne Senoga on the claim that her testimony is irrelevant and lay testimony. The Federal Rules of Evidence set forth the foundational rules for providing expert testimony. The evidentiary rules for relevancy and context of testimony are established in Rule 702. Defendant NBME's arguments for excluding Dr. Senoga as an expert witness are weak and their Motion should be denied.

## FACTS AND PROCEDURAL HISTORY

Defendant NBME picks and chooses when the issue of expungement applies in the case at hand. However, Dr. Kitchens has steadfastly claimed that should he prevail on the issue of ADA violation, his examination transcript should be expunged as an injunctive remedy. As noted in Plaintiff's brief, injunctive remedy is intended to go forward to prevent an individual from enduring future discrimination; the question of whether Dr. Kitchens' (or any examinee's) USMLE Examination transcript lasts beyond the administration of the USMLE STEP Board examinations is a material issue of fact in the case.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 provides that an expert may testify if their "specialized knowledge will help the trier of fact . . . to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* established that the "overarching subject [of Rule 702] is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." [1]   Rule 702 is a flexible standard that "grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case."[2] While an expert may be qualified based on practical experience or training rather than a formal education in an area, "'if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"[3]

Courts should apply Rule 702 consistent with the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'"[4] If an expert satisfies the qualifications of Rule 702, he or she has "wide latitude to offer opinions."[5] If a court has determined that a witness qualifies as an expert within the meaning of Rule 702, "the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'"[6] Using specialized knowledge to testify about practices and procedures is precisely what experts do.[7]

**ARGUMENT**

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 594–95 (1993).
[2] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 158 (1999).
[3] *Rothe Development, Inc. v. Department of Defense, et al.*, 107 F.Supp.3d 183, 196 (D.D.C. 2015) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).
[4] *Daubert*, 509 U.S. at 588 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)).
[5] *Daubert*, 509 U.S. at 592.
[6] *Meister v. Medical Engineering Corp*., 267 F.3d 1123, 1127 (D.C. Cir. 2001) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592 (1993)).
[7] See, e.g., *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, No. 04-5525, 2010 U.S. Dist. LEXIS 144271, at *22 (E.D. Pa. Mar. 31, 2010) (expert testimony about the "practice and procedure . . . on how patent applications are reviewed and examined by" a governmental agency).

Dr. Kitchens has asked this Court for an expungement of his USMLE Examination transcript as part of the injunctive relief provided under Title III of the ADA. Injunctive relief, as briefed by both parties, must be *forward*-looking. To determine whether an expungement of a *previously administered* exam could be considered as preventative relief, a material fact at issue before this Honorable Court is what impact(s) the USMLE Examination transcript may have on an individual. More specifically, the Court must consider how the USMLE Examination transcript is used by the Defendant NBME, residency programs, and state medical licensing boards as a whole. Dr. Senoga's testimony is not only relevant, it speaks directly to the significance of the transcript and how it is relied upon at multiple stages of a physician's career.

## I.    The Court is the Gatekeeper of Evidence

In a bench trial, the trial judge "acts as a gatekeeper to ensure that any and all expert testimony is not only relevant, but also reliable."[8] As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is "sufficiently tied to the facts of the case," so that it "fits" the dispute and will assist the trier of fact.[9]

### a.    Dr. J. Senoga Satisfies the Requirements for an Expert Witness Under FRE 702

In order to be qualified as an expert, Dr. Senoga must demonstrate that

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Rule 702.*

While not on her curriculum vitae, Dr. Senoga does have an intricate understanding of the Residency MATCH process based on her personal experience and knowledge gained throughout undergoing the MATCH process not once, but three separate times. Furthermore, the facts Dr. Senoga are testifying to are crucial to the Court's understanding of how the USMLE Examination transcript is used as an aspiring

---

[8] *UGI Sunbury, LLC v. A Permanent Easement for 1.7575 Acres,* 949 F.3d 825, 832 (3rd Cir., Feb. 11, 2020) quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3rd Cir., 2008).
[9] *Id* quoting *Daubert*, 509 U.S. at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985).

resident *and* how residency programs across the nation use the STEP Examinations as a disqualifying measure.

### i. Dr. J. Senoga is Qualified.

The NBME claims that Dr. Senoga is not qualified to testify on the topics identified above due to an alleged lack of "specialized expertise." *D.E. 62*, pp. 4. This argument is entirely unfounded. As cited by the Defendant, the "qualification requirement is construed liberally, the proposed expert must have at least *some* specialized expertise on the topic at issue." *Cf. Schneider*, 320 F.3d at 404. Dr. Senoga's personal experience in the MATCH and SOAP programs far exceeds any witness or expert proposed by the parties. The Court in *Paoli I* ruled that exclusion is not proper simply because the expert "did not have the degree or training which the district court apparently thought would be most appropriate."[10] So too, exclusion of Dr. Senoga's testimony would be inappropriate here simply because her degrees or training is not specifically in the MATCH program. The Courts have long held that the expert requirement is interpreted liberally, foregoing overly rigorous requirements in favor of "more generalized qualifications."[11]

Dr. Senoga's specialized expertise and qualification comes from the most reliable, and oftentimes painful, teacher available – firsthand experience. By going through the MATCH process three separate times, Dr. Senoga's testimony relies on 'good grounds'. Thus, her repeated first-hand experiences of the MATCH - SOAP programs, and the effect her USMLE Examination transcript had on her candidacy qualifies her to testify as an Expert.

