

# 2023 Training Guide
# Disability Assessment Analyst

Disability Services

EXHIBIT

**JX-7**

NBME000061

**Processing and Training Tasks**

1) Orientation to DS processing / flowchart:  U:\Disability Services\Procedures\Flow Charts
2) Read the current USMLE Bulletin of Information (https://www.usmle.org/bulletin-information)
   a) Download practice materials https://orientation.nbme.org/Launch/USMLE/STPF1
3) Read USMLE Guidelines for Test Accommodations
   a) https://www.usmle.org/step-exams/test-accommodations/guidelines
4) See other agency documentation guidelines:
   a) https://students-residents.aamc.org/applying-medical-school/taking-mcat-exam/mcat-exam-accommodations/
   b) https://www.nbome.org/Content/Exams/COMLEX-USA/COMLEX-USA_Test_Accommodation_Instructions.pdf
5) DS Specialists:
   a) Orientation to case creation in Salesforce
   b) Observe Specialists review new case and create combined PDF for analyst review
   c) Observe Specialists process a new and subsequent request
   d) Listen to Specialists on routine and difficult phone calls
6) Role of outside consultants:
   a) Review DS Consultant list in TARA
7) Introduction to audit process and writing letters:
   a) Location of files: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE
      i) Intro to Insufficient Documentation (IDOC): U:\Disability Services\Combined Correspondence
      ii) Intro to Decision letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\DEC
      iii) Intro to Approval letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\APP
      iv) Intro to NonADA_Approval letters: R:\PROD\TARA\DS-Special\2022CORRESPONDENCE\QTR4\APPNONADA
8) Field phone calls from examinees and evaluators, selected with DS Manager approval
9) Introduction to Consultant Web for Consultant reviews
10) Introduction to MicroStrategy
    a) Access Microstrategy
11) Participate in updating documentation guidelines, request forms, letter/e-mail templates, documentation of procedures and best practices
12) Participate in the generation of consultant training materials
13) Read past cases

NBME000062

**Initial Learning Objectives:**

1) Understanding of the ADA
i)   GOALS    Optimal outcome vs. providing access to examination
ii)  MEASURES      Ipsative or relative weaknesses vs. impairment relative to most
     people in the general population
iii) DOCUMENTATION      Diagnosis vs. substantial limitation

2) Documentation
i)   Clinical: What is sufficient to treat is not always sufficient to determine disability
ii)  Objective evidence

3) Learn consistency in determining merits of request regardless of extraneous factors in
order to constantly ward off intentional or unintentional systemic bias. Most important to
be consistent regarding merits of documentation.

NBME000063

**Decision Making**

DECISION POINT: Approving previously granted accommodations (Specialists)

DECISION POINT: Insufficient documentation on initial request

DECISION POINT: Sufficient documentation to send to consultant

DECISION POINT: Selecting a consultant(s)

DECISION POINT: Accommodation Decisions

NBME000064

**Skills To Be Developed**

- Writing TARA notes

- Writing IDOC e-mails

- Writing partial Approval letters

- Writing Decision (denial) letters

- Effective communication with examinees and other individuals

- Effective consultation with consultants

- Professional presentations at internal and external meetings

NBME000065

Request Types:

A. **New Requests:** First time requests for accommodations from an examinee.
    1. It may be for any Step exam.
        a. Goes through Audit process
B. **Subsequent Requests** (Requests for Accommodations Previously Approved (RAPA):
    1. In general, a subsequent request (RAPA) for the same accommodations as previously granted on the same exam or a similar Step exam does not require additional supporting documentation. (i.e., Step 1, Step 2CK, and Step 3 are all computer-based exams and will likely not need additional documentation depending on the type of impairment and the length of time from the first exam to the last).
    2. A subsequent request that includes new or different accommodations from those previously granted must include additional documentation to support the new accommodations and will go through the Audit process to review the additional documentation.
    3. Disorders that typically have a variable course or remitting/relapsing disorders may require updated documentation to support the subsequent request for accommodations to document that the accommodations is still required/appropriate. This typically includes an updated personal statement describing how the individual is impaired in ways that impact their access to the standard examination time and format.