### ii. Dr. J. Senoga's Testimony is Reliable.

The evidentiary requirement of reliability is lower than the merits standard of correctness. Reliability requires expert testimony to be "based on the methods and procedures of science, not   on subjective belief and unsupported speculation."[12] Courts look for rigor, not mere "haphazard, intuitive inquiry."[13] As the court can appreciate, no applicant would willingly or enthusiastically subject themselves to multiple rounds

---

[10] *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 49 (3rd Cir., Aug. 31, 1994) quoting *Paoli I*, 916 F.2d at 856.
[11] *Hammond v. International Harvester Co.*, 691 F.2d 646, 652-53 (3rd Cir. 1982).
[12] *Karlo*, 849 F.3d at 80-81 (quoting *In re TMI Litig.,* 193 F.3d at 703-04).
[13] Oddi v. Ford Motor Co., 234 F.3d 136, 156 (3d Cir. 2000).

of rejection as Dr. Senoga has. Moreover, Dr. Senoga's testimony is not based on personal or social opinion. Her testimony is based on the parameters and requirements set by the Defendant and unbiased third-party residency programs. For instance, Dr. Senoga testified that residency program interviewers told her that a failed attempt on her transcript was a red flag for her application; her testimony is supported by the University of Tennessee-Knoxville's Internal Medicine Residency website, which *states outright* that they "**REQUIRE**" applicants to pass the STEP exams on their first attempt.[14] So too, the experiences or outcomes of Dr. Senoga's MATCH program can be repeated by looking at other applicants with one or more failed attempts on their USMLE Examination transcript and seeing whether the applicant Matched into a residency program. *Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on "good grounds," i.e., if it is based on the methods and procedures of science.[15] As indicated below, Dr. Senoga's testimony is wholly based on the rules, methodologies, and requirements set out by others – the Defendant included – not by her. Dr. Senoga only spoke on what this Court has already heard by public record and by the Defendant's timeline(s) as set out on their website. Therefore, her testimony is reliable and based on good grounds.

### iii.   Dr. J. Senoga's Testimony Fits the Issues At Hand.

Dr. Senoga's testimony is appropriate and necessary on facts related to the USMLE Transcript and the residency process. Unlike opposing counsel, the Court, or even Dr. Kitchens himself, Dr. Senoga has endured the MATCH process three times from the time the ERAS opens to Match Day and the closing of the Supplemental Offer and Acceptance Program (SOAP), which includes compiling residency applications, personal statements, and interviewing with residency programs. To determine whether an expert's testimony "fits" the proceedings, "this Court asks whether it 'will help the trier of fact to understand the evidence or to determine a fact in issue.'"[16]

---

[14] *See* D.E. 25, Exhibit J.
[15] *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 49 (3rd Cir., Aug. 31, 1994).
[16] *UGI Sunburry, LLC v. A Permanent Easement for 1.7575 Acres,* 949 F.3d 825, 835 (3rd Cir., Feb. 11, 2020) quoting *FRE 702(a); Karlo v. Pittsburgh Glass Works, LLC,* 849 F.3d 61, 81 (3rd Cir., Jan. 10, 2017).

In Dr. Kitchens' disclosures, he indicated that Dr. Senoga would be expected to testify about "failing the USMLE STEP Exam(s); the residency application process; the MATCH process; [and] how a failed attempt on her examination transcript affected her application(s) [to residency]". *D.E. 57*, pp. 19. As demonstrated by the Joint Pre-Trial Memo, both Parties' believe that expungement is an issue of fact and law. Dr. Senoga's testimony is relevant to the issues before the Court and will assist the trier of fact, therefore, Dr. Senoga satisfies the 'fit'-ness test under *Daubert* and FRE 702.

## **CONCLUSION**

Based on Rule 702, the novel issue of expungement, and the direct relevancy of Dr. Senoga's testimony, Dr. Senoga satisfies the threshold to testify as an expert witness. As such, Defendant's Motion in Limine should be denied and Dr. Senoga's testimony during the bench trial on May 15, 2023 should be considered entered in full as an expert witness.

Respectfully submitted,

*/s/ Dr. Markcus Kitchens*
Dr. Markcus Kitchens
625 Hampton Way, #2
Richmond, KY 40475
T: (423) 314-4096
markzwanz@gmail.com
***Pro Se Plaintiff***

Dated: May 25, 2023

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was filed electronically via the Pacer system and served to the following on May 25, 2023.

Jared D. Bayer
Cozen O'Connor
One Liberty Place
1650 Market Street, Ste. 2800
Philadelphia, PA 19103
T: (215) 665-4127
**Counsel for Defendant**
**National Board of Medical Examiners**

Caroline M. Mew
Perkins Coie LLP
700 Thirteenth Street, N.W., Ste. 800
Washington, D.C. 20005-3960
T: (202) 654-6200
E: CMew@perkinscoie.com
**Counsel for Defendant**

_/s/ Dr. Markcus Kitchens_
Dr. Markcus Kitchens
**Pro Se Plaintiff**