C. **Reconsideration Requests ([https://www.usmle.org/step-exams/test-accommodations/reconsideration](https://www.usmle.org/step-exams/test-accommodations/reconsideration)):**
    1. Examinees may request one reconsideration review per registration
    2. The examinee or their authorized legal counsel must make a written request for reconsideration of our decision regarding test accommodations.
    3. Specialists/Manager typically acknowledges reconsideration/legal requests. Manager audits the submission and sends IDOC if needed, refers to consultant if needed, makes decision, and communicates the decision in writing to examinee.

**Procedures**
**Audit and Insufficient Documentation (IDOC) E-mails**

Steps:
      Review and Audit

The DS Specialists review the initial submission for legibility and completeness of the basic information including a signed and completed request form; a personal statement; a Certification of Prior Test Accommodations (when the examinee reports having received accommodations in medical school); and a copy of MCAT scores if relevant. The Specialist confirms that the examinee is registered for the exam(s) with a current Eligibility Period (EP), and we typically request that their scheduling permit is on HOLD.

The file is then assigned to an auditor to review submission for sufficient clinical information to allow for an informed decision regarding the presence of current impairment and what, if any, accommodations is appropriate for the examination. The analyst considers all of the submitted documentation looking for obvious missing or inconsistent data. The diagnostic conclusions of the examinee's evaluator(s) are most valuable when they are supported by complete relevant historical and background information; score data and norms for all tests and measures administered; analysis of a differential diagnosis; and recommendations for treatment/accommodations supported by the data.  In addition, evaluations should be supported by objective documentation demonstrating current impairment. A thorough file audit and judicious follow up request for supporting documentation provides the broadest dataset possible to minimize/eliminate speculation allows subsequent reviewers (decision maker, external consultants, legal counsel) to analyze the facts and make informed decisions.


Audit


In general, when performing the Audit, compare what the examinee has submitted to the published USMLE Guidelines to Request Test Accommodations and standard practices in the relevant medical or psychological specialty. The purpose of the Audit is to identify vital information that is missing from the submission as soon as practicable. Missing information that is likely to support the examinee's request may be communicated to the examinee via an insufficient documentation (IDOC) e-mail, the intent of which is to assist the examinee in providing the necessary information needed to document a current impairment and support their request. Typically, IDOC e-mails are written to request Standard Scores when only qualitative information (Average, Low Average, etc) or percentile ranks are reported by the evaluator; clarification on norms used for measures administered by evaluator; for relapsing/remitting conditions that require updated documentation; and updated documentation for psychiatric conditions.

**New Requests:** In general, the following items are required to begin an Audit:
For new (first time) Requests for Accommodations:

1. A personal statement describing their impairment and how it impacts them in daily activities.

2. Documentation from a qualified professional in the relevant area of disability (e.g., vision specialist for a vision problem).
   a. Clinical evaluations must have scores and results for all tests and measures administered (e.g., psychological testing, vision assessment, sleep studies, radiologist report of CT studies, necessary technical information from all tests: norms, forms, etc.).
   b. Evaluation reports should identify the test and form used (e.g., some evaluators still use outdated forms like the WJ-R and WIAT-II).
   c. Evaluation reports should identify the normative sample used to calculate scores.
   d. Subtest and index/cluster scores should be provided, identified by test name (e.g., we want to know Digit-Symbol Coding not "Examinee received performed at the 50th percentile on a test of clerical speed.")

3. Documentation of functioning is current
   a. The currency of documentation will vary depending on claimed impairment. Psychiatric conditions and relapsing/remitting conditions may require documentation dated within the past 6 months.

4. A completed *Certification of Prior Test Accommodations (CPTA)* signed by the appropriate medical school official must be provided if the examinee reports receiving accommodations in medical school.

5. Written verification of approved accommodations from the college and/or the testing agency if the examinee reports receiving accommodations in these settings.

6. MCAT scores (with and without accommodations) if examinee took the MCAT.

7. Helpful historical supporting documentation to verify the examinee's self-report (these are nice to have if available but will not prevent a review if absent):
   a. Copies of IEP/504 plans, report cards, academic transcripts, ACT/SAT scores
   b. Prior/serial evaluations if available
   c. Objective documentation of the impairment in real life should be provided to support low test scores on an assessment battery such as academic/occupational records.

Insufficient Documentation (IDOC) e-mails

Depending on the amount and type of information that is missing, an IDOC communication may be in the form of an e-mail sent to the examinee.  The examinee's signed Request for Test Accommodations form authorizes us to contact the entities and professionals identified in the documentation submitted by the examinee for the purpose of obtaining further information. It also authorizes such entities and professionals to provide NBME with all requested further information.

Prior IDOC e-mails may be search in TARA using the Reports – Email Search feature:



IDOC e-mails should be limited to requesting only the information/data necessary to make an informed decision about the accommodation request. The goal is to communicate as effectively as possible to the examinee, and any professional with whom they share the letter, the exact type of information we are requesting. Sometimes this will be as detailed as requesting that the evaluator identify which Nelson-Denny Reading Test form they administered or provide the WJ-IV score sheet calculated using age-based norms. Other times it is not possible to be as specific, such as when we are requesting documentation from childhood that shows the impact of a developmental disorder. IDOC e-mails that are longer than 3,700 characters need to be sent as an e-mail from Salesforce in the examinee's case. Be sure to change the Send address to disabilityservices.

NBME000069

Review of information sent in response to IDOC letters

The examinees will notify their Specialist when they submit additional documentation and consider their file complete. The Specialist will place the supplemental documentation into the examinee's folder at U:\Disability Services\Remote Files) and notify the Auditor by assigning a task in Salesforce. The Auditor reviews the supplemental information sent in response to IDOC letter. If information is missing and examinee has requested file to be processed as-is, the Auditor may send the file to consultant or make the decision.

Assigning file to external consultant for review

1.  Click the TAR ID to highlight the Exam request you want to send to a consultant for review. (Modified processes may apply due to Telework)



2.  Click Documents tab in TARA to verify all documents are in 'Ready' Status (file will not send if any docs are 'Pending').



3.  Click Reviews tab:
    - Click New Review Button



    - "Add New Review" window will pop up:



    - From Review type, select "New Review"
    - Under Requested Date, select date (click on current date)

- Under Due Date, confirm auto-populated date (one week from request date) or edit if extending to a longer review period.
- Click "OK"

4. Click "Add Reviewer" button at bottom



a.  Select Consultants window pops up. If desired consultant is not in the Disability Category list, click the ALL categories button to see all consultants. Select name of desired consultant (highlighted) and check the adjacent notes window to confirm that they are available to review during the desired time period.



Click OK:

b.   Click Edit Reviewer button:



c. Assign documents by using the left arrows (<<) between the Available and Assigned Documents boxes. Do NOT send prior reviews from consultants, not even if the review was done by the same consultant who will receive the new file (consultants can always access their previous reviews through Consultant Web). Do NOT send Legal Settlements/Agreements.  If unsure, consult with DS Director or Manager.



- Once all documents have been assigned, click Ready to Release checkbox and click OK
- An email message to consultant will appear.  Verify content and check that Due Date populated in the message. When ready, click Save and Send button.
- Click Save button in Process Test Accommodation Request window

**Procedures**

### PIE Decision-making

The case coordinators may bring a PIE request to you when the PIE is ready for review.

This list is not exhaustive and not a checklist, as each review is conducted on a case-by-case basis, but here are some questions to guide the review process.

-Is the examinee registered for the exam they are requesting a PIE?

-Are they scheduled?  Is there sufficient time to implement the PIE before their exam date (Note: unusual requests sometimes require coordination with Prometric or CSEC which may take a week or more to coordinate)

-Does the diagnosis and requests on the decision sheet accurately reflect the examinee's condition and requests?

-Has the examinee supplied a personal statement?

-Has the examinee supplied documentation from their doctor? (Note: not needed for PIE requests for breast pumps)

-Does the medical documentation clearly identify the professional, their practice/office location, their relevant licenses, and signature?

-Does the medical documentation match up with personal statement? Are there inconsistencies?

-Is the request for a personal item of a medical nature?  Extra time or break time are not personal items.  A separate room is not a personal item.  A back-brace is a personal item of a medical nature. A pillow is a personal item that may, or may not, be medical in nature depending on the request.

-Is the request medically necessary?  For example, an insulin pump is medically necessary for someone with diabetes.  Hearing aids are typically necessary for individuals with significant hearing impairments. Having a snack to eat every 10 minutes is typically not medically necessary.  Wanting earplugs to focus better is not medically necessary.

-Will the personal item adversely affect the standardized administration by Prometric or CSEC?

Decisions should be entered in the Remarks field of the PIER tab.

Case Coordinators (CC) draft PIE decision emails and save without sending.  CCs notify PIE decision-maker when email is ready.  PIE maker edits and sends decision email.

NBME000077

NBME000078